COPY

FILED

2009 AUG -3 PM 2:28

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

1  **MAKAREM & ASSOCIATES, APLC**
2  Ronald W. Makarem, Esq. (SB #180442)
   Marni B. Folinsky, Esq. (SB #209880)
3  11601 Wilshire Boulevard, Suite 2440
4  Los Angeles, California  90025-1760
   Phone: (310) 312-0299
5  Facsimile: (310) 312-0296
6  Email: makarem@law-rm.com
   Email: folinsky@law-rm.com
7

8  Michael H. Kim, Esq. (State Bar No. 200792)
9  **MICHAEL H. KIM , P.C.**
10 3699 Wilshire Boulevard, Suite 860
   Los Angeles, California 90010
11 Telephone: (213) 639-2900
12 Facsimile: (213) 639-2909
   Email: mkim@mhklawyers.com
13

14 Attorneys for Plaintiff
   ESTHER LEONG, individually and
15 on behalf of all others similarly situated

16
                **UNITED STATES DISTRICT COURT**
17
               **CENTRAL DISTRICT OF CALIFORNIA**
18

19

20 ESTHER LEONG, individually and          Case No. CV 09-4484 PSG (VBKx)
   on behalf of all others similarly
21 situated,

22         Plaintiff,                       **CLASS ACTION FIRST AMENDED
                                            COMPLAINT**
23

24 v.

25                                          [JURY TRIAL DEMANDED]
   SQUARE ENIX OF AMERICA
26 HOLDINGS, INC., a Delaware
   corporation; SQUARE ENIX, INC., a
27 Washington corporation,
28         Defendants.

---

Plaintiff, ESTHER LEONG, individually, and on behalf of all others similarly situated, by and through undersigned counsel, files this class action lawsuit against Defendants, SQUARE ENIX OF AMERICA HOLDINGS, INC., and SQUARE ENIX, INC. (collectively "Square Enix" or "Defendants"). Plaintiff alleges as follow upon personal knowledge as to her actions and upon information and belief as to all other facts alleged in the Complaint:

## PRELIMINARY STATEMENT

1.      This is a class action brought by Plaintiff, individually and on behalf of a Class of persons who purchased Defendants' online (Internet-based) multiplayer game called *Final Fantasy XI* during the period of June 1, 2005 to now ("Class Period").

2.      This case narrowly focuses on Defendants' deceptive advertising, unfair and undisclosed business practices, and fraudulent concealment with respect to certain aspects of the game that the users are not made aware before or at the time of purchase. The aspects of the game at issue, which form the basis of this Class Action, are, inter alia, as follows:

        a)      The game software or game disk is sold separately, but in order to use it, an online account must be created with a special registration code that comes with the game software and the game software must be registered online with the Defendants. Once the game is registered online, it triggers a mandatory user fee (also called the subscription fee) payable on a monthly basis to Defendants. This fee is required and charged to the user regardless of whether the user is using the game or not.

        b)      The user has no choice of not paying this fee even if he or she wanted to skip a month or temporarily stop playing the game. In other words, this subscription fee has no relationship

CLASS ACTION FIRST AMENDED COMPLAINT

to the actual use of the game.  The fee is continuously charged on a monthly basis to the user regardless of whether or not he uses the game.  This game simply does not allow the user to skip his subscription even for a month.

c)     The user is not told that this subscription fee-- or the fee to play the game-- must be paid every month in perpetuity.   The information on the game box merely states that "additional online fees required" without any explicit disclosure regarding the monthly obligation for perpetuity.

d)     If the subscription fee is not paid in any given month, the following penalties are triggered:

1.  The game account is suspended and the user cannot play the game;

2.  Late fees are charged to the user without notice;

3.  In order to reactivate the game account and play the game, in addition to the late fees already assessed, the user must pay (1) a reactivation fee and (2) the monthly subscription fees for the prior months the game had not been played. In reality, the user does not have the option of temporarily not playing the game and incurring the monthly fees since the user is penalized with a late fee, reactivation fee and unpaid monthly subscription fees.

e)     If the fees are not paid for more than 3 months, the following additional penalties are triggered:

1.  the game account is permanently deleted from the system;

2.  any and all game characters developed, game data acquired, and game levels advanced up to that point are

deleted from the system;

3. the existing game software becomes unusable and valueless since it cannot be played online and the registration code that came with the software no longer works;

4. if the user wants to continue playing the game after not paying the fees for 3 months, then the user must purchase the game software again in order to obtain a new registration code, register for a new game account, register the game again with Defendants, and start the game from scratch; in other words, anyone who purchases the game must pay the subscription fee continuously and every month if he wants to keep the game.

f) Defendants have the sole discretion to cancel the user's subscription for any purpose at any time. Regardless of when the subscription is terminated during the month, Defendants charge the user for the entire month's subscription. Once the subscription is terminated, the game software becomes unusable and valueless. If the user wants to play the game again, the user must purchase the game software again in order to obtain a new registration code, register for a new game account, register the game again with Defendants, and start the game from scratch.

g) Defendants at their discretion will shut down the website for system maintenance. While the website is shut down, the users are unable to pay their monthly subscription fees. If the user's monthly subscription fee is due while the system is down for maintenance and the user is blocked by Defendants from

4

making payment, Defendants charge the user a late fee and reactivation fee in addition to the monthly subscription fee.

3.      Defendants knew that retailers do not allow purchasers of computer games to return the merchandise after the game has been opened.  Therefore, Defendants knew that by failing to disclose this information at the time of purchase, Plaintiff and the Class could not return the merchandise to get their money back to the extent that they did not agree with any of the terms and conditions of the game that were not disclosed on the box prior to purchase.

4.      As a result of these penalties and payment features, Plaintiff and the other members of the Class have suffered damages as follow:

> a)      They purchased the game without full and complete disclosure regarding these various penalties, payment features and forfeiture of the game;
>
> b)      The subscription fee was charged to them even if they were not playing the game;
>
> c)      They had their game accounts suspended for late payment;
>
> d)      They were charged late and reactivation fees;
>
> e)      They had their game accounts permanently deleted, and lost their game, requiring them to purchase the same game again in order to start from scratch.
>
> f)      They lost their game characters and game data acquired through months and years of playing the game, which have monetary value as measured by the fees they paid to play the game.

5.      Based on Defendants' false and deceptive advertising, Plaintiff asserts claims against Defendants under the Unfair Competition Law ("UCL"), Cal. Bus. &

Prof. Code § 17200, et seq., False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, et seq., the Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 et seq., and for common law Unjust Enrichment.

## PARTIES

6.　Plaintiff, Esther Leong, is presently, and at all times material hereto was a citizen of California. She currently resides and works in the City of San Francisco, County of San Francisco, and State of California.

7.　On information and belief, SQUARE ENIX OF AMERICA HOLDINGS, INC. is a Delaware corporation with its principal place of business in the City of El Segundo, County of Los Angeles, and State of California. On information and belief, SQUARE ENIX OF AMERICA HOLDINGS, INC. was established in 2006 as a US-based holding company to control management and operations of the company's subsidiaries in North America.  On information and belief, SQUARE ENIX, INC. is a Washington corporation with its principal place of business in the City of El Segundo, County of Los Angeles, and State of California.  Collectively, SQUARE ENIX OF AMERICA HOLDINGS, INC., and SQUARE ENIX, INC. have developed and sold, and continue to sell the game, and own and operate the online system through which the game is played.

## JURISDICTION AND VENUE

8.　This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and 1332(d), because the amount in controversy exceeds $5 million exclusive of interest and costs, and on information and belief, more than 80% of the putative Class are citizens of states other than Defendants' state of citizenship.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

9.　The subject lawsuit is governed by California law, without reference to its rules regarding conflicts of law pursuant to a written agreement.

CLASS ACTION FIRST AMENDED COMPLAINT

10.    This Court has personal jurisdiction over all Class members regardless of their place of residence pursuant to a written consent by each of the Class members which states that they "hereby irrevocably submits and consent to the sole and exclusive jurisdiction of the courts of the State of California and of the United States of America located in the count of Los Angeles."

11.    Venue is proper in this Court because Defendants reside in this District, and a substantial part of the events alleged in this Complaint giving rise to Plaintiff's claims, including the dissemination of the false and misleading advertising alleged herein, occurred in and were directed from this District.

## FACTS

12.    *Final Fantasy XI* is a multiplayer online role-playing game developed and published by the Square Enix defendants as part of the *Final Fantasy* series. It was first developed and released in 2002, and since then has grown into a multi-million dollar gaming empire.

13.    On information and belief, since its first release, the game has been hugely popular among teenagers, for whom the game is intended and designed, and has attained a consumer base of over 500,000 users. On information and belief, in response to this huge success, Defendants have developed and published four new expansion packs that offer the game users new game environments, missions, and tasks.

14.    The game is exclusively played online at Defendants' official game website, www.playonline.com ("Website"). It cannot be played at any other website or online gaming platform. The unique feature of this game is that it is played exclusive online, which requires an online or Internet-based gaming platform. That platform is provided at Defendants' Website. To access this Website to play the game, the user must create a game account.

15.    More specifically, to play the game, the game user must first buy a

CLASS ACTION FIRST AMENDED COMPLAINT

copy of the game software, install it on a computer, register the game software using a unique registration code that comes with each copy, and create an online game account (also called the "PlayOnline Account") at the Website.

16.   This PlayOnline Account is absolutely necessary to play the game at the Website.  Without this PlayOnline Account, the game software is useless and worthless.

17.   To create this PlayOnline Account, the user must first purchase a copy of the game and install the game software in his computer. He then creates the Account at Defendants' website using a unique registration code that comes with the copy.   He is required to provide his personal information, credit card information, and the unique registration code ("Code") that comes with the game software he or she bought.  Since this Code can only be used once and for a single PlayOnline Account, the user's ability to play the game absolutely hinges upon his ability to keep the PlayOnline Account active.  If for any reason the PlayOnline Account is deleted or invalidated, the user must purchase the same game again in order to obtain a new registration code to create another PlayOnline Account.

18.   It is in the nature of this interconnection between the game software, registration code and PlayOnline Account that the defendants are able to exercise control over the game.  In other words, the defendants can render a user's game software completely useless and worthless by deleting his PlayOnline Account from the Website system.

19.   With this background, we now turn to Defendants' deceptive advertising, unfair and undisclosed business practices, and fraudulent concealment with respect to certain aspects of the game that the users are not made aware of before or at the time of purchase.

a)   First, there is no clear disclosure to purchasers at the point of purchase that the Defendants retain absolute control over the

game software and have the power to render it useless and worthless by the mechanisms discussed above.

b)      Second, the moment the game is registered and the PlayOnline Account is created, the user is charged a fee (called the Subscription Fee or User Fee)_on a monthly basis to access and use the game.  This subscription fee is charged every month regardless of whether the user actually uses or access the game; in other words, the game subscription does not allow the user to skip even a month.  A clear disclosure is not made about this aspect of the game.

c)      The user is not told that this subscription fee must be paid every month regardless of whether the user is playing the game or not.   The information on the game box merely states that "additional online fees required" without any explicit disclosure regarding the *monthly* obligation for perpetuity.

d)      If this monthly subscription fee is not paid in any given month, the following penalties are automatically triggered:

1. The game account is suspended without notice and the user cannot play the game;

2. Late fees are charged to the user without notice;

3. In order to reactivate the game account and play the game, in addition to the late fees already assessed, the user must pay (1) a reactivation fee and (2) the monthly subscription fees for the prior months the game had not been played.

e)      If the subscription fees are not paid for more than 3 months, the following additional penalties are triggered:

1. the PlayOnline Account is permanently deleted from the

9

CLASS ACTION FIRST AMENDED COMPLAINT

system;

2.  any and all game characters developed, game data acquired and game levels advanced up to that point are deleted from the system;

3.  the existing game software becomes unusable and valueless since it cannot be played online and the registration code that came with the software no longer works;

4.  If the user wants to continue playing the game after not paying the fees for 3 months, then the user must purchase the game software again in order to obtain a new registration code, register for a new account, register the game again with Defendants and start the game from scratch; in other words, anyone who purchases the game must pay the subscription fee continuously and every month if he wants to keep the game.

f)    Defendants have the sole discretion to cancel the user's subscription for any purpose at any time. Regardless of when the subscription is terminated during the month, Defendants charge the user for the entire month's subscription. Once the subscription is terminated, the game software becomes unusable and valueless. If the user wants to play the game again, the user must purchase the game software again in order to obtain a new registration code, register for a new game account, register the game again with Defendants, and start the game from scratch.

g)    Defendants at their discretion will shut down the website for system maintenance. While the website is shut down, the

CLASS ACTION FIRST AMENDED COMPLAINT

users are unable to pay their monthly subscription fees.  If the user's monthly subscription fee is due while the system is down for maintenance and the user is blocked by Defendants from making payment, Defendants charge the user a late fee and reactivation fee in addition to the monthly subscription fee.

    h)      The above-referenced penalties and payment features and forfeiture are not fully and clearly disclosed to the game users before or at the time of purchase.

20.    As a result of these penalties and payment features, Plaintiff and the other members of the Class have suffered damages as follow:

    a)      They purchased the game without full disclosure about the above-referenced penalties and forfeiture consequences;

    b)      The subscription fee was charged to them even if they were not  playing the game;

    c)      They had their game accounts suspended for late payment;

    d)      They were charged undisclosed late and reactivation fees;

    e)      They had their game accounts permanently deleted, and lost their games, requiring them to purchase the game again in order to open a new account and start the game from scratch.

    f)      They lost their game characters and game data acquired through months and years of playing the game, which have monetary value as measured by the fees they paid to play the game.

21.    With respect to Plaintiff Esther Leong, she first purchased and started playing *Final Fantasy XI* in 2005.   When Leong bought the game:

    a)      She was not told that a credit card would be required to

CLASS ACTION FIRST AMENDED COMPLAINT

open her online game account;

b)     She was not told that the subscription fee would be charged to her credit card regardless of whether she played or not. She thought that she would be charged or had to pay the fee only if she played;

c)     She was not told that if she did not pay the monthly fees, then penalties, including late fees and reactivation fees, would be applied. She was not told if she did not pay the monthly fees, then she would still have to pay the monthly fees for the months she did not play when she went to reactivate her subscription.

d)     She was not told that Defendants have the sole discretion to cancel the user's subscription for any purpose at any time. She was not told that Defendants charge the user for the entire month's subscription, regardless of when the subscription is terminated during the month.

e)     She was not told that Defendants at their discretion will shut down the website for system maintenance. She was not told that while the website is shut down, the users are unable to pay their monthly subscription fees. She was not told that if the user's monthly subscription fee is due while the system is down for maintenance and the user is blocked by Defendants from making payment, Defendants charge the user a late fee and reactivation fee in addition to the monthly subscription fee.

f)     She was not told that the game she purchased would become useless and of no value and she would have to buy the game again if she stopped paying the subscription fee for three months;

CLASS ACTION FIRST AMENDED COMPLAINT

g)     She was not told that she would lose her game data and characters if she stopped paying the subscription fee for three months;

h)     She was not told that she had to pay the subscription fee in order to keep her game and game account usable;

i)She was not told that this subscription fee-- or the fee to play the game-- must be paid every month regardless of whether she played or not, and that she had no choice of skipping her subscription.   The information on the game box merely states that "additional online fees required" without any explicit disclosure regarding the monthly obligation for perpetuity.

22.    Leong purchased the game and opened her PlayOnline Account in 2005, and she was charged the subscription fee until August of 2007.  During this entire time, she was charged the subscription fee regardless of whether she played or not.  In 2007, Leong stopped paying the monthly subscription fee.   At that time she stopped paying the fee, Leong thought that she could reactivate her account, characters and game data without any kind of penalty whenever she wanted to start playing the game again.

23.    In 2009, Leong went back and tried to play the game again using the same PlayOnline Account.   Leong could not access the game because the Account was no longer valid.  The game software that Leong purchased was now useless and of no value to her since Defendants terminated her account.  Leong then purchased the same game again in order to set up a new game account.  Leong lost all characters she had developed, the game data she had acquired, and the game levels advanced up to that point where her account was terminated. As a result, she suffered damages.

//

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and the following Class:

> All persons who purchased or played the game four years prior
> to the filing of this lawsuit to the present.  Expressly excluded
> from the Class are Defendants and their subsidiaries, affiliates,
> officers, directors, and employees.

25.     Certification of the Class is appropriate pursuant to Fed. R. Civ. Proc. 23(a).  The members of the Class are so numerous that joinder of all members would be impracticable.  Defendants' Website data indicate that there are hundreds of thousands of purchasers and users of the game subject to this Court's jurisdiction.

26.     There are common questions of law and fact, among others, including:

a)      Whether Defendants engaged in materially deceptive, untrue or misleading advertising in the sale and offer to sell the game;

b)      Whether Defendants concealed or omitted to state material facts to the Class in their advertising, marketing, and sale of the game;

c)      Whether Defendants knew, or by the exercise of reasonable care should have known, that the aforementioned concealment and omission had the capacity or tendency to confuse and mislead;

d)      Whether Defendants intentionally concealed or omitted to state material facts to the Class regarding the nature of the transaction that resulted in the sale of the game;

e)      Whether Defendants represented that the sale of the game confers or involves rights, remedies, or obligations which it does not have or involve;

f)      Whether, by the misconduct as set forth in this Complaint,

Defendants engaged in unfair and unlawful business practice with respect to the advertising, marketing, and sale of the game in violation of California Business & Professions Code §§ 17200, et seq.;

g)    Whether, by the misconduct as set forth in this Complaint, Defendants engaged in unfair, deceptive, untrue or misleading advertising in violation of California Business & Professions Code §§ 17500, *et seq.*;

h)    Whether, by the misconduct as set forth in this Complaint, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices intended to result in the sale of goods to consumers in violation of California Civil Code § 1750;

i)    Whether, as a result of Defendants' misconduct as alleged in this Complaint, Plaintiff and the Class are entitled to damages, restitution, equitable relief, and other relief, and the amount and nature of such relief;

j)    Whether Defendants have acted on grounds generally applicable to the Class, making injunctive relief appropriate;

k)    Whether a Class can be certified pursuant to Fed. R. Civ. Proc. 23(b)(3); and

l)    Whether alternatively, a Class can be certified pursuant to Fed. R. Civ. Proc. 23(b)(2).

27.    Plaintiff's claims are typical of the claims of the Class, because Plaintiff and all members of the Class were injured economically by the same wrongful practices and conduct of Defendants as described in this Complaint. Plaintiff's claims arise from the same practices and conduct that gave rise to the claims of the Class members, and are based on the same legal theories.  The only

CLASS ACTION FIRST AMENDED COMPLAINT

difference between Plaintiff and the individual members of the Class could be the amount of damages sustained, which is an amount that can be readily determined, and does not bar or in any way impair class certification.

28.    Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff's interests are the same as, and not in conflict with, the other members of the Class. Plaintiff's counsel is experienced in class action and complex litigation.

29.    Questions of law or fact common to the members of the Class predominate and a class action is superior to individual cases for the faire and efficient adjudication of the issues presented in this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. The individual damages incurred by each Class member resulting from Defendants' conduct are too small to warrant the expense of individual suits.  The likelihood of individual members of the Class prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual suits would also present the potential for inconsistent or contradictory judgments and rulings, and would underscore the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action and certification of the Class under Rule 23(b)(3) is proper.

30.    Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to members of each Class as a whole and certification of the Class under Rule 23(b)(2) is proper.

CLASS ACTION FIRST AMENDED COMPLAINT

## COUNT I

### For Violation of the Unfair Competition Law, Bus. & Prof. Code § 17200

31.     Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

32.     Defendants have engaged in unfair, unlawful, and fraudulent business practices as described in this Complaint, including, but not limited to, disseminating or causing to be disseminated from the State of California, unfair, deceptive, untrue or misleading advertising at the time of purchase including but not limited to:.

> a)     Failing to disclose that a credit card would be required to open an online game account;
>
> b)     Failing to disclose that the subscription fee would be charged regardless of whether the user played or not;
>
> c)     Failing to disclose that the user does not have the option of skipping his subscription even a month;
>
> d)     Failing to disclose that the user cannot skip a month's subscription fee even if he was not playing the game;
>
> e)     Failing to disclose that if the user did not pay the monthly fees, then penalties, including late fees and reactivation fees, would be applied.
>
> f)     Failing to disclose that when the user's subscription is closed for his failure to pay the subscription fee, the user has to pay the subscription fees for the months the account is closed before he can reactivate the subscription.
>
> g)     Failing to disclose that Defendants have the sole discretion to cancel the user's subscription for any purpose at any time.
>
> h)     Failing to disclose that Defendants charge the user for the

17

CLASS ACTION FIRST AMENDED COMPLAINT

entire month's subscription, regardless of when the subscription is terminated during the month.

i) Failing to disclose that Defendants at their discretion will shut down the website for system maintenance. Defendants failed to disclose that while the website is shut down, the users are unable to pay their monthly subscription fees. Defendants failed to disclose that if the user's monthly subscription fee is due while the system is down for maintenance and the user is blocked by Defendants from making payment, Defendants charge the user a late fee and reactivation fee in addition to the monthly subscription fee.

j) Failing to disclose that the game the user purchased would become useless and of no value and the user would have to buy the game again if the user stopped paying the subscription fee for three months;

k)      Failing to disclose that the user would lose his/her game data and characters if the user stopped paying the subscription fee for three months;

l) Failing to disclose that the user had to pay the subscription fee in order to keep the game and game account usable;

m)      Failing to disclose that the subscription fee-- or the fee to play the game-- must be paid every month.   The information on the game box merely states that "additional online fees required" without any explicit disclosure regarding the monthly obligation for perpetuity.

33.    Defendants knew that retailers do not allow purchasers of computer games to return the merchandise after the game has been opened.  Therefore,

Defendants knew that by failing to disclose this information at the time of purchase, Plaintiff and the Class could not return the merchandise to get their money back to the extent that they did not agree with any of the terms and conditions of the game that were not disclosed on the box prior to purchase.

34.     By engaging in the above-described unfair and undisclosed business practices, Defendants committed one or more acts of unfair competition within the meaning of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.

35.     Defendants' acts and practices have deceived and are likely to continue to deceive members of the Class and impact the public interest. The material false advertising, undisclosed business practices, and concealment described in this Complaint are substantial and were directed to all members of the Class with the purpose and intent of inducing members of the Class to purchase and play the online game.

36.     Plaintiff and all members of the Class have purchased *Final Fantasy XI* and suffered and continue to suffer injury as a direct result of Defendants' unfair and undisclosed business practices towards consumers.

37.     Plaintiff, on behalf of herself and on behalf of the Class, seeks an order of this Court against Defendants awarding restitution, disgorgement, injunctive relief and all other relief allowed under § 17200, et seq. plus interest, attorney's fees and costs pursuant to, inter alia, Cal. Code of Civ. Proc. § 1021.5.

## COUNT II

## For Violation of False Advertising Law, Bus. & Prof. Code § 17500 et seq.

38.     Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

39.     Defendants are disseminating advertising from California throughout the United States and beyond. Defendants disseminated or caused to be

disseminated the materially untrue and misleading advertising, knowingly engaged in undisclosed business practices, and/or knowingly omitted or concealed the material information from advertising described in this Complaint with the intent to directly or indirectly induce Plaintiff and other members of the Class to purchase and play the game.

40. The advertising in question concealed or omitted information at the time of purchase including but not limited to:.

a) Failing to disclose that a credit card would be required to open an online game account;

b) Failing to disclose that the subscription fee would be charged to a credit card regardless of whether the user played or not;

c) Failing to disclose that the user does not have the option of skipping his subscription even a month;

d) Failing to disclose that the user cannot skip a month's subscription fee even if he was not playing the game;

e) Failing to disclose that if the user did not pay the monthly fees, then penalties, including late fees and reactivation fees, would be applied.

f) Failing to disclose that when the user's subscription is closed for his failure to pay the subscription fee, the user has to pay the subscription fees for the months the account is closed before he can reactivate the subscription.

g) Failing to disclose that Defendants have the sole discretion to cancel the user's subscription for any purpose at any time. Defendants failed to disclose that Defendants charge the user for the entire month's subscription, regardless of when

the subscription is terminated during the month.

h)       Failing to disclose that Defendants at their discretion will shut down the website for system maintenance.  Defendants failed to disclose that while the website is shut down, the users are unable to pay their monthly subscription fees.  Defendants failed to disclose that if the user's monthly subscription fee is due while the system is down for maintenance and the user is blocked by Defendants from making payment, Defendants charge the user a late fee and reactivation fee in addition to the monthly subscription fee.

i) Failing to disclose that the game the user purchased would become useless and of no value and the user would have to buy the  game again  if the user stopped paying the subscription fee for three months;

j) Failing to disclose that the user would lose his/her game data and characters if the user stopped paying the subscription fee for three months;

k)       Failing to disclose that the user had to pay the subscription fee in order to keep the game and game account usable;

l) Failing to disclose that the subscription fee-- or the fee to play the game-- must be paid every month.   The information on the game box merely states that "additional online fees required" without any explicit disclosure regarding the monthly obligation for perpetuity.

41.     When Defendants disseminated the advertising described herein, they concealed or omitted to certain critical information about the game and their

business practices with respect to the game in violation of the Fair Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.  Defendants knew that retailers do not allow purchasers of computer games to return the merchandise after the game has been opened.  Therefore, Defendants knew that by failing to disclose this information at the time of purchase, Plaintiff and the Class could not return the merchandise to get their money back to the extent that they did not agree with any of the terms and conditions of the game that were not disclosed on the box prior to purchase.

42.     Plaintiff, on behalf of herself and on behalf of the Class, seeks restitution, disgorgement, injunctive relief, and all other relief allowable under § 17500, et seq.

## COUNT III

### For Unjust Enrichment Against Defendants Based on Violations Alleged in Counts I and II

43.     Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

44.     As a direct and proximate result of the misconduct and unfair and undisclosed business practices set forth above, Defendants have been unjustly enriched.

45.     Through false advertising, unfair and undisclosed business practices, and fraudulent concealment in connection with the advertising, marketing, promotion and sale of the game, Defendants reaped benefits which resulted in their wrongful receipt of revenues. Accordingly, Defendants will be unjustly enriched unless ordered to disgorge those revenues for the benefit of Plaintiff and the Class.

## PRAYER FOR RELIEF

1.     That this matter be certified as a class action with the Class defined as set forth above under Fed. R. Civ. P. 23(b)(3), or in the alternative, Fed. R. Civ. P.

23(b)(2), and that the Plaintiff be appointed Class Representative, and her attorneys be appointed as Class Counsel.

2.　　That the Court enter an order requiring Defendants to immediately cease the wrongful conduct as set forth above; enjoining Defendants from continuing to falsely advertise or conceal material information about the game; enjoining Defendants from engaging in the unfair and undisclosed business practices; and ordering Defendants to engage in a corrective notice campaign;

3.　　That judgment be entered against Defendants in an amount underdetermined for unjust enrichment, including disgorgement of profits received by Defendants as a result of said purchases, appropriate equitable relief, attorney's fees and costs of suit;

4.　　That judgment be entered against Defendants for damages, statutory damages, punitive damages, costs of suit, attorney's fees and injunction; and

5.　　For prejudgment and post-judgment interest

6.　　For such other relief as the Court deem just and proper.

Dated:  July 31, 2009　　　　　　　　**MAKAREM & ASSOCIATES, APC**

By: _____
　　Ronald W. Makarem, Esq.
　　Marni B. Folinsky, Esq.

CLASS ACTION FIRST AMENDED COMPLAINT

PROOF OF SERVICE
(Code of Civil Procedure §1013A(d))

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 11601 Wilshire Boulevard, Suite 2440, Los Angeles, CA 90025-1740. On July 31, 2009, I caused the foregoing document described as:

Class Action First Amended Complaint

Said document was served on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Joel D. Siegel, Esq.
Sonnenschein Nath & Rosenthal LLP
601 South Figueroa Street
Suite 2500
Los Angeles, California 90017-5704

__xx__ BY MAIL: I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with this business' practice for collection and processing of mail and that on the same day, and in the ordinary course of business, said mail is deposited in the United States Mail with postage thereon fully prepaid at Los Angeles, California. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit/proof of service.

___ PERSONAL SERVICE: I delivered said envelope by hand to the offices of the addressee(s).

___ VIA FACSIMILE: On to the interested parties above-designated at the fax numbers noted above.

__ VIA OVERNIGHT DELIVERY: I placed such envelope for regularly scheduled pickup at our offices on the date of this declaration by our usual overnight delivery service.

__xx___ (Federal) I declare that I am employed in the offices of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 31, 2009, at Los Angeles, California.

Stefani McDowell

Printed on Recycled Paper