1    JOEL D. SIEGEL (State Bar No. 155581)
     E-mail: jsiegel@sonnenschein.com
2    ANDREW R. CAHILL (State Bar No. 233798)
     E-mail: acahill@sonnenschein.com
3    SONNENSCHEIN NATH & ROSENTHAL LLP
     601 South Figueroa Street, Suite 2500
4    Los Angeles, California 90017-5704
     Telephone: (213) 623-9300
5    Facsimile: (213) 623-9924

6    CHRISTIAN S. GENETSKI (*Pro Hac Vice* Admitted)
     Email: cgenetski@sonnenschein.com
7    SONNENSCHEIN NATH & ROSENTHAL LLP
     1301 K Street, N.W., Suite 600
8    Washington, DC 20005
     Telephone: (202) 408-6400
9    Facsimile: (202) 408-6399

10   Attorneys for Defendants
     Square Enix of America Holdings,
11   Inc. and Square Enix, Inc.

12

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16

17   ESTHER LEONG, individually and        No. CV09-04484 PSG (VBKx)
     on behalf of all others similarly
18   situated,,                            MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
19          Plaintiff,                     MOTION TO DISMISS FIRST
                                           AMENDED COMPLAINT BY
20   vs.                                   DEFENDANTS SQUARE ENIX OF
                                           AMERICA HOLDINGS, INC. AND
21   SQUARE ENIX OF AMERICA                SQUARE ENIX, INC.
     HOLDINGS, INC., a Delaware
22   corporation; SQUARE ENIX, INC., a
     Washington corporation, DOES 1-10,
23                                         Hearing Date:   September 21, 2009
            Defendants.                    Time:           1:30pm
24                                         Courtroom:      790

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................... 1

II. THE FAC's CONCLUSORY ALLEGATIONS AND NOTABLE OMISSIONS ........................................................................ 3

III. ARGUMENT ...................................................................... 6

A.  The FAC Fails to Meet the *Twombly* Rule 12(b)(6) Requirement that Plaintiff Allege Facts that Plausibly Show That Square Enix's Routine Business Practices were "Unfair" or "Deceptive" ................................................................ 6

    1.  Plaintiff's Mere Denomination of Square Enix's Standard, Lawful Business Practices as "Unfair" or "Deceptive" is Insufficient to State a Plausible UCL or FAL Claim Where She Offers No Facts Evidencing any Actual Unfairness or Deception and Where All Putative Class Members Consented to the Subject Practices............... 7

        a)  Absent some additional indicia of wrongdoing, charging fees for a service and reserving rights to assess fees, suspend or delete delinquent accounts are patently *fair* business practices. ............................... 10

        b)  Standard business practices are not deceptive where they are disclosed and consented to by customers. ........ 12

    2.  Plaintiff Cannot State a Claim for Unjust Enrichment Where Her Underlying Claims are Invalid, Where the Conduct she Contests is Governed by a Contract Between the Parties, and Where she Received the Benefit of Two Years of Game Play for Which she Paid. .... 13

B.  The FAC Fails Under Rule 9(b) Where It Alleges a Course of Fraudulent Conduct Without Describing with Particularity any False Statements Made by Square Enix that Contradicted its Lawful Disclosures, Much Less Awareness or Reliance by Plaintiff. ........................................................................ 15

C.  The FAC Fails For Lack Of Standing Because Leong Does Not Plead Facts Evidencing that She was Personally Harmed by the Challenged Practices During Her Two Years of Game Play. ......... 17

    1.  Plaintiff lacks Article III standing where the only "injury" she personally claims to suffer is the alleged "loss" of game data she acknowledged and agreed in advance belonged to Defendant.............................................. 17

    2.  Leong Has No Standing Under the UCL or FAL Where She Fails to Allege Any Facts Evidencing that She Suffered a Cognizable Injury as a Result of Her

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-i-

Voluntary Choice to Play Final Fantasy® XI Online Subject to the Terms of the Game. ........................................ 18

    a)    Plaintiff has not alleged injury in fact where the only harm she claims to have suffered is the alleged "loss" of computer game characters that she acknowledged and agreed in advance she would never own. .............................................................. 19

    b)    Plaintiff has not alleged sufficient causation where she pleads neither a single fact that would establish that the "injury" she claims resulted from Square Enix's practices, nor one showing that she relied on Square Enix's false statements to her detriment. ........... 20

D.    Plaintiff's Request for Disgorgement of Profits is Plainly Unavailable and Should be Stricken. ................................................. 22

E.    Leong's Citations To Cal. Civ. Code § 1750 et. seq. And Cal. Civ. Proc. Code § 1021.5 Are Similarly Misplaced and Should Also be Stricken. ................................................................................. 23

IV.    CONCLUSION ....................................................................... 24

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT MOTION TO DISMISS

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Altera Corp. v. Clear Logic, Inc.*
424 F.3d 1079 (9th Cir. 2005)..................................................... 12

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
421 U.S. 240 (1975) ..................................................... 23

*Ashcroft v. Iqbal,*
__ U.S. __, 129 S.Ct. 1937 (2009) ..................................................... 7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................... 6, 7

*Cattie v. Wal-Mart Stores, Inc.,*
504 F. Supp. 2d 939 (S.D. Cal. 2007) ..................................................... 20, 21

*Davidson & Assocs. v. Jung,*
422 F.3d 630 (8th Cir. 2005) ..................................................... 12

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982) ..................................................... 17

*Horne v. Novartis Pharm. Corp.*
541 F. Supp. 2d 768, 776 (W.D.N.C. 2008) ..................................................... 5

*Laster v. T-Mobile United States, Inc.,*
407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..................................................... 19, 21, 23

*Lee v. Am. Nat'l Ins. Co.,*
260 F.3d 997 (9th Cir. 2001) ..................................................... 17

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ..................................................... 17

*Meinhold v. Spectrum, L.P.,* No. Civ. S-07-00456 FCD EFB,
2007 WL 1456141 (E.D. Cal. May 16, 2007) ..................................................... 15, 16

*Navarro v. Block,*
250 F.3d 729 (9th Cir. 2001) ..................................................... 6

*Oestreicher v. Alienware Corp.,*
544 F. Supp. 2d 964 (N.D. Cal. 2008) ..................................................... 15

*Schreiber Distributing v. Serv-Well Furniture Co.,*
806 F.2d 1393 (9th Cir. 1986) ..................................................... 15, 16

*Simon v. E. Ky. Welfare Rights Org.,*
426 U.S. 26 (1976) ..................................................... 17

*Swartz v. KMPG LLP*
476 F.3d 756 (9th Cir. 2007) ..................................................... 5

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003)................................................................. 15, 17

*Walker v. USAA Cas. Ins. Co.,*
  474 F. Supp. 2d 1168 (E.D. Cal. 2007)................................................... 13, 22

*Williams v. Gerber Prod. Co.,*
  552 F.3d 934 (9th Cir. 2008)...................................................................... 7

*Yourish v. Cal. Amplifier,*
  191 F.3d 983 (9th Cir. 1999)..................................................................... 15

## STATE CASES

*Berryman v. Merit Prop. Mgmt., Inc.,*
  152 Cal. App. 4th 1544, 1555 (2007) ........................................................ 11

*Buckland v. Threshold Enters, Ltd.,*
  155 Cal. App. 4th 798 (2007)..................................................................... 19

*Byars v. SCME Mortgage Bankers, Inc.*
  109 Cal. App. 4th 1134, 1149 (2003) ...................................................... 8, 10

*Cal. Med. Ass'n Inc. v. Aetna U.S. Healthcare of Cal., Inc.,*
  94 Cal. App. 4th 151, 172 (2001)............................................................... 14

*Chern v. Bank of Am.,*
  15 Cal.3d 866 (1976).................................................................................. 22

*Evans v. Chase Manhattan Bank USA, N.A.,*
  No. C-05-3968 SC, 2006 WL 213740
  (N.D. Cal. Jan. 27, 2006) ............................................................. 8, 10, 12, 13

*Hall v. Time, Inc.,*
  158 Cal. App. 4th 847 (2008).............................................................. 19, 20

*In Re Tobacco II Cases,*
  45 Cal. 4th 298 (2009) .............................................................................. 20

*Khoury v. Maly's of Cal., Inc.,*
  14 Cal. App. 4th 612 (1993)........................................................................ 8

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003) ............................................................................ 22

*Medina v. Safe-Guard Prods.,*
  164 Cal. App. 4th 105 (2008)..................................................................... 20

*Melchior v. New Line Producs., Inc.,*
  106 Cal. App. 4th 779 (2003) .................................................................... 13

*Motors, Inc. v. Times Mirror Co.,*
  102 Cal. App. 3d 735 (1980)........................................................................ 8

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-iv-

*Olsen v. Breeze, Inc.,*
48 Cal. App. 4th 608, 628-29 (1996) .................................................... 13, 18

*Peterson v. Cellco P'ship,*
164 Cal. App. 4th 1583 (2008)............................................................ 19, 20

*Searle v. Windham Int'l, Inc.,*
102 Cal. App. 4th 1327(2002)................................................................. 12

*Walker v. Countrywide Home Loans, Inc.*
98 Cal. App. 4th 1158 (2002)................................................................. 11

## STATE STATUTES

California's Unfair Competition Law, California Business and
Professional Code §§ 17200-17210 ................................................. 2, 13, 20

False Advertising Law, Cal. Bus. & Prof. Code §§ 17500-17509............. 2, 20, 22

California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750-1784 .... 2, 23

Cal. Civ. Proc. Code § 1021.5 ................................................................. 23

## FEDERAL RULES

Fed. R. Civ. P. 9(b)......................................................................... 3, 15

Fed. R. Civ. P. 12(b)(6) ................................................................... 3, 6

## OTHER AUTHORITIES

California Proposition 64 (2004)......................................... 3, 19, 20, 21

Schwarzer et al., *The Rutter Group Practice Guide:  Federal Civil
Procedure Before Trial* (2009) ¶ 10:889.................................................. 23

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-v-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## I.   INTRODUCTION

This class action lawsuit concerns a former long-time player of an online computer game frustrated by her apparent failure to resuscitate characters in the game two years after she abandoned it.  That player, plaintiff Esther Leong ("Leong"), purports to represent a class of gamers allegedly aggrieved by a number of the game's billing and service "aspects," which her first amended complaint ("FAC") summarily mischaracterizes as "unfair" and "deceptive." (FAC ¶ 2.)  The FAC, however, makes clear that:

- Leong was not personally subjected to most of the challenged game "aspects" during her two years of play and thus cannot represent a class claiming injury from them;

- The only specific "harm" Leong alleges she incurred (beyond voluntarily paying the monthly fee for access to play the game) is her supposed inability to retrieve former game characters and resume playing the game at the same former "level" when she returned after a two year hiatus;[1]

- The class objects to standard industry practices as "unfair" but fails to support that claim with any factual allegation that they were actually imposed improperly, disproportionately, or unreasonably on any member of the class; and

- The only allegedly "false and misleading" statements in fact accurately disclose that the game requires players to pay additional fees and agree to contractual terms.

---

[1]  (*Id.* ¶ 23)  As discussed in more detail herein, this allegation of injury is particularly specious where Leong acknowledged and also agreed by contract prior to creating her account that Square Enix, not Leong, retained ownership of all game data. *See infra* pp. 9-13.  Additionally, while not relevant to resolve the current motion, Leong's failure to allege that she made any attempt to initiate or inquire about Square Enix's account and character recovery processes to reactivate the still existing character data before filing this frivolous action is telling.

1    Incredibly, the FAC also concedes that all class members consented to a

2    member agreement before playing the game but neglects to attach that contract or,

3    worse, to acknowledge that the allegedly "unfair aspects" of the game are culled

4    straight from the clear and accurate disclosures to consumers in that agreement.[2]

5    The reason for this omission is obvious.  Plaintiff and the class cannot sustain a

6    valid claim that standard business practices are "unfair" or "deceptive" where

7    those practices were disclosed to the class, agreed to by the class, and adhered to

8    by the defendant.  Neither Leong, nor the hypothetical class she is unfit to

9    represent, can state viable legal claims based on their belated objections to lawful

10   industry practices to which they previously agreed.  This case should be

11   dismissed.[3]

12       The allegedly "unfair aspects" of defendant Square Enix's Final Fantasy®

13   XI Online game service identified in the FAC are in reality common practices in a

14   number of industries:  the imposition of monthly subscription fees; the right to

15   charge late payment or reactivation fees; the right to suspend or delete user

16   accounts and game data; and the right to temporarily take down the game system

17   for maintenance.  (FAC ¶¶ 2, 19.)  After identifying these non-controversial

18   practices, the FAC then jumps to the conclusory allegation that they were "unfair"

19

20   [2] FAC ¶¶ 9,10 (referencing written agreement dictating California law controls, and quoting

21   defendant's PlayOnline® Member Agreement and noting all class members have consented
     thereto); *see infra* pp. 9-12 and notes 4, 5.

22   [3] The FAC is Leong's second try at stating a claim.  Leong filed her initial complaint against

23   defendants Square Enix of America Holdings, Inc. and Square Enix, Inc. ("Square Enix") on
     June 22, 2009.  In that pleading, Leong purported to represent a class of purchasers of unnamed

24   Square Enix online computer games bringing claims under California's Unfair Competition
     Law, California Business and Professional Code §§ 17200-17210 ("UCL") and False

25   Advertising Law, California Business and Professional Code §§ 17500-17509 ("FAL"), and for
     unjust enrichment, but failed to identify the source of her alleged grievance or the nature of any

26   injury suffered.  Following a meet and confer with undersigned counsel in which these
     deficiencies were raised, plaintiff filed the instant FAC, in which she asserts the same claims.

27

28                                          -2-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  and that Plaintiff and the class were "harmed" by their invocation, without

2  asserting any underlying facts providing a plausible basis to infer actual unfairness

3  or deception. (*Id.* ¶ 4.)  In sum, the FAC appears to be little more than the result of

4  putative class counsel scouring Square Enix's reservation of rights in its player

5  agreement for a brass ring.  As such, it exemplifies the type of lawyer-driven

6  action the Federal Rules of Civil Procedure and California's Proposition 64 both

7  were designed to preclude.  It fails to provide Square Enix with adequate notice of

8  the claims against it, much less the specificity required for fraud, and fails to

9  identify how Leong has standing to pursue a claim even if one existed.  Given

10 these failures, on her second pass, to meet the prerequisites of Rules 12(b)(6) and

11 9(b) and to establish standing, Leong's FAC should be dismissed without further

12 leave to amend.

## II.   THE FAC'S CONCLUSORY ALLEGATIONS AND NOTABLE OMISSIONS

Square Enix develops, markets, and sells online computer games, including

the immensely popular Final Fantasy® XI Online.  (*Id.* ¶¶ 1,12-13.)  Plaintiff is a

California resident who purchased the game, opened an online play account, and

then played the game and paid monthly subscription fees for two years.  (*Id.* ¶ 22.)

She brought this lawsuit on behalf of a broadly defined putative class, namely

purchasers of Final Fantasy® XI Online from June 1, 2005 through the present.

(*Id.* ¶ 1.)[4]

---

[4] Despite apparently basing its claims in part on the Final Fantasy® XI Online game packaging and in part on the practices disclosed in Square Enix's agreement with users, the FAC fails to allege whether class members all purchased the game with the same or different packaging, or whether each class member assented to the same version of the agreements.  For purposes of this motion and this named Plaintiff, Square Enix has attached the versions of the PlayOnline® Member Agreement and game packaging in use at the time of Leong's purchase and account creation in 2005.  FAC ¶ 21; *see infra* note 5.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

25306380\V-9

The FAC attempts to isolate certain "aspects" of Square Enix's practices associated with Final Fantasy® XI Online that Plaintiff and the class assert provide the basis for their claims. Specifically, Plaintiff complains that Square Enix engaged in "deceptive advertising, unfair and undisclosed business practices and fraudulent concealment" by: 1) allegedly requiring users to pay a monthly subscription fee to play the online game, regardless of whether they actually log on and play in any given month; 2) allegedly disclosing on the game software packaging that "'additional online fees [are] required,'" but not disclosing that the fees are paid monthly; 3) allegedly charging penalties and interest for late payment of subscription fees; 4) allegedly charging customers a reactivation fee to reinstate an account after suspension for non-payment of fees; 5) allegedly terminating the right to play online games and/or delete character and account data for failure to pay fees for over three months; 6) allegedly requiring users whose accounts have been terminated for more than three months to purchase a new copy of the game software and create a new account if they seek to resume online play; and 7) allegedly reserving the discretion to shut down the PlayOnline® game servers for system maintenance and potentially blocking users from making the monthly fee payment during these brief periods. (FAC ¶¶ 2, 19.) On the basis of these generalized allegations about Square Enix's industry standard and lawful practices, Plaintiff asserts claims for violation of the UCL; the FAL; and unjust enrichment. (Id. ¶ 5).

The FAC, however, has several notable omissions, some of which may be properly answered herein.[5] Amidst several inaccuracies concerning the nature of

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

---

[5] Documents such as the contract at issue here, which Plaintiff selectively quotes from in paragraph 10 and relies on or paraphrases in paragraphs 9, 19, 21, 32 and 40, and the game packaging partially quoted in paragraphs 19, 21, 32 and 40 are properly considered on a motion to dismiss. "[I]n order to '[p]revent [ ] plaintiffs from surviving a Rule 12(b)(6) motion by

-4-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    the game, the FAC correctly notes that Final Fantasy® XI Online is, as the name

2    implies, played online and that a user must create a PlayOnline® Account before

3    playing the game. (FAC ¶¶ 14, 15.) Although it neglects to identify the

4    agreement by name, the FAC concedes in its jurisdictional allegations that all class

5    members consented to a written agreement dictating that California law controlled

6    this action, and specifically quotes from the Square Enix PlayOnline® Member

7    Agreement as the basis for jurisdiction over the class. (*Id.* ¶ 9, 10.)  As the face of

8    that contract makes clear, the aspects of the game to which Plaintiff now objects

9    are accurately and completely disclosed, and agreed to, before a player is ever

10   charged a subscription fee. (Ex. A.)

11        The FAC similarly makes selective use of the game packaging, referring to

12   a portion of a disclosure on the Final Fantasy® XI Online packaging without

13   attaching a copy of the allegedly misleading packaging. (FAC ¶ 19(c).)  Plaintiff

14   quotes the packaging's notice to consumers that additional online fees are required

15   to play the game, but omits the further notice on the box that "[a]cceptance of

16   certain agreements is required . . . . [U]sers are responsible for all applicable

17   Internet and subscription fees." (Ex. B).  Inexplicably, the FAC also neglects to

18   mention the prominent, shiny gold sticker on the front of the game packaging that

19

20   deliberately omitting ... documents upon which their claims are based,' a court may consider a
     writing referenced in a complaint but not explicitly incorporated therein if the complaint relies
21   on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763
     (9th Cir. 2007) (all alterations except first in original) (citation omitted); *see Horne v. Novartis*
22   *Pharm. Corp.*, 541 F. Supp. 2d 768, 776 (W.D.N.C. 2008) ("Because the . . . package insert is
     integral to and explicitly relied on in the Complaint, and the Plaintiff does not challenge its
23   authenticity, the entire insert can be considered in a motion to dismiss . . ."). The printed version
     of the online click-through 2005 PlayOnline® Member Agreement on which the FAC relies is
24   attached as Exhibit A, and a scan of the PC game packaging available for sale in 2005 when
     Leong purchased the product is attached as Exhibit B to the August 26, 2009 Declaration of
25   Steve Ross filed concurrently herewith. Square Enix attaches these documents under the
     authorities cited above but by doing so does not seek to convert this motion to one for summary
26   judgment.

27

28                                                    -5-

states "FREE SUBSCRIPTION FOR 30 DAYS," which provides clear and conspicuous notice that the game requires a paid subscription. (*Id.*)  Significantly, the FAC does not contain a single allegation regarding any *inaccurate* Square Enix statements or advertisements from which a reasonable consumer could infer that the online game could be played without a paid subscription.  Nor does it even allege where Leong purchased the Final Fantasy® XI Online game, which packaging or advertising materials she saw prior to purchasing it or where she saw them, or that she relied upon any such materials to her detriment.  Finally, the FAC lacks any specific fact allegations that Leong had her PlayOnline® account suspended, was unable to make a payment due to a system outage, paid any late fees or interest, ever lodged a complaint or sought a refund from Square Enix, or inquired about Square Enix's procedures for reinstating a dormant account.

## III.   ARGUMENT

### A.   The FAC Fails to Meet the *Twombly* Rule 12(b)(6) Requirement that Plaintiff Allege Facts that Plausibly Show That Square Enix's Routine Business Practices were "Unfair" or "Deceptive"

A court may dismiss a claim under Rule 12(b)(6) for "failure to state a claim" upon which relief can be granted where a claim lacks a "cognizable legal theory [ ], or [there is] an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 731, 732 (9th Cir. 2001).  As the Supreme Court emphasized in *Bell Atlantic Corp. v. Twombly*, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted).  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." 550 U.S. 544, 557 (2007).

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-6-

25306380\V-9

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

As the Supreme Court held in *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "[W]here the well pleaded facts do not permit the court to infer more than *the mere possibility of misconduct*, the complaint has alleged--but it has not 'shown'-'that the pleader is entitled to relief.'" *Id*. at 1950 (emphasis added) (second altercation in original) (quoting Fed. Rule Civ. Proc. 8(a)(2)). In other words, "a complaint [that] pleads facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief" and thus cannot survive a motion to dismiss. *Id*. at 1949 (citation omitted) (internal quotation marks omitted) Finally, in determining whether a complaint plausibly states a claim for relief, the court should not consider the legal conclusions contained therein. Legal conclusions are "not entitled to the assumption of truth" and "must be supported by factual allegations." *Id*. at 1950

      **1.**    **Plaintiff's Mere Denomination of Square Enix's Standard, Lawful Business Practices as "Unfair" or "Deceptive" is Insufficient to State a Plausible UCL or FAL Claim Where She Offers No Facts Evidencing any Actual Unfairness or Deception and Where All Putative Class Members Consented to the Subject Practices.**

Leong's complaint fails to assert any facts to support her claims that plausibly demonstrate Square Enix engaged in an "'unlawful, unfair or fraudulent business practice.'" *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code § 17200). Likewise, Leong's complaint fails to adduce facts showing that Square Enix engaged in "unfair, deceptive, untrue, or misleading advertising" sufficient to sustain a claim under the FCL. *Id*. (quoting Cal. Bus. & Prof. Code § 17500). As described below, the FAC does not "state with reasonable particularity the facts supporting the statutory elements of the violation" under either statute. *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT MOTION TO DISMISS

25306380\V-9

1   612, 619 (1993). Nor does Leong's complaint provide any description on how

2   industry (and indeed cross-industry) standard contract terms are "unfair" or cause

3   harm that outweighs any benefits that the conduct may have. *See Motors, Inc. v.*

4   *Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980).

5       Beyond the sort of generalized "labeling" allegations that *Twombly* rejected,

6   the FAC fails to offer any specific facts suggesting *how* Square Enix's conduct

7   was unlawful. Instead, it merely identifies the rights and responsibilities of users

8   of the Final Fantasy® XI Online game service, all of which on their face are plainly

9   lawful and common in the online game and numerous other industries, without

10   offering any additional facts explaining why such standard practices should be

11   deemed unfair in this context or demonstrating how they were unreasonably

12   applied to the plaintiff or the class. California law requires more. *Byars v. SCME*

13   *Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134, 1149 (2003) (lender's payments

14   to brokers not "unfair" where payments were "widespread and commonly used as

15   a method to compensate mortgage brokers for services provided to borrowers and

16   the lender"). Moreover, the FAC neglects to allege how such otherwise lawful

17   practices could have deceived the class where, as the FAC concedes, each of the

18   subject practices were disclosed and consented to by the class. *Evans v. Chase*

19   *Manhattan Bank USA, N.A.*, No. C-05-3968 SC, 2006 WL 213740, at *6 (N.D.

20   Cal. Jan. 27, 2006) (actions consistent with the "fully-disclosed terms of the

21   contract . . . cannot plausibly be labeled a deception"), *aff'd*, 267 Fed. Appx. 692

22   (9th Cir. 2008).

23       The FAC does not identify the source of the allegedly unlawful practices.

24   Given that *no* named plaintiff claims to have actually experienced most of the

25   "harms" alleged, it appears likely that Plaintiff's counsel "uncovered" these

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-8-

25306380\V-9

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   practices by scouring Square Enix's PlayOnline® Member Agreement, to which

2   the FAC acknowledges all class members assented.[6]  By failing to identify this

3   source, the FAC attempts, unsuccessfully, to avoid a fatal defect:  that every

4   member of its purported class was aware of and consented to these terms.  Indeed,

5   a review of the terms of that agreement plainly demonstrates that the "aspects" of

6   the game objected to in the FAC are disclosed to users prior to the creation of a

7   Final Fantasy® XI Online game account or charge of any subscription fee.  For

8   example, the PlayOnline® Member Agreement states:[7]

9   - "4.1 **Ownership and Rights**.  SEUI . . . owns and shall retain all right,
10      title and interest in and to the PlayOnline Service, the Software and all
        Documentation, and *will be the sole owner of any and all data you*
11      *generate through your use of the PlayOnline Service, and you receive*
        *only limited rights to access and use PlayOnline Service . . . . SEUI shall*
12      *reserve its rights in its sole discretion to delete, alter, or transfer any and*
13      *all data at any time without notice to User*."  (Ex. A at 2.)

14  - "5.2 **Subscription Fee**.  Your access to and use of the Fee-Based
15      Services are contingent upon your timely and complete payment of the
        applicable Subscription Fee . . . . You acknowledge and understand that
16      your approved payment method will automatically be charged for the
        Subscription Fee on a monthly basis, at the beginning of each month . . .
17      ." (*Id*.)

18  - "(a) **Payment of Fee**. . . . If at any time your payment method should
19      cease to be valid, or should otherwise reject charges, your access to and
        use of the PlayOnline Services as a whole will be suspended . . . . Before
20      reactivation of your account, all delinquent Subscription Fees will be
        charged to the valid payment method newly registered. You may incur
21      fees (in addition to the Subscription Fee) for any such reactivation of
22      your account, and you acknowledge and understand that such fees will

23  _____

24  [6]  FAC ¶¶ 9, 10; *see* Ex. A at 1.  As previously stated, the PlayOnline® Member Agreement
25  (attached as Ex. A) may properly be considered by this court on a motion to dismiss given
    Plaintiff's reliance on and quotation from it in formulating her claims.  *See supra* note 5.

26  [7]  Square Enix is referred to as "SEUI" in the 2005 version of the agreement.

27

28                                             -9-

be charged without further notice to you." (*Id.*)

- "(b) **Authorization of Monthly Payment**. . . . You understand and agree that all payments to SEUI hereunder will be nonrefundable, even if you decide to terminate your access to and use of the Fee-Based Services in the middle of any month or other period for which you have already paid for such access and use." (*Id.* at 3.)

- "(c) **Late Fees and SEUI Rights**. In the event that you are late in paying any Subscription Fee due hereunder, or refuse to pay any credit card or other applicable bill containing a Subscription Fee charge (such that SEUI incurs fees, penalties, or other expenses as a result thereof), SEUI *shall be entitled* to charge you a late fee at the annual rate maximum allowed by applicable laws, of all amounts due and owing, charged on a monthly basis for so long as you remain delinquent in your payment obligations." (*Id.*) (emphasis added).

Clearly, the "aspects" of the game the FAC challenges are not only garden-variety, they are all contained within the four corners of the agreement to which all class members consented and Plaintiff has alleged no facts that indicate Square Enix applied these terms in an unfair matter -- or even that Square Enix enforced its rights at all (other than its routine collection of monthly fees users agreed to pay). Given this backdrop, which the FAC acknowledges, the Plaintiff's duty under the Federal Rules and California law is to provide a plausible factual basis for inferring that Square Enix engaged in some unlawful acts that transformed these lawful, disclosed practices into unfair or deceptive ones. *Byars*, 109 Cal. App. 4th at 1149, 1150; *Evans*, 2006 WL 213740, at *6. She does not.

### a) Absent some additional indicia of wrongdoing, charging fees for a service and reserving rights to assess fees, suspend or delete delinquent accounts are patently *fair* business practices.

The FAC makes clear that Leong played the game for two years without complaint or incident; there is no allegation she even objected to paying her subscription fee. (FAC ¶¶ 21-23.) The FAC does not identify the amount of subscription fees paid, much less allege that they were excessive. There is no

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-10-

1   factual allegation identifying a specific assessment of any late or reactivation fee

2   or account suspension, much less one demonstrating that such actions were

3   imposed unreasonably or for an improper purpose. All the FAC makes clear is

4   that Plaintiff clearly received the promised benefit -- use and enjoyment of the

5   online game -- in exchange for her payment of fees. Where is the "unfairness?"

6   Even now, the sole "aspect" about which Leong personally complains is that

7   she was allegedly unable to retrieve former characters and game data when she

8   created a new account two years after cancelling her former account, despite

9   knowing from the first of her twenty-four months playing the game that she had no

10  right to that data. (Id. ¶ 23). Accepting this allegation as true for purposes of this

11  motion, the FAC fails to articulate any legitimate basis for its absurd conclusion

12  that requiring Leong to start over in the game after a two-year absence rises to the

13  level of an unfair business practice suitable for resolution in federal court.

14  In short, the "aspects" of the game and reservation of Square Enix rights

15  identified in the FAC -- charging fees for use of a service, reserving the right to

16  impose fees on delinquent accounts, and suspending service for non-payment --

17  are, on their face, standard, lawful business practices common to the online game

18  industry and countless others. Absent factual allegations plausibly demonstrating

19  their unlawful application in this context -- and the FAC contains none -- the

20  Plaintiff cannot sustain her claim by simply labeling them "unfair." *Berryman v.*

21  *Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555 (2007) (noting that there is

22  nothing inherently unfair about for-profit business charging fees for service absent

23  plaintiff alleging facts showing they were not permitted to do so); *Walker v.*

24  *Countrywide Home Loans, Inc.* 98 Cal. App. 4th 1158, 1170, 1175, 1178 (2002)

25  (stating that passing on actual cost of property inspection fees was not "unfair" as

26  matter of law because small cost of inspections was insignificant when compared

27  to their utility).

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-11-

1

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### b) Standard business practices are not deceptive where they are disclosed and consented to by customers.

Plaintiff likewise fails to allege any specific facts from which this Court could plausibly infer that she was deceived. Like everyone else in the putative class, Leong was presented with the provisions of the PlayOnline® Member Agreement prior to initiating her account, and opted to consent to them, pay her subscription, and play the game without complaint for the next two years. (FAC ¶¶ 10, 21-22.) As the face of the agreement makes clear, Square Enix plainly disclosed the practices to which she now objects. (Ex. A.) By referencing but failing to attach the agreement, Plaintiff attempts to sidestep the clear implication of her acknowledgement that all putative class members consented to the agreement, namely that she and the class made a voluntary, informed decision to accept the contract and play the game.[8] Under these alleged facts, her claims are foreclosed by California law. *Evans*, 2006 WL 213740, at *6 (stating that actions consistent with "fully-disclosed terms of the contract . . . cannot plausibly be labeled a deception"); *Searle v. Windham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334-35 (2002) (noting that unfair competition law is not an open license to review fairness of contracts).

Notably, the FAC does not allege that Square Enix elsewhere made any false statements disavowing these practices or suggesting that play was not subject to them. In fact, the FAC's sole allegation regarding deception is that the Final Fantasy® XI Online game packaging contains the *accurate* disclosure that "'additional online fees [are] required.'" (FAC ¶¶ 2(c), 19(c).) Of course, as with

---

[8] As the FAC concedes, such agreements are readily recognized as enforceable contracts. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005) (indicating that software license agreements are valid contracts for purposes of tortious interference claim); *Davidson & Assocs. v. Jung*, 422 F.3d 630, 639 (8th Cir. 2005) (enforcing clickwrap terms for online game software and service).

-12-

her selective use of the PlayOnline® Member Agreement, Leong also neglects to disclose in her FAC that the game packaging also notifies potential purchasers that "Acceptance of certain agreements is required . . . Users are responsible for all applicable Internet and subscription fees" and has an eye-catching gold sticker on the front promoting a "FREE SUBSCRIPTION FOR 30 DAYS." (Ex. B.)  The FAC is devoid of any allegation that Square Enix indicated to a single potential customer on any occasion, in any form, that its practices differed from those disclosed on the box and in the PlayOnline® Member Agreement, much less that Plaintiff or any class member saw or relied on such a claim.  These deficiencies aside, the FAC does not allege that Plaintiff or the class rejected the terms of the PlayOnline® Member Agreement and sought a refund of the game; rather, it alleges that that once they reviewed the agreements they agreed to abide by them. Accordingly, the FAC provides no plausible factual basis for its assertion that any invocation of the challenged practices following the purported class' consent to them was deceptive.  *See Evans*, 2006 WL 213740 at, *6; *see also Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 628-29 (1996) (affirming summary adjudication against plaintiff on a Section 17200 claim involving alleged "unfair" contractual releases relating to ski bindings since consumers had a choice in the matter -- they did not have to ski).

> **2.      Plaintiff Cannot State a Claim for Unjust Enrichment Where Her Underlying Claims are Invalid, Where the Conduct she Contests is Governed by a Contract Between the Parties, and Where she Received the Benefit of Two Years of Game Play for Which she Paid.**

Under California law, "unjust enrichment" is not a stand-alone claim and, as noted above, Plaintiff has stated no valid claim against Square Enix.  *See Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment."); *Walker v. USAA Cas. Ins. Co.* 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) (recognizing that California law does not

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-13-

provide independent cause of action for unjust enrichment), *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F. 3d 1025 (9th Cir. 2009). Plaintiff concedes as much as the FAC states that the purported unjust enrichment cause of action solely is derivative of the UCL and FAL claims. (FAC ¶¶ 44-45.) As detailed herein, Plaintiff cannot sustain her UCL and FAL claims. Her unjust enrichment claims fall with them.

Moreover, California law is clear that unjust enrichment is unavailable to recover on rights that are governed by an express contract. *See Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights."). Here, Plaintiff has alleged that she and the putative class members each purchased Final Fantasy® XI Online and consented to the PlayOnline® Member Agreement. (FAC ¶¶ 10, 21.) These agreements define the parties' rights, and thus there can be no claim for unjust enrichment based on Plaintiff's purchase or online play of the game.

Finally, Plaintiff's purported unjust enrichment claim is itself fatally defective, as Plaintiff concedes she received a full benefit for the money she paid Square Enix. As the FAC details, Leong played Final Fantasy® XI Online for over two years, and in that time apparently enjoyed the gaming experience provided by Square Enix and for which she was paying. (FAC ¶ 22.) The PlayOnline® Member Agreement to which she consented makes clear that her payment of subscription fees entitles her to *"rights to access and use [the] PlayOnline Service."* (Ex. A at 2.) That same agreement also makes clear that Square Enix is *"the sole owner of any and all data* [that she] *generate[d] through [her] use of the PlayOnline Service."* (*Id.*) In short, Plaintiff got what she paid for, and alleges no

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-14-

facts suggesting any plausible basis to show that Square Enix was unjustly enriched.

**B.    The FAC Fails Under Rule 9(b) Where It Alleges a Course of Fraudulent Conduct Without Describing with Particularity any False Statements Made by Square Enix that Contradicted its Lawful Disclosures, Much Less Awareness or Reliance by Plaintiff.**

Heightened pleading requirements apply where a complaint sounds in fraud -- regardless of how a plaintiff may choose to color his or her claims.  Federal Rule of Civil Procedure 9(b) requires a plaintiff to state the circumstances constituting the alleged fraud with "particularity," and not just with conclusory allegations of deceptive behavior.  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999).  Specifically, Rule 9(b) requires that the complaint "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation," *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986), and the plaintiff must set forth an explanation as to what is false or misleading about the statement and why it is false. *See Yourish*, 191 F.3d at 993.  It is also well established that the heightened pleading requirements of Rule 9(b) apply to state-law causes of action that sound in fraud, and specifically to UCL and FAL claims.  *See, e.g., Vess v. Ciba-Geigy Corp. USA,*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008) (applying Rule 9(b) to claims under UCL, FAL, and CLRA), *aff'd*, 322 Fed. Appx. 489 (9th Cir. 2009); *see also Meinhold v. Sprint Spectrum, L.P.*, No. Civ. S-07-00456 FCD EFB, 2007 WL 1456141, at *6 (E.D. Cal. May 16, 2007) (allegations of false and misleading representations "necessarily imply fraud").

Here, where the gravamen of all three of Plaintiff's claims is that Square Enix purportedly engaged in various fraudulent and deceptive practices and advertising, the FAC falls woefully short of the standard set by Rule 9(b).  Plaintiff

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-15-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

fails to identify with the requisite specificity the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations" she attributes to Square Enix. *Schreiber Distrib.*, 806 F.2d at 1401. Broad allegations that advertising materials contain false or misleading statements "are insufficient to give defendant notice of the particular misconduct charged" when the plaintiff fails to identify "what advertisements she is referring to, when she saw them, where she saw them, or how the statements made in those specific advertisements were untrue or misleading." *Meinhold*, 2007 WL 1456141, at *6.

The FAC's sole allegation regarding fraudulent advertising is that the Final Fantasy XI external packaging contains an (accurate) disclosure that "'additional online fees [are] required.'" (FAC ¶¶ 2(c), 19(c).) She does not state, for instance, what the remainder of the game packaging stated, what other advertising she saw or relied upon, where she purchased the game, what material statements regarding fees were false, or how she was otherwise misled. Further, she acknowledges her consent to the terms of the member agreement, but fails to allege how any statements therein were misleading or how she relied on them to her detriment. (FAC ¶ 10.) Nor does she articulate how she was deceived into believing that the express terms of the written agreement could not or did not apply to her during her two years of continuous play of the game. Finally, Plaintiff fails to allege any facts regarding where, when, or how she was allegedly informed that she could not access her character data or reactivate an account in 2009. Because the FAC fails to meet the heightened pleading requirements for claims grounded in fraud under Rule 9(b), it should be dismissed in its entirety. *See Vess*, 317 F.3d at 1108.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT MOTION TO DISMISS

25306380\V-9

**C.** **The FAC Fails For Lack Of Standing Because Leong Does Not Plead Facts Evidencing that She was Personally Harmed by the Challenged Practices During Her Two Years of Game Play.**

**1.** **Plaintiff lacks Article III standing where the only "injury" she personally claims to suffer is the alleged "loss" of game data she acknowledged and agreed in advance belonged to Defendant.**

Article III of the United States Constitution requires a plaintiff in federal courts to show, at a minimum, an "injury in fact" -- in other words, the plaintiff must show that "as a result of the defendant's actions he [or she] has suffered 'a distinct and palpable injury.'" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). The requisite injury is defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted) (internal quotation marks omitted).

Moreover, a plaintiff may not seek relief for any putative class member unless he or she alone can establish the requisite case or controversy. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth*, 422 U.S. at 502) ("That a suit may be a class action, however, adds nothing to the question of standing, for even Named Plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"). Accordingly, to bring suit against Square Enix in federal court, Plaintiff must show that she *personally* "has actually been injured by the defendant's challenged conduct." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001 (9th Cir. 2001) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000)). For nearly all the alleged "harms" in the FAC, she does not make even a cursory attempt to do so.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-17-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   Plaintiff does not allege any facts suggesting that she suffered a cognizable

2   injury from any of Square Enix's alleged practices.  She never alleges, for

3   instance, that she attempted to return the game software or seek a refund after

4   being made aware of the Square Enix practices.  Indeed, she concedes she agreed

5   to the terms of the game, paid the applicable subscription fees and played it

6   thereafter for two years.  Leong does not allege that she was ever assessed a late or

7   penalty fee or interest, nor that she had her account suspended.  (FAC ¶¶ 21-23.)

8   Accordingly, Leong has no standing to represent a class as to any of these

9   supposed "harms."

10   The only specific, factual allegation of "injury" suffered by Leong for which

11   she seeks recovery of damages is her claim that she "lost all characters she had

12   developed, the game data she had acquired, and the game levels advanced up to

13   that point where her account was terminated." (*Id*. ¶ 23.)  As stated previously

14   herein, however, Leong agreed prior to her first minute of game play that her

15   monthly fees afforded her only the use and enjoyment of the online game, and that

16   Square Enix retained all ownership rights in the character and game data. (Ex. A

17   at 2.)  The dubiousness of the assertion that the loss of progress in an online game

18   is a legally protected interest notwithstanding, Leong here expressly acknowledged

19   that she acquired no rights, and thus cannot now claim to be injured by any alleged

20   loss of those rights. *Olsen*, 48 Cal. App. 4th at 628-29 (noting that contractual

21   release not unfair where user had choice to not use service).  The FAC thus fails to

22   allege any injury in fact to support Article III standing.

23       **2.**    **Leong Has No Standing Under the UCL or FAL Where She Fails to Allege Any Facts Evidencing that She Suffered a Cognizable Injury as a Result of Her Voluntary Choice to Play Final Fantasy® XI Online Subject to the Terms of the Game.**

24   

25   

26   Plaintiff's claims under the UCL and the FAL are also subject to specific

27   statutory standing requirements that Plaintiff fails to meet.  To have standing to

28   

-18-

1   sue under the UCL or FAL, a "plaintiff must make a twofold showing:  he or she

2   must demonstrate *injury in fact* and a loss of money or property *caused by*" the

3   alleged unfair conduct.  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590

4   (2008); *see also Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 813,

5   819 (2008); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1193-94 (S.D.

6   Cal. 2005), *aff'd* 252 Fed. Appx. 777 (9th Cir. 2007).  These standing

7   requirements are a product of California's Proposition 64, which voters passed

8   "unequivocally to narrow the category of persons who could sue businesses under

9   the UCL" to prevent abusive, frivolous lawsuits filed by attorneys lacking a client

10   who was actually injured.  *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 853, 854

11   (2008).

### a)   Plaintiff has not alleged injury in fact where the only harm she claims to have suffered is the alleged "loss" of computer game characters that she acknowledged and agreed in advance she would never own.

To plead that he or she has suffered "injury in fact" for purposes of

establishing standing to sue under the UCL and the FAL, a plaintiff must plead

that he or she "expended money due to the defendant's acts of unfair

competition[,]" "lost money or property[,]" or "[was] denied money to which he or

she has a cognizable claim."  *Hall*, 158 Cal. App. 4th at 854; *see also Buckland*,

155 Cal. App. 4th at 814 (describing injury in fact as "a distinct and palpable

injury" or "an invasion of a legally protected interest") (citation omitted).

Again, Plaintiff does not allege that she experienced any cognizable injury

due to Square Enix's alleged conduct.  Although the FAC complains generally on

behalf of the class that Square Enix reserved the right to charge undisclosed

"penalties" and "interest" for late payment of monthly fees and to suspend

delinquent accounts, Leong does not allege that *she* was ever subjected to these

practices.  Thus, even assuming those practices were deceptive or unfair, Leong

cannot represent a class in bringing UCL or FAL claims in connection with them.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-19-

1    The only actual harm she alleges suffering is the inability to recover game

2  characters and data, data that she expressly agreed, before ever entering the game,

3  belonged to Square Enix and not her. (Ex. A at 2.) The FAC is clear: Plaintiff got

4  what she paid for -- the use and enjoyment of playing the game for two years --

5  and does not plausibly explain how such expenditures constitute an *injury*. *See*

6  *Peterson*, 164 Cal. App. 4th at 1592 (when plaintiff paid money and received a

7  book in exchange, he failed to plead injury in fact); *Hall*, 158 Cal. App. 4th at 855

8  (absent allegation that plaintiffs could have paid less for the same insurance, they

9  failed to plead actual economic injury).

10    **b) Plaintiff has not alleged sufficient causation where**
         **she pleads neither a single fact that would establish**
11       **that the "injury" she claims resulted from Square**
         **Enix's practices, nor one showing that she relied on**
12       **Square Enix's false statements to her detriment.**

13    Even when a plaintiff has experienced injury in fact, Proposition 64

14  additionally requires that the plaintiff establish that the claimed injury occurred "as

15  a result of" the challenged conduct. *See* Cal. Bus. & Prof. Code §§ 17204, 17535

16  (West 2009). This language "imports a *reliance or causation* element" into the

17  statutes. *Medina v. Safe-Guard Prods.*, 164 Cal. App. 4th 105, 115 (2008). For

18  example, a plaintiff must show that he or she relied on any alleged

19  misrepresentations or that allegedly unfair practices are causally connected to the

20  claimed injury. *In re Tobacco II Cases*, 46 Cal. 4th 298, 207 P.3d 20 (2009); *Hall*,

21  158 Cal. App. 4th at 855; *see also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d

22  939, 947 (S.D. Cal. 2007) (recognizing that Proposition 64 requires a showing of

23  actual reliance); *Laster*, 407 F. Supp. 2d at 1194 (holding that plaintiffs must

24  allege that they "actually relied on" challenged statements to adequately allege

25  causation under Proposition 64).

26    Plaintiff broadly alleges that Square Enix "dissemin[ated] advertising from

27  California throughout the United States" consisting of "materially untrue and

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-20-

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT MOTION TO DISMISS

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   misleading" (FAC ¶ 39) statements, but fails to 1) identify specific advertisements;

2   2) allege that she read them or; 3) significantly, allege that *she relied upon the*

3   *advertisements to her detriment.* (*Id.* ¶¶ 32, 35, 41.) Federal and state courts in

4   California have made clear in similar cases that this failure is grounds for

5   dismissal for lack of standing. *Laster*, 407 F. Supp. 2d at 1183, 1194 (dismissing

6   for lack of standing UCL and FAL claims against wireless telephone service

7   provider alleging that provider advertised cellular telephones as "free or

8   substantially discounted" but charged sales tax on full retail value of phones

9   because plaintiffs did not allege they "saw, read, or in any way relied on" the

10  challenged advertisements in entering their wireless service agreements); *Cattie*,

11  504 F. Supp. 2d at 942-43 (dismissing UCL and FAL claims regarding Wal-Mart's

12  sale of linens at thread count lower than advertised because plaintiff failed to

13  allege she relied on false advertising when entering the transaction).

14      Like the plaintiffs in *Laster* and *Cattie*, Plaintiff fails to allege that she "saw,

15  read, or in any way relied on" Square Enix's alleged advertisements.  In fact, the

16  only advertisement cited in the entire FAC is one of the accurate disclosures on the

17  Final Fantasy® XI Online game box alerting consumers that the game required the

18  payment of additional subscription fees. (FAC ¶¶ 2, 19.)  Plaintiff can hardly

19  assert that she relied on that *accurate* disclosure to induce a purchase of the game

20  under false pretenses, particularly where she concedes that she consented to every

21  practice challenged in the FAC and played the game without complaint for two

22  years.

23      Finally, Leong claims to have suffered injury from the deletion of game

24  data, but alleges no facts regarding any attempt to recover the account or to request

25  help in doing so from Square Enix, nor any denial of such a request by Square

26

27

28

-21-

1  Enix; she claims a "loss," but alleges no *facts* showing that Square Enix caused

2  that "loss."[9]  Leong's failure to allege a single statement, advertisement, or

3  promotion from Square Enix that induced her to purchase the game or suffer the

4  "harms" from its challenged "aspects," as well as her failure to offer facts

5  plausibly attributing her "loss" of game data to Square Enix precludes her from

6  asserting the instant UCL and FAL claims.

7  **D.    Plaintiff's Request for Disgorgement of Profits is Plainly Unavailable and Should be Stricken.**

8

9  It is well settled under California law that an action under the UCL or the

10  FAL is equitable in nature, and that individual consumers may not pursue claims

11  for damages or disgorgement of profits.  *See Korea Supply Co. v. Lockheed Martin*

12  *Corp.*, 29 Cal. 4th 1134, 1144, (2003); *Walker v. USAA Cas. Ins. Co.*, 474

13  F.Supp.2d 1168, 1173 (2007), (indicating that plaintiff lacked standing to pursue

14  UCL claim for disgorgement of profits); *Chern v. Bank of Am.*, 15 Cal. 3d 866,

15  875 (1976) (Stating that sections 17500 and 17535 of the FAL "do not authorize

16  recovery of damages by private individuals").  As with her initial complaint, the

17  FAC again improperly seeks disgorgement of profits received by Defendants as a

18  result of the alleged wrongful conduct.  (FAC ¶¶ 37, 42.)  Plainly, such a remedy

19  is not available under the UCL or the FAL.  Accordingly, Plaintiff's request for

20  disgorgement of profits, and any other relief other than injunctive relief and

21  restitution, should be stricken from the FAC.

---

[9]  Although outside the grounds of this motion to dismiss, Plaintiff's alleged failure to reactivate an account in 2009 or describe any of the circumstances of her attempt is particularly odd given Square Enix's account recovery and reactivation procedures and Leong's long history and familiarity with the game.  Notwithstanding Square Enix's notice and contractual reservation of rights in all game data and express disclosure that such data might not be recoverable due to system limitations, Ms. Leong's account in fact would have been recoverable in 2009 without additional retail purchase had she followed the automated account recovery procedure or solicited help from Square Enix customer support, and remains recoverable today.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-22-

**E.     Leong's Citations To Cal. Civ. Code § 1750 et. seq. And Cal. Civ. Proc. Code § 1021.5 Are Similarly Misplaced and Should Also be Stricken.**

As with her initial complaint, the FAC again includes a vague reference to the California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750-1784 (FAC ¶ 5), but does not allege a cause of action for a violation of the CLRA.  Even if pled, any claim for a violation of the CLRA would be subject to dismissal for failure to comply with the notice requirements under Section 1782 of the CLRA, as such failure, whether intentional or unintentional, requires dismissal of the claim *with prejudice*. *Laster*, 407 F. Supp. 2d at 1196.

Similarly, although Plaintiff brought this lawsuit against Square Enix in federal court, she again oddly claims in her FAC that she is entitled to attorneys' fees under California Code of Civil Procedure Section 1021.5.  (FAC, ¶ 37.)  Among other problems with this request, federal courts are not empowered to award such fees on this basis. *See Alyeska Pipeline Ser. Co. v. Wilderness Soc'y*, 421 US 240, 262-269 (1975); Schwarzer et al., The Rutter Group Practice Guide: Federal Civil Procedure Before Trial (2009), ¶10:889.  This request also should be stricken.[10]

/ / /

/ / /

/ / /

/ / /

/ / /

---

[10]  Furthermore, Plaintiff and the purported class waived any right to injunctive relief in Section 6.2(a) of the PlayOnline Member Agreement.  (Ex. A at 3.)

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-23-

## IV.    CONCLUSION

For the foregoing reasons, defendants Square Enix of America Holdings, Inc. and Square Enix, Inc. respectfully request that this Court dismiss plaintiff Esther Leong's claims for violations of the UCL and the FAL and "unjust enrichment," as repeated in her FAC, without leave to amend.

Respectfully submitted,

Dated:  August 26, 2009

SONNENSCHEIN NATH & ROSENTHAL LLP
JOEL D. SIEGEL
CHRISTIAN S. GENETSKI
ANDREW R. CAHILL

By _____
                    Joel D. Siegel

Attorneys for Defendants
Square Enix of America Holdings, Inc. and
Square Enix, Inc.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-24-

25306380\V-9