1   JOEL D. SIEGEL (State Bar No. 155581)
    E-mail: jsiegel@sonnenschein.com
2   SONNENSCHEIN NATH & ROSENTHAL LLP
    601 South Figueroa Street, Suite 2500
3   Los Angeles, California 90017-5704
    Telephone: (213) 623-9300
4   Facsimile: (213) 623-9924

5   CHRISTIAN S. GENETSKI (*Pro Hac Vice* Admitted)
    Email: cgenetski@sonnenschein.com
6   SONNENSCHEIN NATH & ROSENTHAL LLP
    1301 K Street, N.W., Suite 600
7   Washington, DC 20005
    Telephone: (202) 408-6400
8   Facsimile: (202) 408-6399

9   Attorneys for Defendants
    Square Enix of America Holdings,
10  Inc. and Square Enix, Inc.

11

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16  ESTHER LEONG, individually and          No. CV09-04484 PSG (VBKx)
    on behalf of all others similarly
17  situated,,                              REPLY IN SUPPORT OF MOTION
                                            TO DISMISS FIRST AMENDED
18              Plaintiff,                   COMPLAINT BY DEFENDANTS
                                            SQUARE ENIX OF AMERICA
19         vs.                              HOLDINGS, INC. AND SQUARE
                                            ENIX, INC.
20  SQUARE ENIX OF AMERICA
    HOLDINGS, INC., a Delaware
21  corporation; SQUARE ENIX, INC., a
    Washington corporation, DOES 1-10,
22                                          Hearing Date:    September 28, 2009
                Defendants.                 Time:            1:30pm
23                                          Courtroom:       790

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1

# TABLE OF CONTENTS

2

**Page**

3    I.    INTRODUCTION ................................................................... 1

4    II.   ARGUMENT ......................................................................... 3

5          A.   Plaintiff Fails To Offer Any Plausible Factual Basis Or Case
6               Law Support For Her Contention that Square Enix's Monthly
                Subscription Terms, to which Plaintiff Consented, Were
                "Unfair" or "Deceptive." ...................................................... 3
7
8               1.   Plaintiff fails to support her contention that charging
                     users a fixed monthly fee for a month's access to a game
9                    account and game characters is an "unfair" practice .............. 4

10              2.   There can be no "deception" where every aspect of the
                     Final Fantasy® XI Online subscription to which Leong
11                   objects was disclosed in the POL-MA, and where the
                     packaging alerted Leong to the contract and fees. .................. 5

12         B.   Plaintiff Cannot "Relax" Her 9(b) Requirements and Thus The
13              FAC's Failure to Allege Facts Showing How or Why Plaintiff
                Was Misled is Fatal to Her Claim ............................................ 8

14         C.   Plaintiff Suffered No Injury in Fact from Her Voluntary
15              Decision to Play the Game Subject to the POL-MA. ................... 9

16         D.   Plaintiff Can Neither Sustain an Unjust Enrichment Claim
                Where a Contract Governs the Parties' Rights Nor Seek
17              Disgorgement of Profits on an Unjust Enrichment Theory
                Dependent on UCL/FAL Claims. ......................................... 11

18         E.   Leave To Amend Should Not Be Granted ................................ 12

19   III.  CONCLUSION ................................................................... 12

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- i -

1

2

3

4

5

6

7

8

9

10

11

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................... 3

*Bischoff v. DirecTV, Inc.,*
    180 F.Supp.2d 1097 (C.D. Cal. 2002) ........................................ 7

*Broam v. Bogan,*
    320 F.3d 1023 (9th Cir. 2003) ............................................... 7, 9

*Davidson & Assocs. v. Jung,*
    422 F.3d 630 (8th Cir. 2005) ...................................................... 6

*Evans v. Chase Manhattan Bank USA, N.A.*
    2006 WL 213740 (N.D. Cal. Jan. 27, 2006) .......................... 8, 10

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ................................................................... 9

*ProCD, Inc. v. Zeidenberg,*
    86 F.3d 1447 (7th Cir. 1996) ................................................. 6, 7

*Samsung Elects. Am, Inc. Blu-Ray Class Action Litig.*
    2008 U.S. Dist. LEXIS 105199 (D. N.J. Dec. 31, 2008) ......... 6, 7

*Saul v. United States*
    928 F.2d 829 (9th Cir. 1991) ................................................... 12

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) ..................................................................... 9

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*
    515 U.S. 528 (1995) ................................................................... 7

## STATE CASES

*Berryman v. Merit Prop. Mgmt., Inc.,*
    152 Cal. App. 4th 1544 (2007) ................................................. 5

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,*
    94 Cal. App. 4th 151 (2001) .................................................... 11

*Lectrodryer v. Seoulbank,*
    77 Cal. App. 4th 723 (2000) .................................................... 11

*Peterson v. Cellco P'ship,*
    164 Cal. App. 4th 1583 (2008) ................................................. 9

*Searle v. Windham Int'l, Inc.*
    102 Cal. App. 4th 1327 (2002) ................................................. 8

- ii -

1

## STATE STATUTES

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210............. passim

False Advertising Law, Cal. Bus. & Prof. Code §§ 17500-17509................ passim

## FEDERAL RULES

Fed. R. Civ. P. 9(b)............................................................................................ 8

## OTHER AUTHORITIES

California Proposition 64 (2004)........................................................................ 11

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. CV09-04484 PSG (VBKx)                     REPLY IN SUPPORT OF MOTION TO DISMISS

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## I.   INTRODUCTION

On her third pass at articulating a theory for how she was injured by her purchase and two years of play of Final Fantasy® XI Online, plaintiff Esther Leong ("Leong") shifts focus again.  In her original Complaint, she failed to identify the objectionable aspects of the game.  In her First Amended Complaint ("FAC"), she complained about a number of the aspects of the game, focusing heavily on the alleged imposition of monthly fees, late fees, and reactivation fees.  Now, in her Opposition to this motion to dismiss, Leong "clarifies" that it is not the imposition of these valid fees that are at issue, but rather that she was not made sufficiently aware of the possibility that such fees may be charged before she purchased the game.  (Pl.'s Opp. at 3.)  Her two years of apparently satisfying game play notwithstanding, Leong now claims, four years hence, that she would not have purchased the game in the first place had she appreciated the existence of all the terms, most of which had no effect whatsoever on her game experience.  Assuming for purposes of this motion the sincerity of Leong's regret, she has failed to plead any plausible basis for an unfair or deceptive practice claim.

In fact, Leong's Opposition makes several telling concessions that significantly limit the allegations in her FAC:

- She acknowledges the validity of Square Enix's imposition of monthly subscription, late and reactivation fees and disavows any challenge to them (*Id.* at 9);

- She does not contest that she and the putative class consented to the terms in the Final Fantasy® XI Online PlayOnline® Member Agreement ("POL-MA") (*Id.* at 4);

- She concedes that the Final Fantasy® XI Online game packaging notifies purchasers that play is subject to other agreements, and acknowledges that those agreements were and are available online at Square Enix's www.playonline.com website (*Id.* at 12.); and

- She fails to identify a single instance where she or any class member sought and was denied a refund after learning of the game rules or was assessed any of the "undisclosed penalties" to which she objects.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    In light of these concessions, Plaintiff narrows her theory to the following

2    two "points of deception": 1) She was deceived at the point of purchase of the

3    game because Square Enix merely alerted players to the subscription fees and

4    referred them to other agreements governing play rather than printing all the

5    specific terms of the agreements on the game packaging itself; and 2) She was

6    deceived when she agreed to the terms of the POL-MA prior to commencing her

7    subscription because that contract itself insufficiently disclosed these terms.

8    Neither theory can survive a motion to dismiss.

9    First, Plaintiff's "point of purchase" theory rises and falls on Square Enix's

10   alleged failure to disclose *in full* on the game packaging how subscription fees are

11   assessed, as well as each of its reserved rights to impose certain fees and

12   "penalties." Plaintiff does not, however, offer any plausible basis to explain why

13   charging fixed monthly fees to maintain a game account and access to a game

14   server is "unfair," much less why the failure to emblazon every detail of these

15   unremarkable terms on the game packaging was "deceptive." This claim is

16   particularly egregious where Leong concedes that the game packaging notified

17   users that their subscriptions were subject to additional fees and other agreements.

18   And Plaintiff's own actions belie her contention that the disclosure of these terms

19   would have influenced her decision to buy the game. Plaintiff was apprised of

20   these terms in their entirety when she first read the POL-MA. Rather than reject

21   these terms and seek a refund from Square Enix's customer service team directly,

22   Plaintiff agreed and played the game for two years.

23   Second, the FAC itself lacks any allegation regarding the "second point of

24   deception." The FAC merely acknowledges that Plaintiff consented to the POL-

25   MA, but makes no allegation that the contract was written in a way to disguise its

26   plain terms. Because this argument is raised for the first time in Plaintiff's

27   Opposition, it cannot support her claims. In any event, Plaintiff cannot sustain a

28

Case No. CV09-04484 PSG (VBKx)                    REPLY IN SUPPORT OF MOTION TO DISMISS

1  claim that she was deceived by terms set forth in a contract that she assented to

2  and was aware of prior to purchase.[1]

3      Finally, even if the Court were to find that Square Enix's disclosures were

4  inadequate, Plaintiff still offers no allegation of actual injury, and instead details

5  *potential* harms to a theoretical user that *might* flow from the undisclosed

6  practices.[2] Specifically, Leong does not allege that she or any putative class

7  member ever sought or was denied a refund by Square Enix, was charged a late fee

8  or penalty, was unable to make a payment due to server downtime, or sought or

9  was denied any request to restore a dormant game account. As such, this class

10 action serves merely as a fishing expedition to find a user other than Leong who

11 was actually and negatively impacted by the challenged practices. It should be

12 dismissed.

## II.   ARGUMENT

### A.   Plaintiff Fails To Offer Any Plausible Factual Basis Or Case Law Support For Her Contention that Square Enix's Monthly Subscription Terms, to which Plaintiff Consented, were "Unfair" or "Deceptive."

17     Under *Bell Atlantic Corp. v. Twombly*, Plaintiff must make specific fact

18 allegations providing a plausible basis for her unfair and deceptive practices

19 claims. 550 U.S. 544, 555 (2007). Based solely on the materials properly

20 considered at this stage – the four corners of the FAC and the contract and

21 packaging upon which Plaintiff's claims rely – Plaintiff cannot meet her *Twombly*

22 burden.

-----

[1] Leong's new claim she was misled by the POL-MA is odd given she does not allege she was assessed a penalty fee or denied a request to restore her account, and thus the only apparent source of her knowledge of Square Enix's right to do so is the POL-MA itself.

[2] *See* Opp. at 8-9 ("*Once* the . . . online subscription is started . . . .;" "*If* they stop . . . .;" "*If* users fail to pay . . . .;" "*If* they miss their online subscription . . . .;" "The online game servers *might* be shut down . . . .")

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1. **Plaintiff fails to support her contention that charging users a fixed monthly fee for a month's access to a game account and game characters is an "unfair" practice.**

Unable to articulate the "unfairness" of Square Enix's right to charge subscription, reactivation, and late fees, Plaintiff now limits her claim to the nature of the monthly subscription itself, characterizing it as "a perpetual contract that permanently binds users to the subscription on a permanent, continuous and uninterruptible basis irrespective of whether the subscription is used or not." (Opp. at 2). This statement, however, is nothing more than an objection to subscription models for services as opposed to "pay as you go" plans. The UCL and FAL are not vehicles for consumers to express their preferences for one legitimate business model over another to a federal court. Absent fact allegations or case law demonstrating that Square Enix's choice to offer a subscription model is unfair, there is no claim.

As a threshold matter, Leong's contention that users are "permanently" bound to pay monthly subscription fees is patently absurd given Leong's acknowledgement in the FAC that she voluntarily terminated an account and ceased paying fees after two years of play. (FAC ¶ 22.) Rather, as Leong's own experience and the terms of POL-MA make plain, users must make monthly subscription payments to retain their right to access and play the online game on Square Enix's servers.

Second, Plaintiff's Opposition fails to offer any support for her contention that a business may not charge a fixed monthly fee (or even merely require that a valid, unexpired credit card remain on file) for the right to maintain an online game account and access a game server. This failure is not surprising, as contrary to Plaintiff's argument, charging fixed monthly fees for the right to use a service is commonplace. Cable television and internet access subscribers pay a fixed monthly fee for service no matter how often they turn on the television or surf the web in a given month; users are not permitted to "pay as they go." Telephone

service subscribers pay a monthly charge for maintaining a phone line even if they make no calls.  Absent some further indicia of improper conduct – e.g., the fees are unconscionably high, Square Enix falsely promised a different subscription option, etc. – Plaintiff cannot merely label Square Enix's billing practices "unfair" and sustain its claims.  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555 (2007) (noting that there is nothing inherently unfair about for-profit business charging fees for service absent plaintiff alleging facts showing they were not permitted to do so).

> **2.    There can be no "deception" where every aspect of the Final Fantasy® XI Online subscription to which Leong objects was disclosed in the POL-MA, and where the packaging alerted Leong to the contract and fees.**

Neither of the two "points of deception" identified in Plaintiff's Opposition provides a plausible basis to sustain her UCL or FAL claims.

First, Leong cannot sustain a claim for deception at the point of purchase. Significantly, in a seeming departure from her FAC, Leong no longer disputes that she understood the game was played online and required the payment of subscription fees.  (Opp. at 1.)  She further acknowledges that the game packaging alerted her that play was subject to certain agreements, and that she was aware those agreements were available online at Square Enix's website.  (*Id.* at 2, 12.) And, of course, she concedes that she consented to the POL-MA – the very source of her knowledge about the "objectionable" rights reserved to Square Enix – before she commenced play or incurred a single subscription payment.[3]

---

[3]  Plaintiff's Opposition mischaracterizes the provisions of the POL-MA by stating that they are "tucked away at page 133" of the user manual included with the game.  (*Id.* at 3,4.)  As the Steve Ross declaration submitted with Square Enix's Motion to Dismiss makes clear, and as Plaintiff acknowledges elsewhere in her Opposition, all Final Fantasy XI® Online players must affirmatively manifest their assent to the specific and concise POL-MA during the installation process of the game.  Each of the provisions at issue here are included in that stand-alone, enforceable contract.  *Davidson & Assocs. v. Jung*, 422 F.3d 630, 639 (8th Cir. 2005) (enforcing clickwrap terms for online game software and service).  The fact that the attachment to Square Enix's Motion, as identified in its supporting declaration, was copied from the version

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. CV09-04484 PSG (VBKx)                    REPLY IN SUPPORT OF MOTION TO DISMISS

1    Against these concessions, Plaintiff nonetheless asserts that she was

2    deceived because Square Enix should have placed each of the specific contract

3    terms on the *outside of the box*. Courts, however, have repeatedly recognized the

4    practical impossibility of doing as Plaintiff suggests and thus upheld the fairness

5    of transactions identical to the one at issue. For example, the Seventh Circuit

6    Court of Appeals noted that in the packaged software context: "[v]endors can put

7    the entire terms of a contract on the outside of a box only by using microscopic

8    type, removing other information that buyers might find more useful (such as what

9    the software does, and on which computers it works), or both." *ProCD, Inc. v.*

10   *Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996).

11   Similarly, in *In Re Samsung Electronics America, Inc. Blu-Ray Class Action*

12   *Litigation*, plaintiffs pursued a class action asserting consumer fraud claims based

13   on Samsung's sale of Blu-ray Disc players that failed to disclose alleged

14   incompatibility issues on the exterior packaging, and specifically argued that "[i]t

15   is no defense for Defendant to now claim that this caveat was buried somewhere in

16   the user manual, which consumers can only see after they have purchased the

17   product and opened up the box."[4] The district court dismissed the class complaint,

18   recognizing both the impracticability of including the disclaimer language on the

19   outside of the box, and, significantly, noting that "*[p]laintiffs . . . . never allege*

20   *that they attempted to reject the warranty by returning their Players.*" *Id.* at *15

21   (emphasis added).[5] Plaintiff's theory here rests on even shakier ground than the

23   identically reprinted for customers convenience at the end of a lengthy instruction manual is
24   irrelevant.

25   [4]  Civ. Action No. 08-0663 (JAG), 2008 U.S. Dist. LEXIS 105199, at *8 (D.N.J. Dec. 31, 2008).

26   [5]  In fact, the plaintiffs in *Samsung* employed a similar tactic to Leong on the refund issue. In
     *Samsung*, the Court noted that "[p]laintiffs automatically dismiss the idea that they could have
27   rejected the Players' limited warranty terms. They allege that after purchasing a Player and
     '[o]nce the packaging for these kinds of appliances has been opened, many retailers and online
28   sellers charge consumers a restocking and/or return mail fee.'" *Id.* at *14-15. Similarly here,

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. CV09-04484 PSG (VBKx)                    REPLY IN SUPPORT OF MOTION TO DISMISS

*Samsung* plaintiffs because the outer game packaging here directed Leong to the terms, which she could have read online prior to purchase.

Both *ProCD* and *Samsung* recognized the commonality of transactions in which the exchange of money precedes the communication of detailed terms – the very practice deemed "deceptive" by plaintiff.[6] *See also Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1105 (C.D. Cal. 2002) (noting it is "acceptable for terms and conditions to follow the initial transaction"). Here, where Plaintiff concedes that, presented with all the terms to which she now objects, she did not seek to reject them and request a refund but instead consented and commenced play subject to them, she cannot claim to have been deceived.

Leong's "second point of deception" – the moment she reviewed and agreed to the terms of the POL-MA before commencing her subscription – may be summarily disposed. Although Leong acknowledged her consent to the POL-MA in her FAC, she did not allege an infirmity in the contracts. Every allegation regarding deception in the FAC refers to the point of sale. (*See* FAC, ¶¶ 19, 21.) Accordingly, the novel arguments in her Opposition regarding the POL-MA providing a "second point of deception" are not properly before this Court. *Broam v. Bogan*, 320 F.3d 1023, 1026, n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") Even if the argument were not barred, in elsewhere quoting and admitting to the validity of the POL-MA terms, Leong indisputably concedes

---

Plaintiff's counsel twice drops the same generalized, unsupported proclamation in footnotes that "[o]nce a video game or game software is purchased and opened, it cannot be returned for a refund." (Opp. at 7 n.5, 12,n.8.)

[6] *ProCD.*, 86 F.3d at 1451, *citing Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 622 (1991) (airline tickets); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995) (bills of lading).

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

they could be enforced against her. Leong's deception claim is thus nothing more than a thinly-veiled attempt to avoid complying with the valid terms of an enforceable contract to which she assented. *Evans v. Chase Manhattan Bank USA, N.A.,* No. C-05-3968 SC, 2006 WL 213740, at *6 (stating that actions consistent with "fully-disclosed terms of the contract . . . cannot plausibly be labeled a deception"), *aff'd*, 267 Fed. Appx. 692 (9th Cir. 2008); *Searle v. Windham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334-35 (2002) (noting that unfair competition law is not an open license to review fairness of contracts).

### B.   Plaintiff Cannot "Relax" Her 9(b) Requirements and Thus The FAC's Failure to Allege Facts Showing How or Why Plaintiff Was Misled is Fatal to Her Claim.

Plaintiff attempts in her Opposition to excuse the FAC's lack of particularity in its fraud allegations by citing authority stating that 9(b) strictures are relaxed in "cases involving complex fraudulent schemes or those occurring over a lengthy period of time and involving thousands of different documents." (Opp. at 11.) That authority is inapposite. Here, the FAC alleges no facts suggesting a "complex scheme," and the only documents at issue are the game packaging and POL-MA.

Moreover, the FAC alleges that purchasers of Final Fantasy® XI Online were somehow deceived by Square Enix's failure to disclose all contractual terms on the outside of the game box, but omits the very sort of allegations that Rule 9(b) demands. Specifically, it fails to suggest how or why Plaintiff or other consumers were led to believe that the terms of the online subscription contained in the POL-MA differed from their expectation at the time of purchase. The FAC does not allege that Square Enix made any statement or took any other action to mislead Plaintiff about the terms of the POL-MA. On the contrary, it alerted her to it on the packaging and made the terms available for review on its website. Finally, as noted previously herein, Plaintiff's attempt to cure the defects in the

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-8-

1    FAC by belatedly asserting in her opposition that the POL-MA was itself

2    misleading must fail. *Broam*, 320 F.3d at 1026, n.2.

3         **C.    Plaintiff Suffered No Injury in Fact from Her Voluntary
              Decision to Play the Game Subject to the POL-MA.**

4         Plaintiff asserts that she has alleged the requisite injury to confer both

5    Article III standing and meet the injury and causation elements the UCL and FAL

6    require.  As her Opposition makes clear, however, Plaintiff can show neither that

7    "as a result of the defendant's actions [s]he has suffered 'a distinct and palpable

8    injury[]'"[7] nor "a loss of money or property *caused by*" the alleged unfair

9    conduct.[8]  Given Plaintiff's failure to allege her own injury from Square Enix's

10   conduct, she lacks standing to represent the purported class. *Simon v. E. Ky.*

11   *Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976).

12        Plaintiff concedes the only "lost money and property" she suffered was:  1)

13   the money she spent to purchase the game and maintain a subscription (which she

14   claims she would not have paid had she been aware of the game's "terms" and

15   right to apply "penalties"); and 2) her "loss" of game characters associated with

16   the account she terminated.  Neither form the basis for a cognizable "loss" that

17   would give Leong standing.

18        As to the first claimed loss, Plaintiff cannot plausibly assert that she "lost"

19   money because she disapproved of the terms of the POL-MA.  By her own

20   admission, when presented with the terms, she did not reject and seek a refund, she

21   agreed to them and played the game for two years without incident.  Moreover, the

22   terms of the POL-MA to which Leong consented plainly disclosed all alleged

23   "terms" and "penalties," and thus she cannot now claim to have suffered injury

24

25   _____

26   [7]  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

27   [8]  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008) (emphasis added).

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. CV09-04484 PSG (VBKx)                    REPLY IN SUPPORT OF MOTION TO DISMISS

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   from their application, particularly where she acknowledges their validity.  *Evans*,

2   2006 WL 213740, at *6.

3          Her second claimed "loss," the alleged inability to restore game characters

4   after a two year absence from the game, is equally flawed.  First, Leong agreed

5   prior to creating an account or any character that Square Enix owned all such data,

6   and thus cannot now claim a "property interest" in her former game progress.

7   Second, her consent aside, Plaintiff fails to explain how Square Enix's alleged

8   invocation of its contractual right not to maintain game data, even if true,

9   wrongfully injured Leong.[9]  Nor could she.  In fact, consumers routinely forfeit

10  any temporal interest in goods and services when they cease paying for them.  A

11  consumer who rents a car for a week and sets the seats, mirrors and radio stations

12  to her liking cannot claim injury if she returns to the rental agency three months

13  later and finds the same car unavailable.  Similarly, where a consumer ceases to

14  pay the monthly fee for a cable television and digital video recorder (DVR)

15  subscription, she cannot claim injury if she loses her DVR settings and recordings.

16  Likewise here, the money Plaintiff expended was for the right to play Final

17  Fantasy® XI Online during a particular month, and she received the benefit of

18  those payments during the period she performed under the contract.

19         Finally, even when a plaintiff has experienced injury in fact, Proposition 64

20  requires that the plaintiff also establish that the claimed injury occurred "as a result

21  of" the challenged conduct.  *See* Cal. Bus. & Prof. Code §§ 17204, 17535 (West

22  2009).  Here, the claimed "deception" is one of omission, specifically Square

23  Enix's failure to disclose all the subscription terms on the game packaging.

24  Plaintiff can hardly assert, however, that this omission *caused* her to incur two

---

[9]  As with her failure to allege any actual attempt to seek a refund, Leong conspicuously fails to allege that she ever requested that Square Enix customer service restore her account or characters before making a new purchase in 2009, a practice in which it commonly engages, and instead summarily claims that the account was "lost" without alleging any additional facts.

Case No. CV09-04484 PSG (VBKx)                    REPLY IN SUPPORT OF MOTION TO DISMISS

1  years worth of subscription fees when she concedes that she read and consented to

2  each of the "omitted" terms before creating a game account.  Similarly, Leong

3  claims to have suffered injury from the deletion of game data, but alleges no facts

4  regarding any attempt to recover the account or to request help in doing so from

5  Square Enix, nor any denial of such a request by Square Enix.  In sum, she claims

6  a "loss," but alleges no facts showing that Square Enix *caused* that "loss."

7      **D.  Plaintiff Can Neither Sustain an Unjust Enrichment Claim Where a Contract Governs the Parties' Rights Nor Seek Disgorgement of Profits on an Unjust Enrichment Theory Dependent on UCL/FAL Claims.**

8

9

10      Contrary to Plaintiff's statement in her Opposition, Square Enix does not

11  concede that her unjust enrichment claim survives if she has stated a claim for

12  UCL or FAL violations.  Irrespective of the fate of those claims, Plaintiff's unjust

13  enrichment claim fails on the independent ground that an express contract, the

14  POL-MA, governs the parties' rights and remedies.  *Cal. Med. Ass'n, Inc. v. Aetna*

15  *U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) (the existence of

16  an express agreement precludes a quasi-contract action for unjust enrichment).

17  The sole case Plaintiff cites in opposition, *Lectrodryer v. SeoulBank,* 77 Cal. App.

18  4th 723 (2000), is inapposite.  No contract was at issue in *Lectrodryer*, and it thus

19  has no bearing on the well established rule that the existence of a contract

20  precludes relief for unjust enrichment.

21      Plaintiff further concedes that "[t]here is no dispute that under the UCL or

22  [FAL], individual consumers may not pursue claims for disgorgement of profits."

23  (Opp. at 17.)  Moreover, she concedes that her claim for unjust enrichment derives

24  from – and thus falls with – her UCL/FAL claims.  (*Id.* at 16.)  This Court should

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  reject Plaintiff's attempt to circumvent the UCL's statutory bar against seeking

2  disgorgement of profits by relabeling her claim as one for unjust enrichment.[10]

3     **E.    Leave To Amend Should Not Be Granted.**

4        Leave to amend should be denied where further amendment would be futile

5  or would still fail to state a viable cause of action. *Saul v. United States*, 928 F.2d

6  829, 843 (9th Cir. 1991). Here, Plaintiff has already had three opportunities to

7  (unsuccessfully) recast her legal theories and allegations. No matter how plead,

8  Plaintiff cannot escape the plain disclosures on the game packaging or the valid

9  contract to which she consented, both of which are sufficient grounds on which to

10 dismiss any UCL or FAL claim. Because any amendment would be futile, leave to

11 amend should be denied and Plaintiff's FAC should be dismissed with prejudice.

12 **III.   CONCLUSION**

13        For the foregoing reasons, Square Enix respectfully requests that this Court

14 dismiss Leong's claims for violations of the UCL, the FAL and unjust enrichment

15 without leave to amend. Plaintiff should not be permitted to conjure yet another

16 theory, thereby moving the target again and unfairly raising the cost of defending

17 this frivolous lawsuit for Square Enix.

18                            Respectfully submitted,

19 Dated:  September 21, 2009       SONNENSCHEIN NATH & ROSENTHAL LLP
                                    JOEL D. SIEGEL
20                                  CHRISTIAN S. GENETSKI

21

22                            By _____/S/_____
23                                      Joel D. Siegel

24                            Attorneys for Defendants
                              Square Enix of America Holdings, Inc. and
25                            Square Enix, Inc.

26 _____

27 [10] By not addressing Defendants' request to strike its request for attorneys' fees and to bar any
   claim under California's Consumers Legal Remedies Act Plaintiff concedes these issues.

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300