Michael H. Kim, Esq. (State Bar No. 200792)
**MICHAEL H. KIM, P.C.**
3699 Wilshire Boulevard, Suite 860
Los Angeles, California 90010
Telephone: (213) 639-2900
Facsimile: (213) 639-2909
Email: mkim@mhklawyers.com

**MAKAREM & ASSOCIATES, APLC**
Ronald W. Makarem, Esq. (State Bar No. 180442)
Marni B. Folinsky, Esq. (State Bar No. 209880)
11601 Wilshire Boulevard, Suite 2440
Los Angeles, California 90025-1760
Phone: (310) 312-0299
Facsimile: (310) 312-0296
Email: makarem@law-rm.com
Email: folinsky@law-rm.com

Attorneys for Plaintiff
ESTHER LEONG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER LEONG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SQUARE ENIX OF AMERICA HOLDINGS, INC., a Delaware corporation; SQUARE ENIX, INC., a Washington corporation,<br><br>Defendants. | Case No. CV 09-4484 PSG (VBKx)<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ARTICLE III STANDING** |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction................................................................................. | 1 |
| II. | Leong Has Standing Because Her Injury Is Fairly Traceable to Square Enix's Conduct............................................................................... | 2 |
| | A. Analysis of Article III Standing Does Not Consider Leong's Reliance on Square Enix's Wrongful Conduct................................ | 2 |
| | B. Leong's Subsequent Purchase of the Game Does Not Destroy Article III Standing...................................................................... | 3 |
| III. | The Complaint Sufficiently Alleges Injury-In-Fact Fairly Traceable to Square Enix................................................................................. | 4 |
| | A. Purchase And Forfeiture of the Game Software...................... | 4 |
| | B. Monthly Subscription Fee....................................................... | 6 |
| | C. Penalties, Late Fees and Reactivation Fees.............................. | 7 |
| | D. Deletion of Game Data and Characters................................... | 7 |
| IV. | Leong Can Amend the Complaint to Cure Deficiencies.................. | 8 |
| | A. Leong She Did Not Purchase the Game Again To Play It........ | 8 |
| | B. The Defendant cannot argue that Leong Lacks Standing to Challenge Square Enix's Concealment under the "Fraud" Prong of the UCL based on the Second Purchase alone............................ | 9 |
| | C. Leave to Amend Should Be Granted to Name an Additional Class Representative................................................................... | 10 |
| V. | Conclusion.................................................................................. | 10 |

# TABLE OF AUTHORITIES

Allen v. Wright 468 U.S. 737, 752 (1984) .................................................. 3

Anunziato v. eMachines, Inc.,
    402 F.Supp.2d 1133, 1137-39 (C.D.Cal.2005).............................. 4

CashCall, Inc. v. Superior Court (2008) 159 Cal.App.4th 273.................... 10

Chang v. Chen, 80 F.3d 1293, 1296, 1301 (9th Cir.1996) .......................... 8

City Solutions, Inc. v. Clear Channel Communications,
    365 F.3d 835 (9th Cir. 2004)............................................................ 3

DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987)........... 8

Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C.Cir.1996)......... 2

Foman v. Davis, 371 U.S. 178, 182 (1962)................................................ 9

Laster v. T-Mobile, Inc., 407 F.Supp.2d 1181, 1194 (S.D.Cal.2005)........... 4

Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992).................... 2,4,7

Polich v. Burlington Northern, Inc., 942 F.2d 1467, 1472 (9th Cir. 1991)).... 9

Ridgley v. Topa Thrift and Loan Assn., 17 Cal.4th 970, 977-978(1998)....... 5

Tyler v. Cuomo 236 F.3d 1124, 1132 (9th Cir. 2000)................................. 7

Virginia Sur. Co. v. Northrop Grumman Corp.,
    144 F.3d 1243, 1246 (9th Cir.1998)................................................. 7

Warth v. Seldin, 422 U.S. 490, 501 (1975)................................................ 8

**STATUTES**

Calif. Bus. & Prof. Code § 17200............................................................ 5,6

Ca. Civil Code § 1671(b)......................................................................... 6

## I. Introduction.

Leong has standing under Article III to challenge Square Enix's (1) "unlawful or unfair" business practices, on the one hand, and (2) "fraudulent" misconduct, on the other. Square Enix's "unlawful and unfair" business practice arises from the illegal and unfair clauses in the game contract whereby users are forced to pay monthly fees to avoid forfeiture of their games, game characters, and game data. Since Leong was a party to the game contract when she bought and played the game, she has standing to challenge these provisions. There is no reliance requirement to challenge "unfair and illegal" contract terms.

Second, Leong has standing to challenge Square Enix's conduct of concealing these forfeiture and penalty provisions under the "fraud" prong of the Unfair Competition Law because she bought and played the game not knowing the penalty terms, and she subsequently suffered damages as a result.

Third, even if Leong purchased the game again after losing her account, that fact alone does not undermine her standing to challenge Square Enix's "concealment" misconduct under the "fraud" prong of the Unfair Competition Law. It cannot be concluded as a matter of law that because she purchased the game the second time, the omitted terms could not have influenced her decision to buy in the first place. There are questions about change in circumstances affecting her decision to purchase the second game, questions about factors affecting her decision to buy the second game that did not exist at the time of the first purchase, and questions about her reasons for buying the second game, which must be addressed in discovery.

Finally, and most importantly, Leong has a valid and clear reason for buying the second game, and that was for the purpose of investigating the merits of the claims. She did not purchase the game to play.

## II. Leong Has Standing Because Her Injury Is Fairly Traceable to Square Enix's Conduct.

Leong has standing to bring this lawsuit because her injuries are fairly traceable to Square Enix's conduct. In order to establish standing under Article III, a plaintiff must allege (1) a personal injury-in-fact that is (2) "fairly traceable" to the defendant's conduct and (3) redressable by the relief requested. See <u>Lujan v. Defenders of Wildlife</u>, 112 S. Ct. 2130, 2136 (1992). Causation, or "traceability," examines whether it is substantially probable that the challenged acts of the defendant caused the particularized injury of the plaintiff. <u>Florida Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663 (D.C.Cir.1996) (en banc). As will be discussed below, the monthly subscription fee, penalties, late fees, reactivation fees, cancellation of account, deletion of game data and forfeiture of the game software are all injuries suffered by Leong that are traceable to Square Enix.

### A. Analysis of Article III Standing Does Not Consider Leong's Reliance on Square Enix's Wrongful Conduct.

First and foremost, this class action is brought under both (1) the "unlawful and unfair" prong of the UCL and the (2) "fraudulent" prong of the UCL. Under the "unlawful and unfair" prong of the UCL, reliance is not required to have standing. Leong has standing to challenge the "illegal and unfair" aspects of Square Enix's game contract because she was a party to the contract. She has standing to challenge the various provisions of Square Enix's game contract, starting with the forfeiture clauses and to the tying of monthly fees to the forfeiture clause, that are "unlawful and unfair." Nowhere in the Article III standing analysis with respect to contract issues is "reliance" required.

> "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. Is the injury

too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative" Allen v. Wright 468 U.S. 737, 752 (1984)

Secondly, Leong has standing to challenge Square Enix's concealment of these material terms under the "fraudulent" prong of the UCL because her injuries are fairly traceable to the conduct of concealment. The facts must be taken as true that she bought the game not knowing the material terms. The question of whether a plaintiff's reliance on fraudulent misrepresentation is reasonable (as this has been raised due to her second purchase) is a question of fact. City Solutions, Inc. v. Clear Channel Communications, 365 F.3d 835 (9th Cir. 2004). It would be inappropriate to answer any questions about the reasonableness of Leong's reliance in deciding whether she has standing to pursue these claims under the "fraud" prong of the UCL.

### B. Leong's Subsequent Purchase of the Game Does Not Destroy Article III Standing.

This question about causation, or "traceability," has arisen because it is alleged in the complaint that Leong purchased the game a second time. However, there is no authority which instructs the Court to consider Leong's second purchase in determining whether she has standing. No authority exists that holds or implies that Leong buying the game a second time causes her not to have standing. At the point she made the initial purchase, Leong had standing. A subsequent event does not destroy the standing a plaintiff already has.

It cannot be presumed that Leong bought the game the second time to continue playing the game. Further, it cannot be presumed that she would have purchased the game the first time regardless of the omitted terms. She never created an account to play the game. She never paid the subscriptions fees after the second purchase. Neither of the points are alleged in the First Amended Complaint. There

are no allegations about what Leong knew and why she bought the game. If there is any question about her Article III standing based on her second purchase, then it is better to address it on a Rule 23 or Rule 52 motion, not on a Rule 12(b)(6) motion where all reasonable inferences are drawn in the light most favorable to the plaintiff. Her lack of Article III standing cannot be logically deduced from the fact of her second purchase alone.

Further, Leong's purchase of the game the second time is irrelevant to the question of her standing to challenge the "illegal and unfair" terms of the game contract, starting with the forfeiture clause and the payment of monthly fees to avoid the forfeiture. That is a contract issue. This case is more than about concealment of information from consumers at the point of purchase. It is more about unfair and/or illegal provisions of Square Enix's game contract.[1] Leong buying the game for a second time does not make the contract any more legal.

### III. The Complaint Sufficiently Alleges Injury-In-Fact Fairly Traceable to Square Enix.

#### A. Purchase And Forfeiture of the Game Software.

Leong satisfies the first prong of standing, personal injury-in-fact, because she purchased the game and opened her PlayOnline Account in 2005 and played until 2007. [FAC ¶23] Standing requires a plaintiff who personally suffered an injury-in-fact. Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992). Leong, a person who purchased the game, played the game, paid the fees and was subjected to the wrongful conduct as alleged in the First Amended Complaint, satisfies the first

---

[1] The California federal district courts to consider the question of whether there is a reliance requirement under the UCL are divided. Compare Anunziato v. eMachines, Inc., 402 F.Supp.2d 1133, 1137-39 (C.D.Cal.2005) (finding no reliance requirement) with Laster v. T-Mobile, Inc., 407 F.Supp.2d 1181, 1194 (S.D.Cal.2005) (finding reliance requirement).

prong of standing.

Leong satisfies the second prong of the standing analysis because the injury she suffered by forfeiture of the game software is fairly traceable to Square Enix and no other party. Leong has standing to sue because a party to a contract has standing to challenge unfair and illegal terms of the contract. In 2007, Leong temporarily stopped her Account membership for more than 3 months causing the game disc she purchased in 2005 to become unusable. [FAC ¶21(c), 22, 23] As a result of not paying the monthly fee for more than 3 months, Leong lost the value of the game disc she originally purchased because it became unusable when her account was terminated.[2] [FAC ¶19 (d) & (e), 21(c)]

These facts sufficiently allege Leong's standing to challenge the forfeiture provisions as an unlawful and unfair business practice under Business & Professions Code section 17200, because she was a party to the game contract. Square Enix's game contract providing for the forfeiture of the game disc, game character, and game data and the payment of monthly fees to avoid that forfeiture is unfair and/or illegal because the law in California is that any contract "provision that provides that money or property will be forfeited without regard to the actual damage suffered is an unenforceable penalty."[3] <u>Ridgley v. Topa Thrift and Loan Assn.</u>, 17 Cal.4th 970,

---

[2] A good analogy to this point is the monthly or pay-as-you-go cell phone service plan. Under this type of plan, a user buys a cell phone from the service provider and signs up for a monthly plan that allows the user to pay for cell phone service on a month-to-month basis. The user has the option for not paying for the monthly service without suffering any consequence. When the user wants to reactivate the service, the cell phone of course still works. Adopting Square Enix's scheme, the cell phone user would have to pay the service fee every month and would not be allowed to skip his subscription service. The consequence of skipping his phone service subscription would be forfeiture of the cell phone. In other words, failure to pay a monthly service fee would result in the cell phone becoming forever unusable and all the applications, contact information, downloaded data being forever lost as the cell phone could never be used again.

[3] The California Supreme Court in Ridgley held:

"A penalty provision operates to compel performance of an act [citation] and usually becomes effective only in the event of default [citation] upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the

977-978(1998); see Calif. Bus. & Prof. Code § 17200 (The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ." The forfeiture clause is challenged under 17200 as an "unlawful or unfair" business practice. ); see also Garrett, supra, 9 Cal.3d 731, 739. Any penalty or forfeiture disguised as "[a] liquidated damages clause will generally be considered unreasonable, and hence unenforceable under [Ca. Civil Code] section 1671(b), [since] it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." Id. at 977. As a party to a contract with a forfeiture provision, Leong has standing to sue to challenge the illegality or unfairness of the forfeiture provision.

### B. Monthly Subscription Fee.

Another injury suffered by Leong was that she was required to pay a monthly subscription fee, separate and apart from what is paid to buy the game disc, and the fee must be paid continuously on a monthly basis to avoid the forfeiture. Leong had to pay that monthly subscription fee otherwise she would incur penalties and forfeiture of the game. [FAC ¶ 19 (b), (d), (e), ¶21(b)] Square Enix manipulates the users into paying the monthly fees regardless of whether they want to play the game that month because failure to pay the monthly fee causes users to incur penalties and potential forfeiture of the game software if the monthly fees are not paid for more than 3 months. The monthly fees charged by Square Enix are unlawful and unfair because it is structured such that users are forced to pay the fees even if they want to take a break from the game because they do not want to pay late fees and reactivations fees or lose their game characters, game data and game software.

As stated, since Leong is a party to the game contract, she has standing to challenge the legality and fairness of requiring payment of monthly fees to avoid the

---

breach [citation]. The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract. [Citations.]" (Ibid.)

forfeiture.

### C. Penalties, Late Fees and Reactivation Fees.

Another injury suffered by Leong was the penalties for not paying the monthly subscription fee, including late fees and reactivation fees. [FAC ¶ 19(d) & ¶ 21(c)] It is alleged that these fees are also unfair and illegal. These penalties and fees are charged by no party other than Square Enix. In Tyler v. Cuomo 236 F.3d 1124, 1132 (9th Cir. 2000), the Court held that "[c]ausation requires that the injury be "fairly traceable to the challenged action of the defendant, and [is] not the result of the independent action of some third party not before the court." citing Virginia Sur. Co. v. Northrop Grumman Corp., 144 F.3d 1243, 1246 (9th Cir.1998) (citing Lujan, 504 U.S. at 560, 112 S.Ct. 2130. As the fees are not the independent action of some third party and are fairly traceable to Square Enix, standing's second prong is satisfied.

### D. Deletion of Game Data and Characters.

As a result of not paying her monthly subscription fees for more than 3 months, Leong's Play Online Account, game characters developed, game data acquired and game levels advanced up to were no longer accessible through the system. [FAC ¶19(d)] This penalty is particularly troublesome because most game users will invest hundreds of hours, and concurrently pay the necessary fees, to advance through the virtual game world and develop their character up the character levels.[4] Again, Leong has standing because the deletion of game characters and game data is an injury-in-fact which is fairly traceable to only Square Enix. Reliance is not at issue because Leong is challenging the forfeiture of games characters and game data as an unlawful and unfair penalty.

---

[4] The loss of the game is analogous to a sports figure who spent years developing his skill and cultivating relationships in order to get into a professional league only to have his skill and relationships taken away such that he is left starting over from scratch. The loss is also analogous to a collector of fine wine, rare books or art who spends years developing a collection only to have the collection stolen and have to start over building the collection he had worked years to build.

IV. **Leong Can Amend the Complaint to Cure Deficiencies to Show Her Standing to Challenge Square Enix's Conduct in Concealing the Penalties and Forfeiture.**

A. **Leong She Did Not Purchase the Game Again To Play It.**

In view of the exigency of the circumstances warranting an additional offer of proof to establish her standing, Leong submits a declaration to explain her second purchase. In ruling on a 12(b)(6) motion, "it is within the trial court's power to allow … the plaintiff to supply … by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." Warth v. Seldin, 422 U.S. 490, 501 (1975).

As set forth in Leong's Declaration, she did not purchase the game again to play. She purchased the game to make certain inquiries about (1) the current packaging and information provided with the game disc, and (2) the status of her game character and game data previously stored under her previous member account.

Plaintiff should be allowed to amend her complaint to allege additional facts clarifying the circumstance surrounding her conduct after the loss of her member account to establish her Article III standing. In considering the four factors for determining whether to grant or deny leave to amend a pleading: (1) prejudice to the opposing party, (2) undue delay, (3) bad faith or dilatory motive, and (4) futility of an amendment, it is clear that the factors favor Plaintiff's request. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987) Futility of amendment, the most relevant factor here, frequently means that "it was not factually possible for [plaintiff] to amend the complaint so as to satisfy the standing requirement." Id.; see also Chang v. Chen, 80 F.3d 1293, 1296, 1301 (9th Cir.1996) (asserting that " 'dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment' "

but affirming dismissal with prejudice of civil RICO claims) (quoting Polich v. Burlington Northern, Inc., 942 F.2d 1467, 1472 (9th Cir. 1991)).

There is no undue delay or prejudice to the opposing party as this case has just begun. There is no bad faith or dilatory motive for requesting the amendment. Her only motive is to resolve the issues on the merits, which are unlikely to be resolved on an individual case-by-case basis. See Foman v. Davis, 371 U.S. 178, 182 (1962). Finally, the requested amendment will provide an explanation for her second purchase and adequately satisfy the standing requirement under Article III.

### B. The Defendant cannot argue that Leong Lacks Standing to Challenge Square Enix's Concealment under the "Fraud" Prong of the UCL based on the Second Purchase alone.

Even in the absence of Plaintiff's sworn affidavit, it cannot be presumed that Leong bought the game the second time to continue playing the game or that she would have purchased the game the first time regardless of the omitted terms. As counsel explained at oral argument, Leong did not purchase the game for purposes of playing it. She never created an account to play the game. She never paid the subscriptions fees after the second time. Neither points are alleged in the First Amended Complaint. In fact, what is alleged is that Leong purchased the second game in order to set up the game account, but not that she actually did set up the game account. [FAC ¶23]

It cannot be concluded as a matter of law that because she purchased the game the second time, the omitted information could not have influenced her decision in the first purchase. This is a pure *question of fact* that cannot be determined at this stage of the litigation. There are questions about change in circumstances affecting her decision to purchase the second game, about factors affecting her decision to buy the second game that did not exist at the time of the first purchase, about her reasons for buying the second game. It cannot be reasonably deduced from the

pleading alone that the two circumstances, spread over a period of many years and after years of playing the game (initially induced by the fraud), are identical

### C. Leave to Amend Should Be Granted to Name an Additional Class Representative.

Counsel for plaintiff is prepared to name an additional class representative as a plaintiff. This potential additional plaintiff did not purchase the game a second time so to the extent that the second purchase is relevant to standing, this new plaintiff would not have that problem. In the interest of judicial economy and resources, leave to amend should be granted to name this new party. It is respectfully submitted that the proper procedural course would be to grant leave to amend to name a new class representative.[5] If leave to amend is not granted and the case is dismissed, a new lawsuit with this new plaintiff will be immediately filed.

### V. Conclusion.

Based on the foregoing, Square Enix's motion to dismiss should be denied or in the alternative, Leong should be granted leave to amend.

Dated: October 15, 2009

MAKAREM & ASSOCIATES, APLC

By: _____
MARNI B. FOLINSKY
Attorneys for Plaintiff

---

[5] Even if a new class representative had not been located, plaintiff should be afforded the opportunity to locate a new class representative and amend the complaint to add that party. Although there is no federal case on point, California appellate courts have held it is proper to allow plaintiffs who did not have standing to bring a class action the right to conduct precertification discovery in order to find an adequate class representative once it was determined that the 8 class representative did not have standing. See CashCall, Inc. v. Superior Court (2008) 159 Cal.App.4th 273.

PROOF OF SERVICE
(Code of Civil Procedure §1013A(d))

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is 11601 Wilshire Boulevard, Suite 2440, Los Angeles, CA 90025-1740. On October 15, 2009, I caused the foregoing document described as:

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ARTICLE III STANDING

Said document was served on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

| | |
|---|---|
| Joel D. Siegel, Esq.<br>Sonnenschein Nath & Rosenthal LLP<br>601 South Figueroa Street<br>Suite 2500<br>Los Angeles, California 90017-5704<br>Facsimile: 202-408-6399 | Christian S. Genetski, Esq.<br>Sonnenschein Nath & Rosenthal LLP<br>1301 K Street, N.W. Suite 600 East Tower<br>Washington DC, 20005-3364<br>Facsimile: 213-623-9924 |

__xx__ BY MAIL: I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with this business' practice for collection and processing of mail and that on the same day, and in the ordinary course of business, said mail is deposited in the United States Mail with postage thereon fully prepaid at Los Angeles, California. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit/proof of service.

____ PERSONAL SERVICE: I delivered said envelope by hand to the offices of the addressee(s).

____ VIA FACSIMILE: On to the interested parties above-designated at the fax numbers noted above.

____ VIA OVERNIGHT DELIVERY: I placed such envelope for regularly scheduled pickup at our offices on the date of this declaration by our usual overnight delivery service.

__xx___ (Federal) I declare that I am employed in the offices of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 15, 2009, at Los Angeles, California.

*Stefani McDowell*
Stefani McDowell