JOEL D. SIEGEL (State Bar No. 155581)
E-mail: jsiegel@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

CHRISTIAN S. GENETSKI (*Pro Hac Vice* Admitted)
Email: cgenetski@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
1301 K Street, N.W., Suite 600
Washington, DC 20005
Telephone: (202) 408-6400
Facsimile: (202) 408-6399

Attorneys for Defendants
Square Enix of America Holdings,
Inc. and Square Enix, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER LEONG, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SQUARE ENIX OF AMERICA HOLDINGS, INC., a Delaware corporation; SQUARE ENIX, INC., a Washington corporation, DOES 1-10,<br><br>　　　　Defendants. | No. CV09-04484 PSG (VBKx)<br><br>SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANTS SQUARE ENIX OF AMERICA HOLDINGS, INC. AND SQUARE ENIX, INC. |

## I.   INTRODUCTION

Plaintiff Esther Leong's ("Leong") latest attempt to survive dismissal not only smacks of gamesmanship, but is legally unsound.  Contrary to her bald assertion that there is "no federal case on point," black letter law makes clear that once a federal court determines a plaintiff lacks Article III standing, the court must dismiss without permitting amendments or substitute plaintiffs.  (*See* Square Enix Supp. Brief at 4-7.)  Accordingly, unless Leong can establish that she suffered injury fairly traceable to Square Enix's conduct, this action must be dismissed with prejudice.  She cannot.

In a last-ditch effort to articulate a sustainable claim, Leong reinvents (yet again) her theory of liability, which now bears little resemblance to the actual allegations in her First Amended Complaint ("FAC").  Specifically, she abandons the principal argument in her initial Opposition Brief (and oral argument) that her injury was being "forced" to purchase a second copy of the Final Fantasy® XI game.[1]  Instead, Leong resurrects her previously abandoned claim that her "injury" was the initial purchase of the game software and payment of monthly subscription fees during her two active years of game play.  These payments were allegedly injurious because Leong enjoyed the game without comprehending the alleged "penalty terms," or because the terms themselves are "unlawful and unfair."

By her own admission, these terms were fully disclosed to her in the PlayOnline® Member Agreement ("POL-MA") prior to her registration of a game

---

[1]   In so doing, Leong offers a declaration in which she claims the second purchase was merely part of her "investigation" of this action — an implicit concession that she bought the second game in an attempt to purchase standing.  The declaration, offered in support of her request for leave to amend, is procedurally improper and should be disregarded by the Court.  If, however, the Court elects to consider Leong's declaration, Square Enix respectfully requests leave to submit the concurrently filed Declaration of Yasu Kurosawa ("Kurosawa Decl.") to correct the significant factual inaccuracies in Leong's declaration that belie her claim that amendment would not prove futile.

- 2 -

account, and she consented to them.  Moreover, the POL-MA contract was available for her review online at Square Enix's website (as plainly stated on the game packaging) prior to her purchase of the software.  Under Leong's own factual allegations, there simply was no deception.  Finally, Leong's belated attempt to espouse a novel theory that the contract itself is unlawful — where her FAC contains no such allegation — cannot be properly considered by this Court.  Even if this argument were not moot, Leong offers no authority to support how charging a monthly fee for a month's access to an online game could be "illegal" or "unfair," and lacks standing as a matter of law to challenge other terms of the POL-MA that were never enforced against her.

Leong's latest brief confirms that this case is precisely the type of action California's Proposition 64 was designed to deter, and against which Article III serves as a gatekeeper.  Leong continues to invent new arguments and abandon others in her attempt to manufacture "injury" where none exists, actions consistent with her revelation that she repurchased the game to bolster her complaint.  And now her counsel requests that when these efforts fail, they be permitted to try their theories again with a new plaintiff.  Federal law dictates otherwise.

## II.    ARGUMENT

### A.    Leong Suffered no Injury Traceable to Square Enix.

Leong claims she has standing because she bought the game, paid fees and "lost" game data, and that the contractual terms under which she did so were allegedly "unlawful" or "unfair."  For myriad reasons, Plaintiff is wrong.

First, because the FAC nowhere challenges the validity of the POL-MA, (and quite the contrary, acknowledges Leong's consent to its terms), Leong's new arguments are not properly before this Court.  *Broam v. Bogan*, 320 F.3d 1023, 1026, n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.")

Nor does Leong offer any support for contention that any of the standard contractual provisions at issue are "illegal." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555 (2007) (noting that there is nothing inherently unfair about for-profit business charging fees for service absent plaintiff alleging facts showing they were not permitted to do so).[2]

Second, as this Court recognized during the hearing (*see* Sept. 28, 2009 Hearing Transcript ("Tr.") at 13:17-23), the FAC makes plain that all of the alleged "harms" about which Leong now complains concern aspects of the game disclosed to her in 2005 *before* she commenced her initial subscription. Her subsequent voluntary decisions to play the game, pay monthly subscription fees for two years, and purchase a second copy in 2009 all occurred *after* she was fully informed of, and consented to, the POL-MA. *Evans v. Chase Manhattan Bank USA, N.A.*, 2006 WL 213740, at *6 (N.D. Cal. Jan. 27, 2006) (actions consistent with the "fully-disclosed terms of the contract . . . cannot plausibly be labeled a deception").

Third, Leong has conceded she suffered no harm from paying monthly subscription fees (after all, those payments enabled her two years of active online game play), and has already abandoned any claim that payment of fees is challenged in this action.[3] (Plf. Opp. at 9:19-10:16.) *See also Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th at 1555.

---

[2] Leong also posits that "reliance is not required to have standing" under the "unfair and unlawful" prong of the UCL, but even the Supreme Court case she quotes instructs a court to ask whether "the line of causation between the illegal conduct and injury [is] too attenuated[.]" *Allen v. Wright* 468 U.S. 737, 752 (1984). In other words, is there injury traceable to the defendant's conduct?

[3] Specifically, Leong has conceded that "charging fees, reserving rights to assess fees, suspend or delete delinquent accounts . . . are not the 'unfair' or 'deceptive' business practices at issue in the lawsuit"; "it is not the monthly Subscription Fees that are questioned here"; "it is not the late fees and reactivation fees [] that are questioned in this lawsuit"; and "plaintiff and her class do not question the validity of these fees, nor is the practice of charging such fees challenged in this lawsuit." (Plf. Opp. at 9:19-22, 9:25-28, 10:1, 10:9-11.)

Fourth, her abandonment notwithstanding, Leong lacks standing to challenge late and reactivation fees she was never required to pay. *Meyer v. Sprint Spectrum L.P.,* 45 Cal. 4th 634, 639, 642 (2009) (plaintiffs lack standing where they "have not shown they were personally damaged or that the allegedly unconscionable or illegal provisions have been enforced against them.") The FAC does not allege, and Leong was never charged, any late or reactivation fee. (*See generally* FAC.)

Fifth, Leong continues to maintain, without any citation or explanation, that "deletion of game data and characters" somehow constitutes injury in fact. (Plf. Supp. Brief 7:14-24.) The POL-MA disclosed (and Leong agreed) that payment of monthly fees afforded Leong only the use and enjoyment of the online game, and that *Square Enix retained all game data ownership rights*.[4] Square Enix could have opted at any point to cease offering the game *altogether*. Simply put, Leong cannot claim injury for "losing" something she never owned — and which was never lost.

Finally, Leong's recasting of her 2009 purchase does not aid her cause. At oral argument, this Court observed there could be no "Article III standing or 17200 or 17500 reliance in any way when this particular named plaintiff . . . [bought] the game [in 2009] having known about [all of the provisions of the POL-MA]." (Tr. at 8:11-17). *Then*, Leong's counsel argued that "she didn't lose any money if she bought the game the first time, but she lost money because she had to buy the game a second time if she wanted to play." (Tr. at 6:22-24). *Now,* Leong claims

---

[4] Similarly, Leong cannot fabricate injury by pretending Square Enix required her to "forfeit" her original game software, particularly where no "forfeiture" occurred and the game character and data remain available for reactivation with the original game software. Even assuming the POL-MA imposed a forfeiture provision (and it does not), *Ridgley v. Topa Thrift and Loan Association,* 17 Cal. 4th 970 (1998) does not establish that such a provision would be unfair or illegal. *Ridgley* is inapposite because it merely invalidated a prepayment penalty for delinquent loan payments because the penalty was disproportionate to the amount of anticipated damages. *Id.* at 981.

- 4 -

Case No. CV09-04484 PSG (VBKx)  SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

that she "bought the second game disc for the sole purpose of investigating the merits of the claims against Square Enix." Leong Decl. at ¶ 8. Leong's admission that her second purchase was a calculated litigation tactic confirms she lacks standing to sue and demonstrates that this is a manufactured lawsuit. *Buckland v. Threshold Enterprises, Ltd.,* 155 Cal. App. 4th 798, 815-16 (2007) (plaintiff who claimed she purchased product "to investigate claims against Threshold" lacked standing to sue because she "purchased the product to establish standing for litigation against Threshold").

### B. Leong's Lack of Article III Standing Forecloses Any Further Proceedings.

Leong's lack of Article III standing deprives the Court of subject matter jurisdiction over this suit, and consequently, any authority to grant Leong leave to amend or substitute a plaintiff with standing. *See, e.g., Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003); Square Enix Supp. Br. pp. 4-7. Amendment would be futile. Leong has never been charged the penalties, late fees, or reactivation fees that she claims are allegedly "unlawful," and the game characters were never "lost" or "deleted," but remain available for reactivation. Leong's FAC should be dismissed with prejudice.

Respectfully submitted,

Dated: October 22, 2009

SONNENSCHEIN NATH & ROSENTHAL LLP
JOEL D. SIEGEL
CHRISTIAN S. GENETSKI

By_____/S/_____
Joel D. Siegel

Attorneys for Defendants
Square Enix of America Holdings, Inc. and
Square Enix, Inc.

- 5 -

Case No. CV09-04484 PSG (VBKx)                    SUPPLEMENTAL REPLY BRIEF
                                                  IN SUPPORT OF MOTION TO DISMISS