JOEL D. SIEGEL (State Bar No. 155581)
E-mail:  jsiegel@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924

CHRISTIAN S. GENETSKI (*Pro Hac Vice*)
Email:  cgenetski@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
1301 K Street, N.W., Suite 600
Washington, DC 20005
Telephone:  (202) 408-6400
Facsimile:  (202) 408-6399

Attorneys for Defendants
Square Enix of America Holdings,
Inc. and Square Enix, Inc.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER LEONG, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>SQUARE ENIX OF AMERICA HOLDINGS, INC., a Delaware corporation; SQUARE ENIX, INC., a Washington corporation,<br><br>    Defendants. | Case No. CV09-04484 PSG (VBKx)<br><br>DEFENDANTS SQUARE ENIX OF AMERICA HOLDINGS, INC.'S AND SQUARE ENIX, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT<br><br>Date:  April 12, 2010<br>Time:  1:30 p.m.<br>Place:  Courtroom 880<br><br>Judge:  Hon. Philip S. Gutierrez |

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that, on April 12, 2010, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 880 of the United States District Court for the Central District of California, Western Division, located at 255 East Temple Street in Los Angeles, California, defendants Square Enix of America Holdings, Inc. and Square Enix, Inc. (collectively, "Square Enix") will move, and hereby do move, to dismiss plaintiff Esther Leong's ("Leong") Second Amended Complaint ("SAC") for failure to state a cognizable claim for relief.  Fed. R. Civ. P. 12(b)(6).

The grounds for this motion are that (1) the claims for violation of the Consumer Legal Remedies Act ("CLRA") and False Advertising Law ("FAL") are time-barred by the three-year limitations period with regard to all Plaintiffs, and other claims are time-barred against certain Plaintiffs; (2) all of the named plaintiffs lack Article III standing to sue because the SAC alleges no injury traceable to Square Enix's conduct; and (3) the SAC fails to allege sufficient facts to state a claim under the CLRA, FAL, Unfair Competition Law ("UCL") or California Civil Code § 1671(d).  Accordingly, the SAC is legally deficient and should be dismissed with prejudice.  Fed. R. Civ. P. 12(b)(6).

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 18, 2010.  Declaration of Christian S. Genetski, at ¶ 2.

///

///

///

///

///

///

1    Square Enix's motion is based upon this Notice, the following

2  Memorandum of Points and Authorities, the concurrently-filed Declaration of

3  Christian S. Genetski, all pleadings, records and documents in this case, and any

4  oral argument presented in support of this motion.

5  Dated: February 24, 2010          Respectfully submitted,

6                                     SONNENSCHEIN NATH & ROSENTHAL LLP

7

8

9  By _____ /s/ Joel D. Siegel _____

10                    JOEL D. SIEGEL
                   CHRISTIAN S. GENETSKI

11  Attorneys for Defendants
   Square Enix of America Holdings, Inc. and
12  Square Enix, Inc

13

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................1

II. THE APPLICABLE STATUTES OF LIMITATIONS BAR
    CERTAIN CLAIMS .............................................................................................3

    A.  All Plaintiffs' FAL and CLRA Claims are Time-Barred
        Because the Alleged Deception at Each Point of Purchase
        Took Place Over Three Years Prior to the Filing of this
        Action. ...................................................................................................3

    B.  Plaintiff Stees' UCL and 1671 Claims are Time-Barred
        Because His Last Interaction With Square Enix Allegedly
        Occurred Over Four Years Prior to Commencement of This
        Action, and Carr, Chang, and Hayne's UCL and 1671 Claims
        are Similarly Barred to the Extent They Rely on Alleged
        Deception at the Point of Sale. ..............................................................4

III. ALL PLAINTIFFS LACK STANDING ...............................................................5

    A.  Plaintiffs that Purchased the Game Originally but Did Not
        Repurchase the Game or Pay to Restore Game Data Suffered
        No Injury in Fact (Stees and Hayne) .....................................................6

    B.  Plaintiffs that Repurchased the Game to Play or Paid to
        Restore Terminated Accounts Lack Standing for the Same
        Reasons that the Court Dismissed Leong's FAC (Carr and
        Chang) ...................................................................................................8

    C.  Plaintiff Leong's Newly Minted Reason for Repurchasing
        the Game—to Investigate Whether her Game Data was
        Recoverable—Cannot be Used to Manufacture Standing .................9

IV. ALL PLAINTIFFS HAVE FAILED TO STATE A CLAIM
    UNDER ANY OF THEIR FIVE COUNTS .........................................................9

    A.  Plaintiffs' Claims Under 1671 and for "Illegal Penalties" Fail
        on the Merits Because the "Clause" At Issue Is Not A
        Liquidated Damages Clause, Nor Does It Concern A Breach .........10

        1.  The "Damages" Alleged Do Not Arise From Any
            Breach ......................................................................................11

        2.  The Damages are not for a "Fixed and Certain Sum" ...........13

    B.  No Plaintiff Has Stated a Valid Claim Under Cal. Bus. &
        Prof. Code § 17200 (UCL) or § 17500 (FAL). ................................14

        1.  Terminating Services Provided to a User Following
            Non-Payment of Fees is Lawful ............................................15

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

2.   Charging Players a Fee to Resume Service Is Not Unlawful or Unfair ......................................................... 17

3.   Square Enix's Alleged Omission Of Information Regarding the "Forfeiture Clause" from the Game Packaging is Not a Material Omission Sufficient to State a Claim under §§ 17200 or 17500. ........................... 18

C.   Plaintiffs Fail to State a Claim Under the CLRA .......................... 20

1.   Plaintiffs Failed to Comply With the Notice Requirement Imposed by the CLRA. .................................. 21

2.   Plaintiffs Have Not Alleged Sufficient Facts to State a Claim for Misrepresentations Under § 1170(a)(5) or §1770(a)(14) Because They Have Not Alleged Facts Supporting a Misrepresentation Regarding the Nature of the License to the Game Software Sold. ......................... 22

3.   Plaintiffs Cannot Support a Claim Under § 1170(a)(5) Because Limited Licenses Are Not Unconscionable, They Are the Norm. ................................................................ 23

D.   No Plaintiff Can State a Claim for Unjust Enrichment Where Their Underlying Claims are Invalid, Where the Contested Conduct is Governed by a Contract Between the Parties, and Where They Received the Benefit of Game Play. ........................... 24

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. CV09-04484 PSG (VBKx)

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Altera Corp. v. Clear Logic, Inc.*
424 F.3d 1079 (9th Cir. 2005) ........................................................................ 24

*Alyeska Pipeline Ser. Co. v. Wilderness Soc'y*
421 U.S. 240 (1975) ........................................................................................ 21

*Ashcroft v. Iqbal*
129 S. Ct. 1937 (2009) .................................................................................... 10

*Augustine v. FIA Card Services, N.A.*
485 F. Supp. 2d 1172 (E.D. Cal. 2007) .......................................................... 23

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................................. passim

*Cattie v. Wal-Mart Stores, Inc.*
504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................ 18

*Chodos v. West Publ'g Co.*
292 F.3d 992 (9th Cir. 2002) .................................................................... 10, 11

*Collyer v. Darling*
98 F. 3d 211 (6th Cir. 2000) .............................................................................. 3

*Davidson & Assocs. v. Jung*
422 F.3d 630 (8th Cir. 2005) .......................................................................... 24

*Evans v. Chase Manhattan Bank USA, N.A.*
2006 WL 213740 (N.D. Cal. Jan. 27, 2006) ................................... 8, 15, 16, 20

*Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*
528 U.S. 167 (2000) ...................................................................................... 5, 6

*In re ARM Financial Group, Inc. Secs. Litig.*
2002 U.S. Dist. LEXIS 13451 (W.D. Ky. July 18, 2002) .................................. 3

*Laster v. T-Mobile United States, Inc.,*
407 F. Supp. 2d at 1183 ............................................................................ 18, 22

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001) ............................................................................ 9

-iii-

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Oestreicher v. Alienware Corp.*
   544 F. Supp. 2d 964 (N.D. Cal. 2008) .................................................................. 22

*ProCD, Inc. v. Zeidenberg*
   86 F.3d 1447 (7th Cir. 1996) ........................................................................... 19

*Ruwe v. Cellco P'ship*
   613 F. Supp. 2d 1191 (N.D. Cal. 2009) ........................................................... 12

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*
   806 F.2d 1393 (9th Cir. 1986) ......................................................................... 22

*Streamcast Networks, Inc. v. Skype Techs, S.A.*
   2006 U.S. Dist. LEXIS 97393 (C. D. Cal. Sept. 14, 2006) ................................ 3

*Walker v. USAA Cas. Ins. Co.*
   474 F. Supp. 2d 1168 (E.D. Cal. 2007) ........................................................... 24

*Walter v. Hughes Communs., Inc.*
   2010 U.S. Dist. LEXIS 5859 (N.D. Cal. Jan. 26, 2010) .................................... 13

*Williams v. Gerber Prod. Co.*
   552 F.3d 934 (9th Cir. 2008) ........................................................................... 15

## CALIFORNIA CASES

*Aron v. U-Haul Co. of Calif.*
   143 Cal. App. 4th 796 (2006) .......................................................................... 23

*Bay Shore Motors v. Baker*
   90 Cal. App. 2d Supp. 895 (1949) ................................................................... 12

*Beasley v. Wells Fargo Bank*
   235 Cal. App. 3d 1383 (1991) ..................................................................... 4, 10

*Belton v. Comcast Cable Holdings, LLC*
   151 Cal. App. 4th 1224 (2007) ........................................................................ 23

*Berryman v. Merit Prop. Mgmt., Inc.*
   152 Cal. App. 4th 1544 (2007) ........................................................................ 18

*Better Food Markets, Inc. v. American Dist. Tel. Co.*
   40 Cal. 2d 179 (1953) ...................................................................................... 14

*Buckland v. Threshold Enters., Ltd.*
   155 Cal. App. 4th 798 (2007) ............................................................................ 9

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-iv-

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

*Byars v. SCME Mortgage Bankers, Inc.*
  109 Cal. App. 4th 1134 (2003) ................................................................15, 16

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*
  94 Cal. App. 4th 151 (2001) ....................................................................24

*Caro v. Procter & Gamble Co.*
  18 Cal. App. 4th 644 (1993) ....................................................................22

*County of Fresno v. Lehman*
  229 Cal. App. 3d 340 (1991) .....................................................................3

*In re Tobacco Cases II*
  46 Cal. 4th 298 (2009) ...........................................................................18

*Khoury v. Maly's of Cal., Inc.*
  14 Cal. App. 4th 612 (1993) ....................................................................15

*Maguire v. Hibernia Savings & Loan Soc.*
  23 Cal. 2d 719 (1944) ..............................................................................4

*Melchior v. New Line Prods., Inc.*
  106 Cal. App. 4th 779 (2003) ..................................................................24

*Morris v. Redwood Empire Bancorp*
  128 Cal. App. 4th 1305 (2005) ................................................................11

*Motors, Inc. v. Times Mirror Co.*
  102 Cal. App. 3d 735 (1980) ....................................................................15

*Olsen v. Breeze, Inc.*
  48 Cal. App. 4th 608 (1996) ....................................................................20

*Outboard Marine Corp. v. Superior Court*
  52 Cal. App. 3d 30 (1975) .......................................................................22

*People v. Toomey*
  157 Cal. App. 3d 1 (1984) .......................................................................19

*Perdue v. Crocker National Bank*
  38 Cal. 3d 913 (1985) .............................................................................11

*Reiner v. Hermann*
  79 Cal. App. 2d 543 (1947) .......................................................................4

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-v-

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Searle v. Windham Int'l, Inc.*
   102 Cal. App. 4th 1327 (2002) ........................................................................ 20

*Walker v. Countrywide Home Loans, Inc.*
   98 Cal. App. 4th 1158 (2002) .......................................................................... 18

*Wilens v. TD Waterhouse Group. Inc.*
   120 Cal. App. 4th 746 (2003) .......................................................................... 22

## **CALIFORNIA STATUTES**

Cal. Bus. & Prof. Code § 17200 ................................................................... passim

Cal. Bus. & Prof. Code § 17500 ................................................................... passim

Cal. Civ. Code § 1671 ..................................................................................... passim

Cal. Civ. Code § 1770 ..................................................................................... passim

Cal. Civ. Code § 1782 ............................................................................................. 21

Cal. Civ. Code § 1783 ............................................................................................... 3

Cal. Code Civ. Proc. § 338 ...................................................................................... 3

Cal. Code Civ. Proc. § 1021.5 .............................................................................. 21

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 10

Fed. R. Civ. P. 9(b) ............................................................................................... 22

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 9

Fed. R. Civ. P. 15(c) ................................................................................................. 3

U.S. Constitution, Article III ............................................................................ 1, 5

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In their third bite at the apple, class counsel have filed a Second Amended Complaint ("SAC") that introduces four new putative class representatives in addition to plaintiff Leong, seven plaintiff "sub-classes" purportedly represented by different groupings of those putative class representatives, and three entirely new causes of action, all in a tortured attempt to circumvent the clear bars raised by this Court's January 10, 2010 Order addressing Article III standing and by defendant Square Enix's prior briefing on the deficiency of Leong's claims.[1] Despite the introduction of five disparate fact patterns from which counsel unsuccessfully attempt to piece together an alleged aggrieved class, the underlying deficiencies in Plaintiffs' claims persist.[2]

Plaintiffs each allege that they purchased Defendant's Final Fantasy® XI Online game software, were informed of and consented to the governing PlayOnline® Member Agreement ("POL-MA")[3]—some numerous times—and paid the required month-to-month subscription fee to play the game for some period of time until they no longer wished to play.  (SAC, ¶¶ 9; 33-48).  Some

_____

[1] The new plaintiffs joining Esther Leong ("Leong") are Richard Stees ("Stees"), Robert Reed Carr ("Carr"), Vincent Chang ("Chang"), and Norman Hayne ("Hayne") (collectively, "Plaintiffs").  The SAC now asserts causes of action under Cal. Civ. Code § 1671(d) ("1671"), the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750-1784 ("CLRA"), and for "Illegal Penalties," in addition to re-alleging claims under Cal. Bus. & Prof. Code § 17200 ("UCL") and 17500 ("FAL").

[2] Although the present motion addresses the fatal flaws in each of the named Plaintiffs' claims, Square Enix notes that the SAC's proffer of five different "representatives" whose experiences are not common or typical even amongst themselves plainly demonstrates that class counsels' search for a single plaintiff with any viable claim has produced an SAC that presents five different representatives of five disparate and separate classes.

[3] Plaintiffs again rely on their consent to the POL-MA to establish jurisdiction in this Court and acknowledge its application, but fail to attach it to the SAC.  The operative POL-MA is in the record as Exhibit A to Square Enix's Motion to Dismiss Leong's First Amended Complaint.  (DK 19-1).

-1-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Plaintiffs never played again and paid no additional fees to Square Enix.  (SAC, ¶¶ 37-39; 46-48).  Others, having been fully informed of the game's terms from their prior game experience, opted to reactivate former accounts and game data and/or repurchase the game.  (SAC ¶¶ 35-36; 40-45).  The SAC now characterizes the alleged harm suffered by the various putative class representatives as:  1) the alleged "loss," pursuant to a so-called "forfeiture clause," of game software and game characters and data when Plaintiffs stopped paying fees for at least three months; and 2) the alleged payment of "illegal penalties" in the form of alleged fees associated with reactivating player accounts or repurchasing the game.  (SAC ¶¶ 36, 39, 42, 45, 48).

Neither of these alleged "harms" is actionable.  Like its predecessor pleadings, the SAC contains critical concessions and omissions that preclude Plaintiffs from stating cognizable claims or establishing their own individual standing to sue.  Many of the new plaintiffs and new claims also suffer an additional infirmity—they are time-barred.  Specifically, Plaintiffs' SAC must fail given it:  1) concedes that prior to incurring any monthly fees, all Plaintiffs consented to the POL-MA, which made plain that Plaintiffs never acquired any rights in the game, data or characters and thus had nothing to "lose" as a result of their choice to stop playing;[4] 2) concedes all Plaintiffs either *never actually incurred* the so-called "penalty" fees to repurchase or reactivate accounts, or did so voluntarily and with full knowledge of the game's terms; 3) fails to allege that either party *breached* any contract from which any "illegal penalty," much less a fixed sum, could flow; and 4) introduces four new plaintiffs whose alleged dates of

---

[4] Section 4.1 of the POL-MA states:  "**Ownership and Rights**.  [Square Enix] . . . owns and shall retain all right, title and interest in and to the PlayOnline Service, the Software and all Documentation, and *will be the sole owner of any and all data you generate through your use of the PlayOnline Service, and you receive only limited rights to access and use PlayOnline Service . . . . SEUI shall reserve its rights in its sole discretion to delete, alter, or transfer any and all data at any time without notice to User*."  (Dkt. 19-1, at 2).

purchase time-bar their claims based on alleged harm resulting from deception at the point of sale.

In sum, neither adding new plaintiffs and causes of action, nor transparently changing the original named plaintiff's allegations, cures the fundamental flaws in class counsels' attempts to manufacture a claim or transforms Square Enix's lawful business practices into unfair or fraudulent ones involving illegal penalties.

## II.   THE APPLICABLE STATUTES OF LIMITATIONS BAR CERTAIN CLAIMS.

### A.   All Plaintiffs' FAL and CLRA Claims are Time-Barred Because the Alleged Deception at Each Point of Purchase Took Place Over Three Years Prior to the Filing of this Action.

Plaintiffs' claims under the FAL and CLRA allege that Defendants failed to disclose the existence of certain terms and conditions prior to purchase or made misrepresentations at the time of purchase.  (SAC ¶¶ 79, 83).  As such, those claims accrued at the time of purchase, and the statute of limitations period for both claims is three years.  C.C.P. § 338(a); *County of Fresno v. Lehman*, 229 Cal. App. 3d 340, 346 (1991); *Streamcast Networks, Inc. v. Skype Techs, S.A.*, 2006 U.S. Dist. LEXIS 97393, *25 n.8 (C. D. Cal. Sept. 14, 2006) (§ 17500); Cal. Civ. Code § 1783 ("Any action brought under the specific provisions of § 1770 shall be commenced not more than three years from the date of the commission of such method, act, or practice").  Leong filed her original complaint in this action on June 22, 2009.  As such, all Plaintiffs who purchased the game prior to June 22, 2006[5] cannot pursue claims under § 17500 or the CLRA.  The SAC alleges that

---

[5] Because these claims are time-barred regardless of whether they relate back to the original complaint, the relation-back doctrine is not addressed in detail here. Defendants, however, contest relation back of any claims brought by newly-added plaintiffs and contend that **February 7, 2010** is the relevant filing date, because while Fed. R. Civ. P. 15(c) permits "change [of] the party or the naming of the party against whom a claim is asserted … but for a mistake concerning the identity of the proper party," it does not envision the addition of a new plaintiff with new claims. *In re ARM Financial Group, Inc. Secs. Litig.*, No. 99-CV-539-H, 2002 U.S. Dist. LEXIS 13451 (W.D. Ky. July 18, 2002) (citing *Collyer v. Darling*, 98

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Leong purchased the game in 2005 (¶33), Stees in 2005 (¶37), Carr in 2002 (¶40), Chang in 2004 (¶43), and Hayne in 2005 (¶46).  As such, no Plaintiff commenced this action within the applicable limitations period, and all Plaintiffs' claims under § 17500 and the CLRA are time-barred.[6]

**B.      Plaintiff Stees' UCL and 1671 Claims are Time-Barred Because His Last Interaction With Square Enix Allegedly Occurred Over Four Years Prior to Commencement of This Action, and Carr, Chang, and Hayne's UCL and 1671 Claims are Similarly Barred to the Extent They Rely on Alleged Deception at the Point of Sale.**

The statute of limitations for claims brought under both § 17200 and § 1671 is four years.  Cal. Bus. & Prof. Code § 17208; *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1401-02 (1991).  Plaintiff Stees' alleges that he opened a PlayOnline account in 2004 and was charged the account fee until "early 2005," and does not allege any contact with the game thereafter.  (SAC ¶ 37). Accordingly, any claim accrued no later than "early 2005," and thus must have been brought by "early 2009."  Thus, even if his claims relate back to Leong's June 22, 2009 filing date, they are time-barred.

Similarly, to the extent each of the other three newly named Plaintiffs' UCL and 1671 claims rely on Square Enix's alleged failure to disclose the existence of the "forfeiture clause" at the time of the purchase, those claims are also time-barred because, as stated above, each player purchased the game more than four years prior to the filing date.  Thus, each of the "sub-classes" that the SAC

---

F. 3d 211, 220 (6th Cir. 2000)).  Additionally, because numerous Plaintiffs fail to provide specific dates of purchase or revocation, Square Enix reserves any objection to Plaintiffs' claims on statute of limitations grounds that may become apparent during discovery should this Court deny Square Enix's motion to dismiss.

[6] For unjust enrichment, the applicable statute of limitations depends upon the gravamen of the underlying action rather than upon the form of the pleading. *Maguire v. Hibernia Savings & Loan Soc.*, 23 Cal. 2d 719, 733 (1944); *Reiner v. Hermann*, 79 Cal. App. 2d 543, 544 (1947).  Thus, all of Plaintiffs' claims for unjust enrichment based on the FAL and CLRA should also be dismissed as barred by the applicable statute of limitations.

-4-

identifies was formed "as a result of" Square Enix's alleged lack of disclosure at the point of sale, and which Plaintiffs Carr, Chang and Hayne purport to represent, is barred from pursuing UCL and 1671 claims. Those "sub-classes" include:

- The "Forfeiture-Reactivation" Subclass (Carr and Chang);
- The "Forfeiture-New Game" Subclass (Carr); and
- The "Revocation (Possibly Banned)" Subclass (Hayne).

## III.   ALL PLAINTIFFS LACK STANDING.

In its January 20, 2010 Order, this Court dismissed Leong's First Amended Complaint (FAC) on the grounds that she did not have standing. As this Court noted, "Article III of the U.S. Constitution requires that (1) the plaintiff has suffered a cognizable injury, (2) the injury is fairly traceable to the defendant's alleged unlawful conduct, and (3) the injury is redressable by judicial decision." Order at 3 (citing *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

This Court found that "[i]n order for her injuries to be traceable to Defendants' conduct, the terms and conditions of the user agreement must have been material to [Leong's] decision to purchase the game in 2005—otherwise, her alleged injuries would not have been caused by the conduct challenged in her causes of action." Order at 5. As this Court noted, "Plaintiff's subsequent act of purchasing [another copy of] the game with full knowledge of the terms and conditions suggests that they were never material." Order at 6.

In the SAC, the conduct alleged to give rise to Plaintiffs' claims falls into three broad categories: (1) that Defendants unlawfully charged a "forfeiture penalty" by requiring additional payments to reactivate dormant accounts, (2) that Defendants failed to disclose the "forfeiture clause" (or made unspecified misleading statements regarding the nature of the game) at the point of sale, and (3) that Defendants' revoked players' licenses pursuant to allegedly unconscionable contractual clauses. (SAC ¶¶ 11-32). For the reasons set forth

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-5-

below, however, no named Plaintiff has standing to bring claims based on any of these three categories of activity because none has suffered injury-in-fact fairly traceable to Square Enix's alleged conduct.  Order at 3 (citing *Friends of the Earth*, 528 U.S. at 180-81).

### A.   Plaintiffs that Purchased the Game Originally but Did Not Repurchase the Game or Pay to Restore Game Data Suffered No Injury in Fact (Stees and Hayne)

Plaintiffs Stees and Hayne had accounts terminated (either by choice in Stees' case or for some unknown, unpled reason in Hayne's case) but did not repurchase the game or pay to restore game data or characters.  Neither plaintiff has standing to bring a claim because neither has suffered a cognizable injury.  The only damage either alleges is the loss of use of the original game software, game characters and game data, which they assert flows from Square Enix's alleged "unfair practice" of not indefinitely retaining data for terminated accounts (UCL/FAL/CLRA) and requiring some payment to restore those accounts where data was retained (§ 1671).  Both Plaintiffs played the game for a number of months before termination, and thus received the full value of the amounts paid to Square Enix—including the full purchase price of the game and their monthly payments for service—while they were playing the game.[7]  (SAC ¶¶ 37, 46).

First, Plaintiffs Stees and Hayne plainly lack standing to pursue claims under § 1671 and for "Illegal Penalties" because neither plaintiff is alleged to have *ever* paid *any* fee as a result of the "forfeiture clause" and thus were never damaged by

---

[7] In the case of gym memberships or similar services with a "new member" fee the first month of service is often more expensive than subsequent months of service, and there is nothing inherently unfair about that common practice.  Here, neither Plaintiff suffered any loss by paying the purchase price plus the monthly fee and receiving full access to the on-line game for as long as they continued to pay fees, especially given that Square Enix provides the first month of service for free.  By contrast, Plaintiffs in essence seek to bind computer game publishers to maintain the usefulness of online computer games *in perpetuity* or face claims for the "loss" of the game's value at the point they cease supporting the game, as evidenced by Carr's alleging he "lost" the value of his purchase when he allegedly was unable to recover game data after a *four year* absence from the game.  (SAC ¶ 40-41).

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

the alleged "penalties" associated with that clause.  As such, neither has suffered an injury-in-fact sufficient to confer standing.

Second, Stees' and Hayne's allegations regarding "loss" of the game software and data likewise fail to state the requisite injury to confer standing for their UCL, FAL, or CLRA claims.  Before either Stees or Hayne ever played the online game, they read and consented to the terms of the POL-MA.  (SAC ¶¶ 9, 16.)  That agreement disclosed the mandatory payment of monthly fees to play, that the payment of monthly fees afforded Plaintiffs only the use and enjoyment of the online game, and that Square Enix retained all ownership rights in the game accounts, characters and data.  (Dkt. 19, Ex. A ¶ 4.1).  As such, operation of the so-called "forfeiture clause" cannot have caused Stees' and Hayne's alleged losses, because they *never owned* the property they claim to have lost.

Third, Plaintiffs Stees and Hayne did not suffer any loss from paying the purchase price of the game.  Stees allegedly played the game for approximately one year, while Hayne claims to have played for nearly four years.  (SAC ¶¶ 37, 46).  Both thus received the full value of the purchase price of the game.  Neither Plaintiff alleges that they attempted to obtain a refund or were denied a refund by a retailer or Square Enix—merely that *defendants* knew that apparently 100% of *retailers* "do not allow purchasers of computer Games to return the merchandise after the Game has been opened."[8]  (SAC, ¶ 61).  Plaintiffs, on the other hand, were fully aware of all game terms and limitations to which they now object before they first played the game, and chose to play the game for one and four years respectively despite this knowledge.  As with Leong's second, knowing purchase of the game software as alleged in the FAC, Plaintiffs Stees and Hayne's decisions to incur fees by playing the game were made with full knowledge of the

---

[8] Moreover, to the extent Plaintiffs' UCL claims are founded on the alleged lack of disclosure at the time of purchase, they are time-barred.  *See* Section II.B., *infra*.

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

game's terms, and they cannot fairly claim they resulted from Square Enix's failure to print those terms on the game packaging. *Evans v. Chase Manhattan Bank USA, N.A.*, 2006 WL 213740, at *6 (N.D. Cal. Jan. 27, 2006) (actions consistent with the "fully-disclosed terms of the contract . . . cannot plausibly be labeled a deception"), *aff'd*, 267 Fed. Appx. 692 (9th Cir. 2008).

**B.    Plaintiffs that Repurchased the Game to Play or Paid to Restore Terminated Accounts Lack Standing for the Same Reasons that the Court Dismissed Leong's FAC (Carr and Chang).**

Plaintiffs Carr's and Chang's informed decision to, respectively, repurchase the game and pay to restore a terminated game account, plainly foreclose their ability to assert an injury fairly traceable to Square Enix.  For the same reasons stated in this Court's January 20, 2010 Order, these subsequent, voluntary payments made to resume game play negate their standing to bring FAL, UCL, or CLRA claims based on Square Enix's alleged failure to disclose material facts at the time of purchase.  (Order at 6.)  As the Court held, the non-disclosure of the "forfeiture clause" at the time of purchase could not have been material to these Plaintiffs' decisions to purchase the game or pay the fees originally.  Like Leong, they subsequently repurchased the game and recommended payment of fees with full knowledge of the "forfeiture clause."  (Order at 6.)  Accordingly, under the law of this case, Carr and Chang lack standing to pursue the UCL, FAL, and CLRA claims.[9]

Nor do Carr and Chang have standing to bring claims under § 1671.  The payments they made to start over or to retrieve game characters flowed from their own voluntary choices to begin playing the game again with full knowledge of the

---

[9] Although the FAC did not include a cause of action under the CLRA, the basis for the CLRA claim in the SAC is the alleged failure to sufficiently disclose at the point of purchase that the game was sold pursuant to a license.  Accordingly, the Court's Order applies with equal force to the CLRA claim.

-8-

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

POL-MA's terms and conditions—not Square Enix's conduct.  Because their alleged injuries giving rise to a § 1671 claim were not attributable to Square Enix's conduct, they lack standing to sue under § 1671.

### C. Plaintiff Leong's Newly Minted Reason for Repurchasing the Game—to Investigate Whether her Game Data was Recoverable—Cannot be Used to Manufacture Standing.

Plaintiff Leong, in an attempt to avoid the effect of this Court's prior ruling, now claims that she purchased the game a second time not to play the game, but only to attempt "to see if she could retrieve her old Final Fantasy XI Registration Code to which her in-game character and Game data are tied through her new game account."  (SAC ¶ 35).  Given that the game data is not useful outside of playing the game and that Leong's prior pleadings made the *exact opposite* assertion, the two claims are irreconcilable and suggest that Leong made knowingly false allegations in either the FAC or SAC.  Even if the allegation in the SAC is true, however, such a purchase cannot satisfy the injury-in-fact requirement.  As this court noted in its prior Order, the purchase of a product to investigate potential claims cannot constitute an injury in fact for standing purposes.  (Order at 7, n. 2); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 815-16 (2007).  Thus, even if Leong's allegations are true, she lacks standing for the same reasons as Plaintiffs Stees and Hayne explained above.

## IV. ALL PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER ANY OF THEIR FIVE COUNTS.

A court may dismiss a claim under Rule 12(b)(6) for "failure to state a claim" upon which relief can be granted where a claim lacks a "cognizable legal theory [], or [there is] an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 731-32 (9th Cir. 2001).  As the Supreme Court emphasized in *Bell Atlantic Corp. v. Twombly*, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

-9-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted).  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

As the Supreme Court held in *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "[W]here the well pleaded facts do not permit the court to infer more than *the mere possibility of misconduct*, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief.'" *Id*. at 1950 (emphasis added) (second alteration in original) (quoting F.R.C.P. 8(a)(2)).  In other words, "a complaint [that] pleads facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief" and thus cannot survive a motion to dismiss.  *Id*. at 1949 (citation omitted) (internal quotation marks omitted).

### A. Plaintiffs' Claims Under 1671 and for "Illegal Penalties" Fail on the Merits Because the "Clause" At Issue Is Not A Liquidated Damages Clause, Nor Does It Concern A Breach.

In order to maintain a § 1671 claim,[10] Plaintiffs must allege sufficient facts demonstrating that the alleged "forfeiture clause" constitutes liquidated damages. Cal. Civ. Code § 1671(d) states that:

> a provision in a contract ***liquidating damages for the breach of the contract*** is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.

(emphasis added.)  California courts define liquidated damages as "an amount of compensation to be paid in the event of a breach of contract, the sum of which is

---

[10] California courts have recognized that § 1671 codifies existing common law regarding illegal penalty clauses, and thus there is no separate cause of action for "illegal penalties." *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1398-99 (1991).

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

-10-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

fixed and certain by agreement." *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (quotation and citation omitted), *overruled in part on other grounds, McCarthy v. Tally,* 46 Cal. 2d 577 (1956). Thus, to constitute liquidated damages, the contractual provision must: (1) arise from a breach, and (2) provide a fixed and certain sum. *Id.*

### 1.    The "Damages" Alleged Do Not Arise From Any Breach.

A fee is not liquidated damages when the fee may be imposed only upon the occurrence of an event that does not constitute a breach of the contract. *Perdue v. Crocker National Bank*, 38 Cal. 3d 913, 931 (1985); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314-15 (2005). Therefore, if the forfeiture "penalty" does not arise from a breach, it cannot support a claim under § 1671. In *Perdue,* the California Supreme Court rejected a claim that a $6 overdraft fee that the defendant bank charged when an account holder had insufficient funds ("NSF") for a check was an unlawful penalty under § 1671(d). The Court first found that the act that triggered the overdraft fee—the writing of a check—was not a breach of contract, because the contract by its terms did not prohibit customers from writing checks for amounts greater than those contained in their accounts. *Id.* at 930-31. The Court reasoned that because the triggering event was not a breach of the contract, the overdraft fee was not a liquidated damages provision subject to the requirements of § 1671. *Id.* at 931. Similarly, in *Morris*, the court found that a $150 termination fee for a credit card merchant account was not a liquidated damages provision because the merchant's termination was expressly allowed at any time, and thus termination was not a breach of contract as required to trigger a liquidated damages provision. *Morris*, 128 Cal. App. 4th 1305.

Similarly, any amount that a Plaintiff in this case would have to pay because of the "forfeiture clause" does not arise from a breach of contract, because like the credit card merchants in *Morris*, a Plaintiff *does not breach the contract by choosing to discontinue use of the service*. Players may quit at any time. A

-11-

player's choice to terminate a game account is thus not a "breach" of the contractual agreement such that Square Enix obtains a right to enforce the "forfeiture clause."  *See also Bay Shore Motors v. Baker,* 90 Cal. App. 2d Supp. 895, 899 (1949) ("The term 'liquidated damages' is used to indicate an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement, and which may not ordinarily be modified or altered when damages actually result from nonperformance of the contract.")  The SAC does not allege (and cannot allege) that players agree to pay monthly fees for any period other than on a month-to-month basis.  The SAC merely alleges that players "stopped" paying monthly fees, which would result in immediate termination of access to an account.  No Plaintiff claims to have "breached" the agreement by *failing to pay money owed under the contract*.  Instead, all named Plaintiffs appear to have terminated their duty to pay any fees simply by not renewing their subscription[11] for the following month.[12]  As such, there is no "breach" that triggers the "forfeiture clause."  Moreover, nothing in the *contract* requires repurchase of the game in the event a breach actually occurs (such as failure to pay an outstanding balance), and a user's decision to repurchase the game is voluntary.

---

[11] The lone exception appears to be Plaintiff Hayne, but the SAC appears to allege that his account access was wrongly or unlawfully terminated by Square Enix, not that it was terminated for breach of the agreement, a completely different basis for a claim than the other purported class representatives.

[12] Unlike the plaintiffs in *Ruwe v. Cellco P'ship*, 613 F. Supp. 2d 1191, 1196-97 (N.D. Cal. 2009), the payments "required" by the "forfeiture clause" for players seeking to resume play are not triggered by a breach of contract.  In *Ruwe*, the plaintiffs signed 2-year contracts requiring timely payments and the plaintiffs failed to continue paying fees before that period expired.  The reconnection fees in *Ruwe* were assessed on the customers that failed to pay their bills on time, and thus breached their agreement to pay.  Here, nothing prevents users from terminating at any time, and the alleged "forfeiture clause" applies regardless of whether the user terminated the agreement without breaching the contract.

-12-

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### 2.     The Damages are not for a "Fixed and Certain Sum."

The SAC also fails to allege that the "penalty" imposed by Square Enix—the fees/costs to repurchase the game software or restore the game accounts, characters or data—was a "fixed and certain sum" for each member of the class, or even for each of the five purported class representatives.  Indeed, the SAC does not identify *any* fixed sums, nor account for any variance in the price charged by a retailer or date of purchase.  The same is true for the purported cost to reactivate the service, which would fairly include past due and current monthly fees.  Absent such allegations, Plaintiffs' § 1671 claim must fail.  *See Walter v. Hughes Communs., Inc.,* 2010 U.S. Dist. LEXIS 5859, *40-41 (N.D. Cal. Jan. 26, 2010) (rejecting § 1671 claim where an early termination fee "of up to $ 700" varied depending upon the individual customer's type of service plan and date of termination).  Here, the allegations of the SAC are woefully insufficient on this point, as Plaintiffs merely claim, "Defendants were selling forfeited game characters back to players at an exorbitant price."  (SAC ¶ 23).  The sole named Plaintiff who recovered game data, Vincent Chang, does not allege how much he paid to retrieve the data or characters, whether that amount was a fixed sum, or whether that amount was merely past due and current monthly fees.  The SAC nowhere alleges that such payment was a "fixed and certain sum" for all customers attempting to recover game data and characters.

Additionally, because the application of the "forfeiture clause" depends on actions taken by users after they choose to stop paying for the service, the "forfeiture clause" does not apply in a "fixed and certain" manner to customers' nonperformance of the promise to pay their bills on time.  Plaintiffs Stees and Hayne, who chose not to play the game again, paid no additional sum.  As the allegations regarding Chang and Carr further illustrate, even players who do choose to play again are not assessed a uniform "penalty."  (SAC ¶¶ 41, 44).  Carr alleges that the "penalty" resulting from his forfeiture required the repurchase of

-13-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

the game software, whereas Chang appears to allege that he had to pay some undisclosed fee to reactivate an account and restore game data, but not repurchase the game software—an allegation that appears to conflict with paragraphs 16 and 22 of the SAC, which allege that players *must* repurchase the game and buy new characters. *Id.* By Plaintiffs' own account, then, even the named Plaintiffs were not subjected to a fixed penalty assessment. A fee cannot constitute a liquidated damages provision where it applies only to some customers—here, those that chose to reactivate accounts—and not to others, or applies to varying amounts and degrees to different customers, even though all have committed the identical (non)-"breach" of choosing not to continue to pay for the service. That outcome is inconsistent with the purpose of a liquidated damages provision under § 1671, which by definition provides parties with certainty regarding the extent of liability in the event of a breach. *See Better Food Markets, Inc. v. American Dist. Tel. Co.,* 40 Cal. 2d 179, 184 (1953).

**B.**     **No Plaintiff Has Stated a Valid Claim Under Cal. Bus. & Prof. Code § 17200 (UCL) or § 17500 (FAL).**

Plaintiffs allege that Square Enix violated § 17200 by enforcing an "illegal" "forfeiture clause," by revoking Plaintiffs' and class members' online accounts, by "forcing" players to buy new game software and game characters to replace the "forfeited" game software and game characters that they "lost" under the "forfeiture clause" when they ceased paying monthly fees, by selling forfeited game software and characters back to players, and by concealing or failing to disclose the "forfeiture clause" at the point of sale. (SAC ¶ 60). These acts, the SAC alleges, give rise to a UCL claim because they were unfair, fraudulent, and violated the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq.* (the "CLRA").[13]

---

[13] For a discussion of the CLRA, *see* section IV.C *infra.*

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Similarly, Plaintiffs allege that Square Enix violated the FAL by failing to disclose information about the "forfeiture clause" in the advertising, marketing, and sale of the game to the public, with alleged knowledge that players would not be able to obtain a refund for the game from retailers.  (SAC ¶¶ 79, 80).

Like the prior two pleadings, the SAC fails to assert any *facts* to support Plaintiffs' conclusory allegations that Square Enix engaged in an "'unlawful, unfair or fraudulent business practice.'"  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code § 17200).  The SAC also fails to adduce facts showing that Square Enix engaged in "unfair, deceptive, untrue, or misleading advertising" sufficient to sustain a claim under the FAL.  *Id.* (quoting Cal. Bus. & Prof. Code § 17500).  As described below, the SAC does not "state with reasonable particularity the facts supporting the statutory elements of the violation" under either statute.  *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  The SAC fails to provide any description on how industry (and indeed cross-industry) standard contract terms are "unfair" or cause harm that outweighs any benefits that the conduct may have.  *See Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980).

Plaintiffs' duty under the Federal Rules and California law is to provide a plausible factual basis for inferring that Square Enix engaged in unlawful acts that transformed these lawful, disclosed practices into unfair or deceptive ones.  *Byars*, 109 Cal. App. 4th at 1149, 1150; *Evans*, 2006 WL 213740, at *6.  Plaintiffs fail to do so.  Absent some additional indicia of wrongdoing, charging fees for a service and reserving rights to assess fees, suspending or deleting delinquent accounts, or revoking account access are patently *fair* business practices.

### 1.   Terminating Services Provided to a User Following Non-Payment of Fees is Lawful.

The SAC alleges that the "forfeiture clause" is a statement in the user manual provided with the Game that provides that "players forfeit their game and game

-15-

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

characters if they *fail to pay the account fee* for more than three months."  (SAC ¶ 16).  (emphasis added).  The so-called "forfeiture clause" is thus nothing more than notice to Plaintiffs that if they suspended their use of the game service by choosing not to pay for three months, Square Enix would no longer incur the cost of storing data attached to the account.  No case law has found unfair or unlawful conduct on the part of service providers for suspending or terminating service for *non-payment*.

Beyond the sort of conclusory "labeling" allegations that *Twombly* rejected, the SAC fails to offer any specific facts suggesting *how* enforcement of the "forfeiture clause" or revocation of online accounts after three months of non-payment could be unlawful.  The majority of the SAC's allegations address (in conclusory fashion) whether the so-called "forfeiture clause" was a liquidated damages provision.  (SAC ¶¶ 17-20, 24).  As discussed above, it cannot be.  Aside from allegations that the clause was unlawful under § 1671, the SAC contains no allegations regarding why terminating service for non-payment is unlawful or unfair.  As such, Plaintiffs fail to allege facts sufficient to state a claim that the "forfeiture clause" was an unlawful or unfair business practice under § 17200.

Indeed, the SAC fails to allege any additional facts explaining why such standard practices should be deemed unfair in this context or demonstrating how they were unreasonably applied to Plaintiffs or the putative class.  California law requires more.  *Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134, 1149 (2003) (lender's payments to brokers not "unfair" where payments were "widespread and commonly used as a method to compensate mortgage brokers for services provided to borrowers and the lender").  Moreover, the SAC, like the previously-dismissed FAC, neglects to allege how such otherwise lawful practices could have deceived the class where, as the SAC concedes, each of the subject practices was disclosed and consented to by the class.  *Evans*, 2006 WL 213740,

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

at *6 (actions consistent with the "fully-disclosed terms of the contract . . . cannot plausibly be labeled a deception"), *aff'd*, 267 Fed. Appx. 692 (9th Cir. 2008).

The only Plaintiff that alleges an account was revoked for a reason other than voluntary non-payment is Hayne.  His allegations, however, do not satisfy *Twombly* because they provide no detail regarding the circumstances of that revocation that would lend any support to a finding the revocation was unlawful, unfair or for a reason other than one set forth in the POL-MA.[14]  (SAC ¶ 46).

## 2.    Charging Players a Fee to Resume Service Is Not Unlawful or Unfair.

Likewise, the SAC alleges, without any supporting detail as to the actual amount paid, that Square Enix's actions were unfair or unlawful because they sold "forfeited game characters back to players at an exorbitant price."  (SAC ¶ 27). The SAC, however, lacks any allegations as to what that exorbitant price was. In fact, as noted above, Chang is the only Plaintiff who recovered game data, and he does not allege how much he paid to retrieve the data or characters, and nowhere alleges that such payment was a "fixed and certain sum" for all customers attempting to recover game data and characters.

In short, the aspects of the game and reservation of Square Enix's rights identified in the SAC—requiring some players to pay outstanding balances and (in some instances) repurchase software to open a new game account—are, on their face, standard, lawful business practices common to the online game industry and countless others.  As discussed at oral argument on Square Enix's first motion to dismiss, the need to pay more for the first month of service—here, in the form of purchasing the game and a month of service—is not much different than rejoining a gym after stopping membership for some period and having to pay a initiation

---

[14] For instance, an account can be revoked for cheating, harassment of other players, and other prohibited acts.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

fee.  Absent factual allegations plausibly demonstrating their unlawful application in this context—and the SAC contains none—Plaintiffs cannot sustain their claim by simply labeling them "unfair."  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555 (2007) (noting that there is nothing inherently unfair about for-profit business charging fees for service absent plaintiff alleging facts showing they were not permitted to do so); *Walker v. Countrywide Home Loans, Inc.* 98 Cal. App. 4th 1158, 1170, 1175, 1178 (2002) (passing on actual cost of property inspection fees was not "unfair" as matter of law because small cost of inspections was insignificant when compared to their utility).  Under *Twombly*, the mere allegation that a price charge was "exorbitant" is insufficient to state a claim.

### 3. Square Enix's Alleged Omission Of Information Regarding the "Forfeiture Clause" from the Game Packaging is Not a Material Omission Sufficient to State a Claim under §§ 17200 or 17500.

In addition to being time-barred, Plaintiffs' allegation that Square Enix engaged in false advertising under § 17005 and committed an unfair business practice under § 17200 by failing to disclose the "forfeiture clause" to users prior to purchase fails to state a claim.  (SAC ¶ 61, 79).  Plaintiffs once again fail to provide any facts establishing that the "forfeiture clause" was the "but for" or proximate cause of their injuries.[15]  Notably, not one Plaintiff alleges that had he or she known about the "forfeiture clause" at the time of purchase, he or she would not have purchased the game (and enjoyed it for some time thereafter for an additional monthly fee).  Cal. Bus. & Prof. Code § 17535; *In re Tobacco Cases II*, 46 Cal. 4th 298 (2009); *see also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d

---

[15] This is an alternative basis for finding that Plaintiffs do not have standing. *Laster*, 407 F. Supp. 2d at 1183, 1194 (dismissing for lack of standing UCL and FAL claims against wireless telephone service provider alleging that provider advertised cellular telephones as "free or substantially discounted" but charged sales tax on full retail value of phones because plaintiffs did not allege they "saw, read, or in any way relied on" the challenged advertisements in entering their wireless service agreements).

-18-

939, 947 (S.D. Cal. 2007) (plaintiffs must plead actual reliance); *Laster v. T-Mobile United States, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (holding that plaintiffs must allege that they "actually relied on" challenged statements to adequately allege causation).

Additionally, neglecting to disclose the alleged "forfeiture clause" on game packaging was immaterial. Under § 17500, a statement is false or misleading if members of the public are likely to be deceived. The statute affords protection against the probability or likelihood as well as the actuality of deception or confusion. *People v. Toomey*, 157 Cal. App. 3d 1, 16 (1984). Aside from conclusory allegations that the omission was "material," Plaintiffs fail to allege how the disclosure of the "forfeiture clause" would materially affect a user's decision to purchase or play the game.

No Plaintiff alleges specific facts from which this Court could plausibly infer that he or she was deceived. As the game box, which was attached to Square Enix's first motion to dismiss, clearly states, the game is subject to a license agreement and pending subscription fees. (Dkt. 19, Ex. B). Including an additional statement that if a user does not pay those fees for three straight months he or she will lose access to the game is not material in light of the fact that subscription fee requirements were already disclosed.[16] In addition, each Plaintiff was presented with the provisions of the POL-MA prior to initiating each account, and opted to consent, pay the subscription, and play the game without complaint. Each user also had access to and was aware of the game manuals.

As the face of the agreement and the manual cited by Plaintiffs make clear,

---

[16] Such a requirement is unrealistic. As the Seventh Circuit Court of Appeals noted in the packaged software context: "[v]endors can put the entire terms of a contract on the outside of a box only by using microscopic type, removing other information that buyers might find more useful (such as what the software does, and on which computers it works), or both." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996).

-19-

MOTION TO DISMISS
SECOND AMENDED COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Square Enix plainly disclosed the practices to which Plaintiffs now object. (Dkt. 19, Ex. A.)  By referencing but failing to attach the agreement or manuals, Plaintiffs again attempt to sidestep the clear implication of their acknowledgement that all putative class members consented to the agreement and were aware of the challenged provisions immediately following purchase—namely that the putative class members made voluntary, informed decisions to accept the contract and play the game.  Under these alleged facts, Plaintiffs' claims are foreclosed by settled California law.  *Evans*, 2006 WL 213740, at *6 (actions consistent with "fully-disclosed terms of the contract . . . cannot plausibly be labeled a deception"); *Searle v. Windham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334-35 (2002) (noting that unfair competition law is not an open license to review fairness of contracts).

Notably, the SAC does not allege that Square Enix elsewhere made any false statements disavowing these practices or suggesting that play was not subject to the contract terms.  The SAC is devoid of any allegation that Square Enix indicated to a single potential customer on any occasion, in any form, that its practices differed from those disclosed on the box and in the POL-MA, much less that Plaintiffs saw or relied on such practices.  These deficiencies aside, the SAC does not allege that Plaintiffs or putative class members rejected the terms of the POL-MA and sought a refund of the game; rather, it alleges that that once they reviewed the agreements they agreed to abide by them.  Accordingly, the SAC provides no plausible factual basis for its assertion that any invocation of the challenged practices following the putative class members' consent to them was deceptive.  *See Evans*, 2006 WL 213740 at, *6; *see also Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 628-29 (1996) (affirming summary adjudication against plaintiff on a UCL claim involving alleged "unfair" contractual releases relating to ski bindings since consumers had a choice in the matter—they did not have to ski).

## C.    Plaintiffs Fail to State a Claim Under the CLRA.

Plaintiffs allege three violations of the CLRA.  First, Plaintiffs allege that

-20-

Square Enix misrepresented that the game software had particular characteristics, uses, or benefits it did not have at the time of sale, including ownership of the game software. (SAC ¶ 83). Second, Plaintiffs allege that Square Enix represented that the purchasers "owned" rather than "licensed" the game and game data. (*Id.*). Finally, Plaintiffs allege that Square Enix's unilateral ability to permanently revoke or cancel the user's license and "forfeiture clause" are "unconscionable" terms within the user agreement. (*Id.*)  Plaintiffs have failed to satisfy the procedural prerequisites to bring a CLRA claim, and failed to allege facts supporting such a claim. Accordingly, all three claims fail.

### 1.   Plaintiffs Failed to Comply With the Notice Requirement Imposed by the CLRA.

Leong's original complaint and the FAC included vague references to the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1784 (FAC ¶ 5), but neither alleged a cause of action for its violation.[17] The SAC now explicitly pleads a claim under the CLRA, but that claim must be dismissed for failure to comply with the notice requirements under § 1782. Under the CLRA, thirty days or more prior to commencing "an action for damages," the consumer shall notify the defendant of the particular alleged violations of § 1770, and demand that the defendant correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of § 1770. Cal. Civ. Code § 1782(a). The notice must be in writing and sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's

---

[17] Although Leong brought this lawsuit against Square Enix in federal court, she again oddly claims in her SAC that she is entitled to attorneys' fees under California Code of Civil Procedure Section 1021.5. (FAC, ¶ 37.) Among other problems with this request, federal courts are not empowered to award such fees on this basis. *See Alyeska Pipeline Ser. Co. v. Wilderness Soc'y*, 421 U.S. 240, 262-69 (1975); Schwarzer *et al.*, The Rutter Group Practice Guide: Federal Civil Procedure Before Trial (2009), ¶10:889. This request should thus be stricken. Furthermore, Plaintiffs and the purported class waived any right to injunctive relief in Section 6.2(a) of the PlayOnline Member Agreement. (Dkt. 19-1, Ex. A at 3.)

-21-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

principal place of business within California.  *Id.*  The purpose of this notice is to allow the defendant an opportunity to cease the practice and to avoid an unnecessary lawsuit.  A "literal application of the notice provisions" is the only way to accomplish the CLRA's purposes.  *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975).  Here, Plaintiffs do not allege, because they cannot, that they complied with these notice requirements.  Such failure, whether intentional or unintentional, requires dismissal of the claim *with prejudice*.  *Laster*, 407 F. Supp. 2d at 1196.

> ### 2. Plaintiffs Have Not Alleged Sufficient Facts to State a Claim for Misrepresentations Under § 1170(a)(5) or §1770(a)(14) Because They Have Not Alleged Facts Supporting a Misrepresentation Regarding the Nature of the License to the Game Software Sold.

The SAC's reed-thin factual allegations fall short of those required to state a plausible entitlement to relief under *Iqbal* and *Twombly*.  With regard to Plaintiffs' § 1770(a)(5) claim, Plaintiffs fail to allege any specific statements that they claim are false or misleading, other than a conclusory claim that Square Enix misrepresented that users "owned" the game and game software.[18]  The allegations with regard to Plaintiffs' claim under § 1770(a)(14) are similarly flawed.  With regard to any other unpled statements, Plaintiffs' claims fail under *Iqbal* and Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements for complaints sounding in fraud.  *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (Rule 9(b) requires that the complaint "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Oestreicher v. Alienware*

---

[18] Indeed, Plaintiffs fail to allege that they actually relied on these statements, as no Plaintiff alleges that he or she would not have purchased the game had he or she known of the "forfeiture clause."  This deficiency requires dismissal.  *Wilens v. TD Waterhouse Group. Inc.*, 120 Cal. App. 4th 746, 754 (2003); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993).

*Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008) (applying Rule 9(b) to claims under UCL, FAL, and CLRA), *aff'd*, 322 Fed. Appx. 489 (9th Cir. 2009).

The only statement that Plaintiffs claim *is* false also fails because it is directly contradicted by the record before this Court.  A brief review of the game packaging submitted with Square Enix's first motion to dismiss demonstrates that the packaging clearly and unequivocally states that the game is subject to a limited license.  (*See* Dkt. 19, Ex. B).  There can be no deception where the objectionable term is clearly disclosed.  *Augustine v. FIA Card Services, N.A.*, 485 F. Supp. 2d 1172 (E.D. Cal. 2007).  Moreover, nowhere on or in the outer packaging (the "advertising") does this representation appear.  (See Dkt. 19, Ex. B).  As such, Plaintiffs' claims under §§ 1770(a)(5) and (14) fail.

### 3.    Plaintiffs Cannot Support a Claim Under § 1170(a)(5) Because Limited Licenses Are Not Unconscionable, They Are the Norm.

In determining whether a contractual provision is unconscionable under § 1770(a)(19), the Court considers whether a contract is procedurally and substantively unconscionable.  *Aron v. U-Haul Co. of Calif.*, 143 Cal. App. 4th 796, 808 (2006).  Where a policy is clearly disclosed in the contract and a consumer has a meaningful choice to use another company's services—here, to play a different online game—there is no procedural unconscionability.  *Id.* at 809.  Whether a clause is substantively unconscionable depends upon whether the terms of the agreement are such an extreme departure from common business practice, and so one-sided as to "shock the conscience."  *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007); *Aron*, 143 Cal. App. 4th at 808.

Here, the sale of software pursuant to a revocable license is hardly a departure from standard business practice, but common.  If such a limited license provision were unconscionable, the entire software industry's standard practices would thus likewise be unconscionable.  The hundreds of court decisions finding limited, revocable licenses enforceable stand in stark contrast to Plaintiffs' claims.

-23-

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   *See e.g. Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005)

2   (software license agreements providing limited, revocable licenses are valid

3   contracts); *Davidson & Assocs. v. Jun*g, 422 F.3d 630, 639 (8th Cir. 2005)

4   (enforcing limited software license).  As such, Plaintiffs' claim under § 1770(a)(19)

5   should be dismissed.[19]

   **D.   Plaintiffs Can State No Claim for Unjust Enrichment Where
6        Their Underlying Claims are Invalid, Where the Contested
7        Conduct is Governed by a Contract Between the Parties, and
         Where They Received the Benefit of Game Play.**

8

9        Under California law, "unjust enrichment" is not a stand-alone claim and,

10  as noted above, Plaintiffs have stated no valid claim against Square Enix.  *See*

11  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("[T]here is

12  no cause of action in California for unjust enrichment."); *Walker v. USAA Cas.*

13  *Ins. Co.,* 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) (California law does not

14  provide independent cause of action for unjust enrichment), *aff'd sub nom. Walker*

15  *v. Geico Gen. Ins. Co.*, 558 F. 3d 1025 (9th Cir. 2009).  Because the purported

16  unjust enrichment cause of action is entirely derivative of Plaintiffs' other claims,

17  this claim must fall with the rest.  (SAC ¶¶ 74-76).

18       Moreover, California law is clear that unjust enrichment is unavailable to

19  recover on rights governed by an express contract.  *See Cal. Med. Ass'n, Inc. v.*

20  *Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) ("[A]s a

21  matter of law, a quasi-contract action for unjust enrichment does not lie where, as

22  here, express binding agreements exist and define the parties' rights.").  Here,

23  Plaintiffs all consented to the POL-MA.  (SAC ¶ 9).  That agreement defines the

24

25

26  _____

27  [19] The SAC appears to suggest that Plaintiff Hayne's account was revoked for
    some other reason, but fails to satisfy *Twombly* by failing to provide any detail
    regarding the circumstances of that revocation that would lend any support to a
28  finding the revocation was unlawful or unfair.  (SAC ¶ 46).

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   parties' rights, and thus there can be no claim for unjust enrichment based on

2   Plaintiffs' purchase or online play of the game.

3         Finally, Plaintiffs' purported unjust enrichment claim is itself fatally

4   defective, as every named Plaintiff concedes he or she received the full benefit of

5   the money paid to Square Enix.  The POL-MA to which all named Plaintiffs

6   consented makes clear that their payment of subscription fees entitles them to

7   "*rights to access and use [the] PlayOnline Service.*"  (Ex. A at 2.)  That same

8   agreement also makes clear that Square Enix is "*the sole owner of any and all data*

9   [that Plaintiffs] *generate[d] through [their] use of the PlayOnline Service.*"  (*Id.*)

10  In short, Plaintiffs got what they paid for, and allege no facts suggesting any

11  plausible basis to show that Square Enix was unjustly enriched.

12  Dated: February 24, 2010            Respectfully submitted,

13                                      SONNENSCHEIN NATH & ROSENTHAL LLP

14

15

16                                      By _____/s/ Joel D. Siegel_____
                                           JOEL D. SIEGEL
                                           CHRISTIAN S. GENETSKI

17

18                                      Attorneys for Defendants
                                        Square Enix of America Holdings, Inc. and
19                                      Square Enix, Inc

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. CV09-04484 PSG (VBKx)                    MOTION TO DISMISS
                                        SECOND AMENDED COMPLAINT