**MAKAREM & ASSOCIATES, APLC**
Ronald W. Makarem, Esq. (State Bar No. 80442)
Jean-Paul Le Clercq (State Bar No. 248818)
11601 Wilshire Boulevard, Suite 2440
Los Angeles, California 90025-1760
Phone: (310) 312-0299; Facsimile: (310) 312-0296
Email: makarem@law-rm.com
Email: folinsky@law-rm.com

Michael H. Kim, Esq. (State Bar No. 200792)
**MICHAEL H. KIM , P.C.**
3699 Wilshire Boulevard, Suite 860
Los Angeles, California 90010
Telephone: (213) 639-2900; Facsimile: (213) 639-2909
Email: mkim@mhklawyers.com

Attorneys for Plaintiffs, ESTHER LEONG, RICHARD STEES,
ROBERT REED CARR, VINCENT CHANG, and NORMAN HAYNE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER LEONG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SQUARE ENIX OF AMERICA HOLDINGS, INC., a Delaware corporation; SQUARE ENIX, INC., a Washington corporation,<br><br>Defendants. | Case No. CV09-4484-PSG (VBKx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: April 12, 2010<br>Time: 1:30 p.m.<br>Place: Courtroom 880<br>Judge: Hon. Philip S. Gutierrez |

Plaintiffs herein respectfully submit their Opposition to Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint

# TABLE OF CONTENTS

A.    THE APPLICABLE STATUTES OF LIMITATION ALLOW PLAINTIFFS TO BRING THE CLAIMS MADE IN THIS CLASS ACTION ……………………………………………………. 1

    1.  The False Advertising Law ("FAL") claim under §17500 is timely.. 2

    2.  The CLRA claim under Civil Code §1750 is timely…….…….…… 4

    3.  The UCL and §1671 claims are timely……………………………. 4

        a.  The UCL and §1671 claims are contract-based claims to challenge the illegal Forfeiture Clause …………………… 4

        b.  Defendant Square Enix ignores the fact that Plaintiffs lost their property as a result of the illegal Forfeiture Clause and discovered their losses through the forfeiture well within 4 years of the filing of this lawsuit…..…………..… 5

B.    THE APPLICABLE STATUTES OF LIMITATION ALLOW PLAINTIFFS TO BRING THE CLAIMS MADE IN THIS CLASS ACTION ……………………………………………………. 5

    1.  Plaintiffs (Stees and Hayne) that purchased the game originally but did not repurchase the game or pay to restore game data suffered injury in fact by losing the game as a result of the illegal Forfeiture Clause……………………………………………….. 6

    2.  Plaintiffs (Carr and Chang) did not lose their standing to challenge the illegal Forfeiture Clause just because they repurchased the game to play or paid to restore terminated accounts……………….... 9

    3.  Plaintiff Leong's reason for repurchasing the game—to investigate whether her game data was recoverable—establishes her standing to seek damages for fraud…………………………………………… 10

C.   THE FORFEITURE CLAUSE IS ILLEGAL UNDER
     CALIFORNIA LAW BECAUSE IT IS A PENALTY.................... 11

     1.   Plaintiffs have alleged sufficient facts to establish that the
          Forfeiture Clause is an illegal penalty................................... 11

     2.   If the Forfeiture Clause is not a liquidated damages clause, then it
          is a punitive penalty clause designed to punish PlayOnline
          subscribers for failing to keep up their subscription................... 13

     3.   Plaintiffs are seeking to recover the fees/costs [incurred] to
          repurchase the game software or restore the game accounts,
          character or data under the unjust enrichment theory and
          restitution under § 17200................................................. 14

D.   PLAINTIFFS HAVE STATED A VALID UCL CLAIM UNDER
     ALL THREE PRONGS OF THE UCL, I.E., THAT THE CONDUCT
     ALLEGED WAS UNLAWFUL, UNFAIR, *AND* FRAUDULENT
     WITHIN THE MEANING OF THE UCL................................. 17

     1.   Plaintiffs have alleged facts concerning Defendant's unlawful
          conduct................................................................... 18

     2.   Plaintiffs have alleged facts concerning Defendant's unfair conduct. 19

E.   PLAINTIFFS HAVE STATED A VALID CLAIM UNDER CLRA.... 21

     1.   The CLRA's notice requirement has been satisfied.................... 22

     2.   Plaintiffs have alleged sufficient facts to state a violation under
          §1770(a)(5) and §1770(a)(14)......................................... 23

     3.   The game contract is procedurally and substantively unconscionable
          under CLRA §1770(a)(19)............................................. 24

F.   PLAINTIFFS  HAVE PROPERLY ALLEGED A CLAIM FOR
     RECOVERY UNDER THE THEORY OF UNJUST ENRICHMENT.. 25

Case 2:09-cv-04484-PSG-VBK   Document 60   Filed 03/22/10   Page 4 of 29   Page ID #:406

1

2

## **TABLE OF AUTHORITIES**

**CASES**                                                                                  **PAGES**

3

*Adobe Systems Inc. v. One Stop Micro, Inc.,*

4

     (N.D. Cal. 2000) 84 F.Supp.2d 1086………………………………    7

5

*Applied Info. Mgmt., Inc. v. Icart,*

6

     (E.D.N.Y.1997) 976 F.Supp. 149…………………………………..    6

7

*Asdourian v. Araj,*

8

     (1985) 38 Cal.3d 276…………………………………………..    7

9

*Beasley v. Wells Fargo Bank,*

10

     (1991) 235 Cal.App.3d 183……………………………………..    1

11

*Black Hills Investments, Inc. v. Albertson's, Inc.,*

12

     (2007) 146 Cal.App.4th 883……………………………………..    8

13

*City of Huntington Park v. Superior Court,*

14

     (1995) 34 Cal.App.4th 1293……………………………………..    1

15

*City Lincoln-Mercury Co. v. Lindsey,*

16

     (1959) 52 Cal.2d 267…………………………………………..    8

17

*Cortez v. Purolator,*

18

     (2000) 23 Cal.4th 163……….…..……………………..………….    1

19

*International Film Exchange, Ltd. v. Corinth Films, Inc.,*

20

     (S.D.N.Y.1985) 621 F.Supp. 631………………………………..    7

21

*Killan v. Millard,*

22

     (1991) 228 Cal.App.3d 1601……………………………………    4

23

*Lyles v. State of California,*

24

     (2007) 153 Cal.App.4th 281……………………………………    1,4

25

*Marin Healthcare Dist. v. Sutter Health,*

26

     (2002) 103 Cal.App.4th 861……………………………………    7

27

*Microsoft Corp. v. DAK Indus.,*

28

**Case No. CV09-4484-PSG (VBKx)**          - iv -

PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

(9th Cir.1995) 66 F.3d 1091……………………………………… 6

*Miller v. Bank of America N.T. & S.A.,*

2004 WL 2403580  (2004)…………………………………….. 1

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand,*

(1971) 6 Cal.3d 176……………………………………………… 1,4

*Norgart v. Upjohn Co.,*

(1999) 21 Cal.4th 383…………………………………………… 1

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.,*

(2007) 157 Cal.App.4th 835………………………………….. 2

*Ridgley v. Topa Thrift and Loan Assn.,*

(1998)17 Cal.4th 970…………………………………………. 6-7

*Softman Products Company LLC v. Adobe Systems, Inc.,*

*(C.D.Cal.2001)* 171 F.Supp.2d 1075……………………….. 7


## STATUTES

California Business & Professions Code §17200, et. seq.………………. 1,3

California Business & Professions Code §17500……..……………..….. 1,3,5

California Civil Code § 1671……………………………………….. 3,5

California Civil Code § 1750, et. seq…………………………………. 1

California Civil Code § 1783…………………………………………. 3

California Code of Civil Procedure § 337………………………………… 1,3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.   THE APPLICABLE STATUTES OF LIMITATION ALLOW PLAINTIFFS TO BRING THE CLAIMS MADE IN THIS CLASS ACTION.**

The applicable statute of limitations for a false advertising claim under Cal. Bus. & Prof. Code §17500 ("False Advertising Law") is four years. Calif. Bus. & Prof. Code §17208; *Cortez v. Purolator*, 23 Cal.4th 163, 179 (2000); *Miller v. Bank of America N.T. & S.A.*, 2004 WL 2403580, *5 (2004) ("claims, including violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200, and the False Advertising Act ("FAA"), Cal. Bus. & Prof.Code § 17500, have an express four-year statute of limitations").  The applicable statute of limitations for a Consumer Legal Remedies Act (Civil Code §1750 et seq.) claim is 3 years.

The applicable statute of limitations for claims brought under Bus. & Prof. Code §17200 and Civil Code §1671 is 4 years. Cal. Bus. & Prof. Code § 17208; *Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 183, 1401-02 (1991).  The applicable statute of limitations for an action founded on a written contract is 4 years.  Code Civ. Proc., §337.

A "cause of action accrues for purposes of the statute of limitations, and the applicable limitations period begins to run, when the plaintiff has suffered damages from a wrongful act."  *Lyles v. State of California,* 153 Cal.App.4th 281, 286 (2007); see, *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 (1971) [stating that, "[i]n ordinary . . . actions, the statute of limitations  . . . begins to run upon the occurrence of the last element essential to the cause of action"]

The Discovery Rule postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999).  All applicable statute of limitations are tolled for minors. Code Civ. Proc. § 352; *City of Huntington Park v. Superior Court*, 34 Cal.App.4th 1293, 1297 (1995).

1

**1.     The False Advertising Law ("FAL") claim under §17500 is timely.**

The FAL claim under §17500 is predicated on Defendants' omission or failure disclose "information about the Forfeiture Clause in the advertising, marketing, and sale of the game to the public." (SAC, ¶79.)  Defendant Square Enix argues that the FAL claim began to run at the time of purchase.  This argument fails to recognize the Discovery Rule and the rule that the statute of limitations begins to run when the plaintiff has suffered damages.   Fraud is not actionable unless it results in some injury; hence, injury or damage is an essential element of the cause of action. *OCM Principal Opportunities Fund v. CIBC World Markets Corp*., 157 Cal.App.4th 835, 870 (2007).

Plaintiff Leong bought the game in 2005.  (SAC, ¶33.) She temporarily stopped playing the game in August of 2007, and forfeited her game at that time. (SAC, ¶33.) She discovered her loss through the forfeiture in 2009. (SAC, ¶34.)

Plaintiff Stees bought the game in 2004.  (SAC, ¶37.) He discovered his loss through the forfeiture in 2005.  (SAC, ¶38.) Plaintiff Stees turned 18 years old in March of 2007, which means he has until March of 2011 to bring his FAL claim.

Plaintiff Carr bought the game in 2002.  (SAC, ¶40.) He temporarily stopped playing the game in August of 2003, and forfeited his game at that time. (SAC, ¶40.) He discovered his loss through the forfeiture in 2007.  (SAC, ¶41.)

Plaintiff Chang bought the game in 2004. (SAC, ¶43.) He temporarily stopped playing the game in 2006, and forfeited his game at that time.  (SAC, ¶43.) He discovered his loss through the forfeiture in 2006. (SAC, ¶43.)

 Plaintiff Hayne bought the game in August of 2005. (SAC, ¶46.) He temporarily stopped playing the game in 2009, and forfeited his game at that time. (SAC, ¶46.)  He discovered his loss through the forfeiture in 2009. (SAC, ¶47. Based on the time of their loss through the forfeiture and their discovery of the loss, all Plaintiffs timely brought their FAL claim within 4 years of the filing of this lawsuit.

PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT

2. **The CLRA claim under Civil Code §1750 is timely.**

The cause of action for fraud under Civil Code section 1750 et seq. begins to run from the date of the commission of the act. (Civ. Code, § 1783.)  However, the cause of action for fraud does not accrue until the discovery of the facts constituting the fraud or mistake. (Code Civ. Proc., § 338, subd. (d).)

Based on the time of their loss through the forfeiture and their discovery of the loss, all Plaintiffs timely brought their CLRA claim within 3 years of the filing of this lawsuit.

Furthermore, Plaintiff Stees was a minor at the time of his loss and discovery. He turned 18 years old in March of 2007, which means he has until March of 2010 to bring his CLRA claim.

3. **The UCL and §1671 claims are timely.**

Defendant argues that the 4-year statute of limitations for Bus. & Prof. Code §17200 ("UCL"), Civil Code §1671, and illegal penalty claims should begin to run at the "point of sale" when Plaintiffs first purchased the game and opened their PlayOnline accounts.  That is wrong.  The 4-year statute of limitations began to run when Plaintiffs suffered a loss through the forfeiture, because the UCL and 1671 claims are brought to challenge the legality of the Forfeiture Clause.

a. **The UCL and §1671 claims are contract-based claims to challenge the illegal Forfeiture Clause.**

The first problem with Defendant Square Enix's SOL argument is that the UCL, §1671, and illegal penalty claims are not based on fraud.  The UCL, §1671 and illegal penalty claims are contract-based claims to sue for damages fairly traceable to the illegal Forfeiture Clause.   Thus, Defendant is wrong when it argues "UCL and 1671 claims rely on Square Enix's alleged failure to disclose the existence of  the 'forfeiture clause' at the time of the purchase."  Rather, that argument goes to the fraud claim under 17500 and CLRA.   Disclosure is not an issue with respect to the UCL and 1671 contract-based claims.

**b.   Defendant Square Enix ignores the fact that Plaintiffs lost their property as a result of the illegal Forfeiture Clause and discovered their losses through the forfeiture well within 4 years of the filing of this lawsuit.**

Second, Defendant ignores the rule that a "cause of action accrues for purposes of the statute of limitations, and the applicable limitations period begins to run, when the plaintiff has suffered damages from a wrongful act." *Lyles,* 153 Cal.App.4th at 286; see, *Neel,* 6 Cal.3d at 187. Thus, the appropriate measure of the statute of limitations here is when Plaintiffs suffered their forfeiture.  As more fully discussed above, Plaintiffs forfeited their game well within 4 years of the filing of this lawsuit.

**B.   ALL PLAINTIFFS HAVE STANDING.**

This Court dismissed Plaintiff Leong's First Amended Complaint (FAC) on the grounds that she did not have standing to bring a fraud claim against Defendant Square Enix.  That decision was based on this Court's finding that Plaintiff Leong's second purchase of the game, without more facts, suggests she did not *rely* on Defendant's concealment and non-disclosure of the material terms of the game contract to buy the game. That decision was made when the FAC did not have a contract-based claim to challenge the Forfeiture Clause as an illegal penalty.

Thus, the Court did not have the benefit of assessing Plaintiff Leong's standing to challenge the *legality* of the Forfeiture Clause when it ruled on the FAC. *See*, *Killan v. Millard*, 228 Cal.App.3d 1601, 1605 (1991) (parties with a real interest in a dispute have standing to seek its adjudication; a person who has a substantive right in the contract possesses standing to seek to void that contract). Also, the Court did not have the benefit of reading Plaintiff Leong's reason for purchasing the second game when it ruled on the FAC.  For that reason, this Court should allow this amended pleading to stand.

Before we begin our discussion of Plaintiffs' standing, it is important to recognize that the claims alleged in this action are based on two separate conduct:

PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT

(1) the UCL, §1671, and illegal forfeiture claims are based on Defendant's enforcement of an illegal penalty clause in the contract; (2) the §17500 and CLRA claims are based on Defendant's fraud/ deception at the point of sale.  The "Forfeiture" Subclass, the "Forfeiture-Reactivation" Subclass, the "Forfeiture-New Game" Subclass, and the "Revocation" Subclass bring a contract-based claim to challenge the legality of the Forfeiture Clause.  As more fully discussed below, the Forfeiture Clause at issue is more than about "suspending or terminating service for non-payment" as Defendant argues.  The Forfeiture Clause works to forfeit users' intellectual property, *i.e.* game software, game character, and game data, which they paid money to buy.   This penalty is triggered when a user stops playing the game and suspends his "use of the game service by choosing not to pay for three months." (Motion, 16:3-4.)  Thus, forfeiture is solely intended to compel users to continue paying for the online game service and punish them if they don't.

The "Purchase" Subclass, the "Purchase-Loss" Subclass, the "Purchase-Pay" Subclass bring a fraud-based claim to seek damages resulting from Defendant Square Enix's fraud/ deception at the point of sale, *i.e.* failure to disclose the Forfeiture Clause and other materials terms of the game contract at the point of sale. The "Purchase" Subclasses seek damages under §17500 and CLRA based on this fraud/ deception.

**1. Plaintiffs (Stees and Hayne) that purchased the game originally but did not repurchase the game or pay to restore game data suffered injury in fact by losing the game as a result of the illegal Forfeiture Clause.**

Plaintiffs Stees and Hayne represent both the "Purchase" Subclasses and the "Forfeiture" Subclasses.  Defendant Square Enix argues that Plaintiffs Stees and Hayne have no standing because they did not suffer a "cognizable injury." (Motion, 6:10.)  Defendant then defeats its own argument by acknowledging that "[t]he only damage either alleges is the loss of use of the original game software, game characters and game data." (Motion, 6:10-12; SAC, ¶39, 48.)  Thus, Plaintiffs Stees

and Hayne have alleged their "injury-in-fact" (i.e. loss of the video game) that is fairly traceable to the illegal Forfeiture Clause.

Defendant then tries to confuse the issue by arguing that Plaintiffs Stees and Hayne did not pay any "fee" as a result of the Forfeiture Clause. (Motion, 6:19-7:2.) These two individuals, like all other Plaintiffs, suffered a cognizable injury when they lost their game, game character and game data.  Any additional sums of money paid to recover the game or game character would be in addition to the loss already suffered, and even if Plaintiffs Stees and Haynes didn't pay to recover their game and game character, they've already suffered a loss.

Defendant further argues that Plaintiffs Stees and Hayne did not suffer any "cognizable injury" because they did not "own" the game software, game character and game data and that Square Enix "retained all ownership rights in the game accounts, characters, and data." (Motion, 7:3-12.)  This argument turns on whether Defendant sold the video game to Plaintiffs or merely sold a license.  The evidence will show that the video game was sold to Plaintiffs, but that is a question best reserved for trial.[1]

More importantly, even assuming arguendo Defendant sold a "license" to Plaintiffs, forfeiture of that license as a penalty is still illegal under California law. A software license is a protectable property interest, and forfeiture of that property as a penalty is illegal in California.  See, *Ridgley v. Topa Thrift and Loan Assn.*, 17

---

[1] Whether a transaction is in fact a sale rather than a license depends on the surrounding circumstances. For example, the court in *Softman Products Company LLC v. Adobe Systems, Inc.,* 171 F.Supp.2d 1075 (C.D.Cal.2001) held that "[i]f a transaction involves a single payment giving the buyer an unlimited period in which it has a right to possession, the transaction is a sale." *Id.* at 1086; see also, *Microsoft Corp. v. DAK Indus.,* 66 F.3d 1091 (9th Cir.1995) (in determining whether a transaction is a sale, a lease, or a license, courts look to the economic realities of the exchange); *Applied Info. Mgmt., Inc. v. Icart,*, 976 F.Supp. 149, 155 (E.D.N.Y.1997) (finding that whether a transaction denominated a "license" was in fact a sale conveying ownership was a disputed question of fact)

PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Cal.4th 970, 977-978 (1998) [contract clause that provides that property will be forfeited without regard to the actual damage suffered is an unenforceable penalty]; *Marin Healthcare Dist. v. Sutter Health*, 103 Cal.App.4th 861, 877 (2002)[a forfeiture is the loss of a right or property because of a breach of obligation]; *Adobe Systems Inc. v. One Stop Micro, Inc*., 84 F.Supp.2d 1086, 1091-92 (N.D.Cal. 2000) [licensing is the preferred method of distributing software product, and the license *is* the product since the underlying software program may be identical in each case]; *International Film Exchange, Ltd. v. Corinth Films, Inc.* 621 F.Supp. 631, 635 (S.D.N.Y.1985) ["A transfer of anything less than a totality of a work is a license"]; Webster's Third New Internat. Dict. (1993) p. 1304, col. 2 [defining "license" as "the grant of some but not all of the rights embraced in a copyright"].

Even assuming the game contract at issue is treated as a license agreement, the Forfeiture Clause is still illegal because it functions to force a forfeiture of the license for lateness without regard to any damage caused.

Finally, Defendant argues that Plaintiffs Stees and Haynes "did not suffer any loss from paying the purchase price of the game [disk]" because they played the game while they had it, and hence, received the "full value" of the game. Defendant's argument is analogous to the argument that a person who buys Scrabble and forfeits it because he doesn't play the game for three months has suffered no damage because he used the game while he had it.  The net effect is that the person lost his car, and Plaintiffs in this case forfeited their video game.

In making this argument, Defendant suggests that Plaintiffs' subsequent conduct in playing the game affirmed the illegal Forfeiture Clause, and somehow renders them unsuitable to challenge the Forfeiture Clause now.   That argument also fails because any subsequent act consistent with affirmation is not a defense to an illegal contract term.  An illegal contract is void ab initio as a matter of public policy. *Asdourian v. Araj*, 38 Cal.3d 276, 291 (1985).   Because an illegal contract is

void, it cannot be ratified. *Black Hills Investments, Inc. v. Albertson's, Inc.*, 146 Cal.App.4th 883, 896 (2007) (quoting, 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 432, pp. 473-474.); see also, *City Lincoln-Mercury Co. v. Lindsey* 52 Cal.2d 267, 274 (1959) (holding that "[a] party to an illegal contract cannot ratify it, cannot be estopped from relying on the illegality, and cannot waive his right to urge that defense").

> **2.    Plaintiffs (Carr and Chang) did not lose their standing to challenge the illegal Forfeiture Clause just because they repurchased the game to play or paid to restore terminated accounts.**

Plaintiffs Carr and Chang represent the "Forfeiture" Subclasses.  They have standing because they were a party to the game contract and suffered damages fairly attributable to the illegal Forfeiture Clause.  *Sisley v. Sprint Communications Co., L.P.*, 2008 WL 2607921, **2 (9th Cir. 2008) (multiple telephone calls to fix improper phone billing cognizable injury);  *Hatchwell v. Blue Shield of California* (1988) 198 Cal.App.3d 1027, 1034 (1988).

The fact that they "repurchase[d] the game and [paid] to restore a terminated game account" does not deprive them of their standing under contract law.  That merely goes to the question of their reliance under the tort law of fraud.  In fact, the monies they spent repurchasing  the game and restoring the account constitute cognizable injury-in-fact traceable to the illegal Forfeiture Clause. See, *Sisley*,  2008 WL 2607921, **2.

Moreover, their subsequent act does not ratify or affirm the illegal Forfeiture Clause.    It is well-established in California law that an illegal contract is void, and "[a] party to an illegal contract cannot ratify it, cannot be estopped from relying on the illegality, and cannot waive his right to urge that defense." *City Lincoln-Mercury,* 52 Cal.2d at 274;  see also, 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 432, pp. 473-474 ["Because an illegal contract is void, it *cannot be ratified* by any subsequent act"]

The contract being void ab initio, neither action nor nonaction of a party to it can validate it and no conduct of a party can be invoked as an estoppel against asserting invalidity.  *Stevens v. Boyes Hot Springs Co.,* 113 Cal.App. 479, 482 (1933).

Thus, Plaintiffs Carr and Chang have standing to challenge the Forfeiture Clause and seek damages fairly traceable to it.

3.   **Plaintiff Leong's reason for repurchasing the game—to investigate whether her game data was recoverable—establishes her standing to seek damages for fraud.**

Plaintiff Leong represents both the "Purchase" Subclasses and the "Forfeiture" Subclasses.  As discussed above, the "Purchase" Subclasses are based on tort liability.  The "Purchase" Subclasses present a fraud claim, seeking damages resulting from Defendant's fraudulent concealment of the Forfeiture Clause at the point of purchase.   The "Forfeiture" Subclasses present a contract claim, seeking damages and equitable relief from an illegal contract clause.

She has standing to challenge the illegal Forfeiture Clause and represent the "Forfeiture" Subclasses because she was a party to the contract at issue.  See, Code Civ. Proc., § 367 [only a real party in interest has standing to prosecute an action.]; *Gantman v. United Pacific Ins. Co.,* 232 Cal.App.3d 1560, 1566-1569 (1991) [where a corporation is party to a contract, the corporation is the only party with standing to sue and thus the only real party in interest].   Any subsequent conduct on her part that can be perceived to ratify the Forfeiture Clause does not vitiate her right to challenge the illegal contract provision.  See, *City Lincoln-Mercury,* 52 Cal.2d at 274; *Stevens,* 113 Cal.App. at 482.

Defendant's other argument is that Leong still has no standing to bring the fraud claim because she purchased the second game.  (Motion, 9:6-19.)  Earlier in its decision, this Court noted that her second purchase of the game, without more facts, suggests she did not *rely* on Defendant's concealment and non-disclosure of the

PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT

contract terms to buy the game. However, as she has more fully explained in her SAC, she didn't buy the game to play.  This allegation establishes her standing to bring the fraud claim.

**C.     THE FORFEITURE CLAUSE IS ILLEGAL UNDER CALIFORNIA LAW BECAUSE IT IS A PENALTY.**

**1.     Plaintiffs have alleged sufficient facts to establish that the Forfeiture Clause is an illegal penalty.**

In the complaint, Plaintiffs have adequately alleged all facts necessary to establish that the Forfeiture Clause is an illegal penalty under California law:

17. The Forfeiture Clause is designed to induce players to continuously pay their monthly account fees.

18. The Forfeiture Clause has no relationship to any loss Defendants may suffer if a user decides to skip or temporarily stop his game subscription. The Forfeiture Clause is not a reasonable measure of the anticipated or actual loss that the customer's temporary stoppage of their game account causes defendants.

19. The Forfeiture Clause is intended by Defendants to be a punishment for failing to pay the account fee, rather than an estimate of damages that Defendant may incur should there be a temporary stoppage of the game account.

20. The Forfeiture Clause is not designed to compensate Defendants for any damages arising from any temporary stoppage of the online subscription, but rather is designed to lock in the users of the game and serves as a disincentive to prevent game users from stopping or skipping their payment of the account fee.

21. As a result of the illegal Forfeiture Clause, Plaintiffs and the members of the Class have lost their copies of the game software and game characters.

22. As a result of the illegal Forfeiture Clause, Plaintiffs and the members of the Class have been forced to spend additional sums of money to replace the game and buy new game characters.

(SAC, ¶¶17-22.)

The law is well-established in California that a contract provision of this kind is illegal.   Any contract clause that provides that money or property will be forfeited

without regard to the actual damage suffered is an unenforceable penalty. *Ridgley v. Topa Thrift and Loan Assn.*, 17 Cal.4th 970, 977-978 (1998). Thus, "'[a]n amount disproportionate to the anticipated damages is termed "a penalty." A contractual provision imposing a "penalty" is ineffective, and the wronged party can collect only the actual damages sustained.' [Citations.]" *Ibid.*

In *Timney v. Lin,* 106 Cal.App.4th 1121, (2003), the court held that a provision in a settlement agreement authorizing the forfeiture of a substantial deposit based on a minor delay in the delivery of a quitclaim deed to cancel the purchase of real property was void as an illegal forfeiture. Id., at 1127-1128. This is true even though, as respondents point out, the provision does not actually mention the term "liquidated damages," which the parties declined to explicitly use in the contract. Id., at 1128.  The *Timney* court looked at the legal effect of the provision and held: "The legal effect of the provision is to allow a forfeiture for lateness without regard to any damage caused, as it constitutes a forbidden forfeiture provision, regardless of its formal label." Id., at 1128.

The case of *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.*, 9 Cal.3d 731 (1973) involved the validity of a clause in an installment promissory note secured by trust deed providing for an additional charge of 2% Of the unpaid balance in the event of the late payment of an installment.  The California Supreme Court held:

> The fundamental difference between interest and penalty charges is that interest is a measure of compensation to which an obligee is entitled while a penalty is punitive in character. A penalty provision operates to compel performance of an act and usually becomes effective only in the event of default upon which a forfeiture is compelled without regard to the actual damages sustained by the party aggrieved by the breach. The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract.

> *       *       *

The contractual provision as alleged in the complaint in the instant case provides that in the event of a late payment a borrower is to be charged an additional amount equal to 2 percent per annum for the period of delinquency assessed against the Unpaid principal balance of the loan obligation.  We are compelled to conclude that a charge for the late payment of a loan installment which is measured against the unpaid balance of the loan must be deemed to be punitive in character.  It is an attempt to coerce timely payment by a forfeiture which is not reasonably calculated to merely compensate the injured lender.  We conclude, accordingly, that because the parties failed to make a reasonable endeavor to estimate a fair compensation for a loss which would be sustained on the default of an installment payment, the provision for late charges is void.

*Garret*, 9 Cal.3d at 739-40.

Here, the Forfeiture Clause provides that if a user stops playing the game and stops his online game service for more than 3 months (the event of default), the user will forfeit his video game, game character, and game data (the penalty).  Thus, the legal effect of the Forfeiture Clause is to compel continuous use of the game service and continuous payment of the game service fees.  *See, Ridgley*, 17 Cal.4th 970, 977 ("A penalty provision operates to compel performance of an act and usually becomes effective only in the event of default upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach."); see also, *Ebbert v. Mercantile Trust Co.* (1931) 213 Cal. 496, 499 ("[A]ny provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty.")

**2.   If the Forfeiture Clause is not a liquidated damages clause, then it is a punitive penalty clause designed to punish PlayOnline subscribers for failing to keep up their subscription.**

In the Motion, Defendant devotes 4 pages arguing that the Forfeiture Clause is not a liquidated damages clause, and hence Civil Code §1671 does not apply.  Plaintiffs would agree that the Forfeiture Clause is not a liquidated damages clause,

and that solves the main question presented in this class action.[2]  If the Forfeiture Clause is not a liquidated damages clause, then it is a punitive penalty clause designed to inflict punishment on users who stop using the fee-based online game service for more than three months.  Under California law, this forfeiture clause is illegal and void as a matter of public policy.  In *Sun Printing & Publishing Ass'n v. Moore*, 183 U.S. 642 (1902), the Supreme Court held:

> The term 'forfeiture' imports a penalty; it has no necessary or natural connection with the measure or degree of injury which may result from a breach of contract, or from an imperfect performance. It implies an absolute infliction, regardless of the nature and extent of the causes by which it is superinduced. Unless, therefore, it shall have been expressly adopted and declared by the parties to be a measure of injury or compensation, it is never taken as such by courts of justice, who leave it to be enforced where this can be done in its real character, viz., that of a penalty.' [Italics not in original.]

Id., at 663-664 (quoting, *Van Buren* v. *Digges*, 11 How. 461, 13 L. ed. 771).

**3.    Plaintiffs are seeking to recover the fees/costs [incurred] to repurchase the game software or restore the game accounts, character or data under the unjust enrichment theory and restitution under § 17200.**

We next focus on the remedies available to Plaintiffs.

Plaintiffs seek *damages* resulting from forfeiture of the video game, game character, and game data triggered by the illegal forfeiture. Plaintiffs also seek *restitution* for the additional fees and costs paid to Defendant to repurchase the game software, reacquire the game character, or restore the game accounts they were forced to forfeit in the first place under the illegal Forfeiture Clause.

---

[2] Here is the irony.  Defendant Square Enix argues for 4 pages that the Forfeiture Clause is not a liquidated damages clause.  Defendant then argues at page 16, lines 2 through 5 of the Motion that: "The so-called "forfeiture clause" is thus nothing more than notice to Plaintiffs that if they suspended their use of the game service by choosing not to pay for three months, Square Enix would no longer incur the cost  of storing data attached to the account." In other words, the Forfeiture Clause is a liquidated damages clause for the "cost of storing data attached to the account."

Restitution is defined "as restoration of the status quo by the awarding of an 'amount which would put plaintiff in as good a position as he would have been if no contract had been made and restores to plaintiff value of what he parted with in performing the contract.' " *People v. Martinson*,188 Cal.App.3d 894, 900 (1986) (citation omitted).  As the Court in *Ghirardo v. Antonioli*, 14 Cal.4th 39 (1996) held:

> Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another. A person is enriched if he receives a benefit at another's expense. The term "benefit" "denotes any form of advantage." Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss. Even when a person has received a benefit from another, he is required to make restitution "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." (*Id*., at 52 [Citations omitted].)

This right to restitution is based upon *unjust enrichment.* Unjust enrichment is an equitable principle that underlies "various legal doctrines and remedies." *Dinosaur Development, Inc. v. White*, 216 Cal.App.3d 1310, 1315 (1989).   It is based on the idea that "one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." *Ibid.;* see also *Ghirardo,* 14 Cal.4th at  51; *Melchior v. New Line Productions, Inc.,* 106 Cal.App.4th 779, 793 (2003); Rest., Restitution, § 1, p. 12.

Typically, the defendant's benefit and the plaintiff's loss are the same, and restitution requires the defendant to restore plaintiff to his or her original position. *Dunkin v. Boskey,* 82 Cal.App.4th 171, 198 (2000); *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal.App.4th 612, 627 (1992).  The principle of unjust enrichment, however, is broader than mere "restoration" of what the plaintiff lost.  "[T]he public

policy of this state does not permit one to 'take advantage of his own wrong' "
regardless of whether the other party suffers actual damage.  *Ward v. Taggart*, 51
Cal.2d 736, 741-742 (1959). Where "a benefit has been received by the defendant
but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but
nevertheless the enrichment of the defendant would be unjust ... [t]he defendant may
be under a duty to give to the plaintiff the amount by which [the defendant] has been
enriched." (Rest., Restitution, § 1, com. e.)

    As an instance of Defendant's unjust enrichment, Plaintiffs allege in the
complaint as follows:

> 23.  In recent years, Defendants have started special campaigns under
> various names, including but not limited to The Return Home to
> Vana'diel Campaign, whereby Defendants were selling forfeited game
> characters back to players at an exorbitant price. Under these special
> campaigns, players can pay to "retrieve" their old game characters that
> they were forced to forfeit under the illegal Forfeiture Clause.  These
> special campaigns are designed to extract an additional payment from
> non-complying players who failed to continuously pay their account
> fees.

> 24.  These special campaigns, along with the Forfeiture Clause, are not
> designed to compensate Defendants for any damages arising from any
> temporary stoppage of the online subscription, but rather are designed
> to lock in the users of the game and serves as a disincentive to prevent
> game users from stopping or skipping their payment of the account
> fee.

> 25.  Additionally, these special campaigns are designed to extract
> additional benefits for the Defendants at the expense of game users
> who were forced forfeit their game and game characters under the
> Forfeiture Clause.

> 26.  As a result of the illegal Forfeiture Clause, Plaintiffs and the
> members of the Class have been forced to spend additional sums of
> money to retrieve their old game characters that they were forced to
> forfeit under the Forfeiture Clause. (SAC, ¶¶23-26.)

    Thus, if Defendant were allowed to retain these additional profits from selling
illegally forfeited intellectual property, then Defendant would benefit from its own

wrongdoing and would be allowed to unjustly enrich itself at the expense of Class Members.

**D.    PLAINTIFFS HAVE STATED A VALID UCL CLAIM UNDER ALL THREE PRONGS OF THE UCL, I.E., THAT THE CONDUCT ALLEGED WAS UNLAWFUL, UNFAIR, *AND* FRAUDULENT WITHIN THE MEANING OF THE UCL.**

Square Enix violated § 17200 by enforcing an "illegal" "forfeiture clause," by revoking Plaintiffs' and class members' online accounts, by "forcing" players to buy new game software and game characters to replace the "forfeited" game software and game characters that they "lost" under the "forfeiture clause" when they ceased paying monthly fees, by selling forfeited game software and characters back to players, and by concealing or failing to disclosure the "forfeiture clause" at the point of sale.  (SAC ¶ 60).  These acts are unlawful, unfair and fraudulent under UCL.

Under the UCL statute, there are three varieties of unfair competition: "unlawful, unfair, or fraudulent." *In re Tobacco II Cases*, 46 Cal.4th 298 (2009). Under its "unlawful" prong, "the UCL borrows violations of other laws ... and makes those unlawful practices actionable under the UCL."  *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505 (1999). Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.

The "unfair" prong does not require a violation of another law, and can be asserted as a "standalone" claim based on an alleged act that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1473 (2006).

In *Motors, Inc. v. Times-Mirror Co.*, 102 Cal.App.3d 735 (1980), the court added this definition to the term "unfair": "the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged

wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the plaintiff a weighing process quite similar to the one enjoined on us by the law of nuisance." *Id*., at 740; accord, *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1103-1104.

Moreover, a fraudulent business practice is one which is likely to deceive the public. Again, there is no requirement that a "fraudulent" business practice be predicated on the violation of another statute or law. *McKell,* 142 Cal.App.4th at 1471. The *McKell* court defined a "fraudulent" business practice under the UCL as :

> "It may be based on representations to the public which are untrue, and ' "also those which may be accurate on some level, but will nonetheless tend to mislead or deceive.... A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under" ' the [unfair competition law]. [Citations.] The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer."

*Id*., at 1471; *see also, In re Tobacco Cases II*, 46 Cal.4th at 312.

### 1.   Plaintiffs have alleged facts concerning Defendant's unlawful conduct.

As argued more fully above, Defendant's Forfeiture Clause in the game contract is an illegal penalty. (SAC, ¶¶17-22.)   This illegal contract sets up Defendant's *unlawful* conduct under UCL.

The Forfeiture Clause is about more than "suspending or terminating service for non-payment" as Defendant argues.  The Forfeiture Clause works to forfeit the intellectual property - game software, game character, and game data - that Plaintiffs and other Class members paid money to buy and acquire.   This penalty is triggered when a user stops playing the game and suspends his "use of the game service by choosing not to pay for three months." (Motion, 16:3-4.)  The forfeiture is intended to compel users to continue paying for the service and punish them if they do not.

PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**2.    Plaintiffs have alleged facts concerning Defendant's unfair conduct.**

Additionally, facts concerning Square Enix's "unfair" business practices are adequately pled in the SAC.  Square Enix engaged in "*unfair*" business practices by enforcing an "illegal" "forfeiture clause," by revoking Plaintiffs' and class members' online accounts, by "forcing" players to forfeit their original game, by "forcing" players to then buy new game software and game characters to replace the "forfeited" game software and game characters that they "lost" under the "forfeiture clause", by selling forfeited game software and characters back to players at a premium price, and by concealing or failing to disclosure the "forfeiture clause" at the point of sale.  (SAC,  ¶¶17-22, 23-26, 28-29).  In particular, Defendant Square Enix's conduct in *selling back illegally forfeited game character and game accounts* at a premium price is an unscrupulous attempt at financial enrichment at the expense of these players.

Plaintiffs submit that "what constitutes an unfair or fraudulent business practice is a question of fact, with the essential test being whether the public is likely to be deceived."  *People v. McKale*, 25 Cal.3d 626, 635 (1979).  However, the aforementioned acts are clearly "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *McKell,* 142 Cal.App.4th at 1473.

In applying the traditional balancing test, there is no justification for Defendant's conduct other than to financially gain at the expense of consumers.  (SAC, ¶¶17-20, 23-25.)  Defendant's conduct is driven by financial gain and greed.  (SAC, ¶¶17-20, 23-25.)  In comparison, the impact on the users is significant.  They lost their video game property that they spent their money and time acquiring. (SAC, ¶¶21-22.)  Thus, Plaintiffs have sufficiently alleged that Defendant's conduct is unfair.  But see*, Berryman v. Merit Property Management, Inc*. (2007) 152 Cal.App.4th 1544, 1555 (questions of fact--such as whether the utility of the defendant's conduct outweighed the gravity of the harm--cannot be decided on demurrer).

3.     **Plaintiffs have alleged facts concerning Defendant's fraudulent conduct.**

It is clearly alleged in the SAC that Defendant concealed the Forfeiture Clause at the point of sale:

> 28.  Additionally, Defendants failed to disclose the Forfeiture Clause at the point of sale.
>
> 29.  As a result of Defendants' failure to disclose the Forfeiture Clause at the point of sale, Plaintiffs and the members of the Class purchased the game without knowing about the Forfeiture Clause.  (SAC, ¶¶28-29.)

This concealment shows the "fraudulent" prong of the UCL, and further supports the False Advertising and CLRA claims.

In the Motion, Defendant argues that this omission is not sufficiently "material" to state a claim under §17200 and §17500. [3] There are problems with this argument.  First, *materiality* is a question of fact that cannot be decided on the pleadings.  As the Court in *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951 (1997) held: "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question' and as such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id.*, at 977; see also, *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126 (1976) [determination of materiality requires "delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact"].

---

[3] In support of this argument, Defendant makes the following confusing analysis: "Including an additional statement that if a user does not pay those fees for three straight months he or she will lose access to the game is not material in light of the fact that subscription fee requirements were already disclosed." (Motion, 19:16-19.)

The Court in *In re Tobacco Cases II* also held that "materiality"--- in the context of deciding whether an omission is sufficiently "material" to state a claim under UCL--- is a question of fact:

> A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question' [citations], and as such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.' [Citation.]"

*In re Tobacco Cases II*, 46 Cal.4th at 326 (Internal citations omitted).

Second, a reasonable person would attach importance to the Forfeiture Clause in deciding whether to buy the game or not. Here, the Forfeiture Clause compels a game user to forfeit his video game if he decides to stop playing the game and suspend his online game service for more than 3 months. That information would be material as a matter of law. See, *McAdams v. Monier, Inc*., 2010 WL 630973, *8 (2010) [failure to disclose that color composition of tiles would erode to bare concrete well before the end of the tiles' represented 50-year life, would have been material to any reasonable person who purchased the tiles, permitting an inference of common reliance among class of purchasers]; *Hinesley v. Oakshade Town Center*, 135 Cal.App.4th 289, 300 (2005) [a reasonable person considering entering into a commercial lease for space in a shopping center would attach importance to what other stores or businesses were going to be located in such center].

**E.     PLAINTIFFS HAVE STATED A VALID CLAIM UNDER CLRA.**

In the SAC, Plaintiffs allege three violations of the CLRA:

a) section 1770(a)(5) because Defendant has represented that purchase of the game software had particular characteristics, uses and/or benefits which it did not have at the time of sale, including, but not limited to, ownership of the game software;

b) section 1770(a)(14) because Defendant represented that the purchase of the game software provided certain rights associated with

PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT

the game, including ownership of the game software rather than a "lease" or "license."  The rights conferred to the Plaintiffs and Class Members constitute a "lease" or "license," and not "ownership," of the game software because Defendant may unilaterally and permanently cancel and/or revoke at any time and for any reason; and/or

c) section 1770(a)(19) because Defendant's ability to unilaterally and permanently cancel and/or revoke the user's license and the Forfeiture Clause constitute "unconscionable" terms within the user agreement. (SAC, ¶83.)

### 1.      The CLRA's notice requirement has been satisfied.

The CLRA includes a pre-filing notice requirement on actions seeking damages. At least 30 days before filing a claim for damages under the CLRA, the consumer must notify the prospective defendant of the alleged violations of the CLRA and "[d]emand that such person correct, repair, replace or otherwise rectify the goods or services alleged to be in violation" thereof. Civ. Code, § 1782, subd. (a)(2).   This notice requirement only applies to an action for *damages*.

There is no notice requirement for injunctive relief and other forms of equitable relief, such as restitution, provided under the CLRA.  Civ. Code, §§ 1780(a)(1)-(5), 1782(d); *Morgan v. AT & T Wireless Services, Inc*., 177 Cal.App.4th 1235, 1260 (2009).

Here, Plaintiffs gave notice of Defendant's violations of the CLRA in their original Complaint.  (Complaint, ¶3, 15(h); FAC, ¶¶5, 26(h).)  The prior pleadings gave the requisite notice to the defendant and an opportunity to remedy the purported grievance.  The prior pleadings were personally served more than 30 days before the filing of the SAC.  It is not disputed that Defendant had sufficient notice of its CLRA violations through the prior complaints, ignored the notice, and did nothing to "correct" the wrongs.

Even assuming the notice is insufficient under the CLRA, the requested dismissal with prejudice of the CLRA claim is not warranted.  Courts have allowed leave to file a notice.  *Morgan,*177 Cal.App.4th  at 1260.  In *Morgan*, the court held:

The federal district court cases upon which AT & T relies for its assertion that failure to comply with the notice requirement requires dismissal with prejudice fail to properly take into account the purpose of the notice requirement. That requirement exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30-day period that it will correct those wrongs within a reasonable time. (Citations omitted.)  A dismissal with prejudice of a damages claim filed without the requisite notice is not required to satisfy this purpose. Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements. If, before that 30-day period expires the defendant corrects the alleged wrongs or indicates it will correct the wrongs, the defendant cannot be held liable for damages.

*Ibid*. Furthermore, even if inadequate pre-filing notice justified striking the CLRA claim, it justifies striking the CLRA *damages* allegation only.  Any claim for injunctive relief and restitution under the CLRA survives the lack of pre-filing notice.[4]

### 2.   Plaintiffs have alleged sufficient facts to state a violation under §1770(a)(5) and §1770(a)(14).

Both of the claims, §1770(a)(5) and §1770(a)(14), are founded on Defendant Square Enix's concealment of the following information hidden inside the game contract that:

"Ownership and Rights. [Square Enix] . . .owns and shall retain all right, title and interest in and to the PlayOnline Service, the Software and all Documentation, and will be the sole owner of any and all datayou generate through your use of the PlayOnline Service, and you receive only limited rights to access and use PlayOnline Service . . . . SEUI shall reserve its rights in its sole discretion to delete, alter, or transfer any and all data at any time without notice to User." (Dkt. 19-1, at 2).

---

[4] In Footnote 17, Defendant Square Enix argues that "Plaintiffs and the purported class waived any right to injunctive relief in Section 6.2(a) of the PlayOnline Member Agreement."  Such limitations on remedies are invalid on their face. See, *Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal.4th at pp. 103-104 (2000);

1  The deception starts from the way Defendant Square Enix markets and sells the

2  product.  The game is sold to consumers. As discussed above in Footnote 3, "[i]f a

3  transaction involves a single payment giving the buyer an unlimited period in which

4  it has a right to possession, the transaction is a sale." *Softman Products,* 171

5  F.Supp.2d at 1086.  And the economic realities of the exchange will confirm that the

6  game is sold, not licensed.

7       And yet, Defendant Square Enix doesn't disclose at the point of sale that it

8  "owns and shall retain all right, title, interest in and to" the game software.  This

9  concealment and along with the way it offers the game software for sale, has the

10 legal effect of (1) misrepresenting that the good has uses, benefits which it does not

11 have (§1770(a)(5); and (2) misrepresenting that the "transaction confers or involves

12 rights, remedies, or obligations which it does not have or involve". (§1770(a)(14).

13      The facts pled are sufficiently specific to overcome this Motion to Dismiss.

14      **3.    The game contract is procedurally and substantively unconscionable**
15          **under CLRA §1770(a)(19).**

16      In determining whether a contractual provision is unconscionable under Civil

17 Code, §1770(a)(19), the Court considers whether a contract is procedurally and

18 substantively unconscionable. *Aron v. U-Haul Co. of Calif.*, 143 Cal.App.4th 796,

19 808 (2006).  A contract is procedurally unconscionable when there is no meaningful

20 choice for the weaker party, and its terms are "are hidden in a prolix printed form

21 drafted by the party seeking to enforce the disputed terms." *Ibid*.  The POL-MA is

22 procedurally unconscionable as a matter of law.  Unlike the trucks in *Aron*, each

23 video game is unique in that it offers unique gaming experiences.  The *Final*

24 *Fantasy XI* game can only be purchased from Square Enix, so there is no meaningful

25 choice. Also, the terms are hidden in small print at the end of a 144-page manual.

26      The substantive element of unconscionability focuses on the actual terms of

27 the agreement and evaluates whether they create "overly harsh" or "one-sided"

28 results as to "shock the conscience."  *Aron*, 143 Cal.App.4th at 808. Here, Square

Enix's reservation of "its rights in its sole discretion to delete, alter, or transfer any and all data at any time without notice to User" and forcing users to waive legal remedies (see, Section 6.2(a) of the POL-MA) is clearly one-sided and overly harsh as a matter of law.

**F.    PLAINTIFFS  HAVE PROPERLY ALLEGED A CLAIM FOR RECOVERY UNDER THE THEORY OF UNJUST ENRICHMENT.**

Unjust enrichment is a principle underlying the equitable remedies of restitution and constructive trust. *Ghirardo,*, 14 Cal.4[th] at 51. The essence of the equitable remedy is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing.  As alleged in the SAC, Square Enix reaped huge benefits by wrongfully:

a) Enforcing the illegal Forfeiture Clause;

b) Forcing players to buy new game software and game characters to replace the forfeited game software and game characters that they forfeited under the Forfeiture Clause constitutes an unlawful or unfair business practice within the meaning of California's Unfair Competition Law;

c) Selling game software and game characters that were forfeited under the illegal Forfeiture Clause back to the players;

d) Concealing or failing to disclose the Forfeiture Clause at the point of sale. (SAC, ¶76.)

To prevent Square Enix from taking advantage of and benefiting from its wrongdoings alleged in the SAC, Plaintiffs are entitled to the equitable remedies under the principle of unjust enrichment.

Dated:  March 22, 2010                          MAKAREM & ASSOCIATES, APLC


                                                By:    //Jean-Paul Le Clercq//      .
                                                       JEAN-PAUL LE CLERCQ
                                                       Attorneys for Plaintiffs

PLAINTIFF'S OPPOSITION TO DEFENDANT SQUARE ENIX'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT