CHRISTIAN S. GENETSKI (*Pro Hac Vice* Admitted)
Email: christian@zwillgen.com
ZWILLINGER GENETSKI LLP
1705 N Street, N.W.
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 347-3121

JOEL D. SIEGEL (State Bar No. 155581)
E-mail: jsiegel@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Attorneys for Defendants
Square Enix of America Holdings,
Inc. and Square Enix, Inc.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ESTHER LEONG, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

SQUARE ENIX OF AMERICA HOLDINGS, INC., a Delaware corporation; SQUARE ENIX, INC., a Washington corporation,

Defendant.

No. CV-09-4484 PSG VBKx

REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT BY DEFENDANTS SQUARE ENIX OF AMERICA HOLDINGS, INC. AND SQUARE ENIX, INC.

Date: April 12, 2010
Time: 1:30pm
Place: Courtroom 880

Judge: Hon Philip S. Gutierrez

# TABLE OF CONTENTS


I. Introduction ..... 1

II. The Applicable Statutes of Limitations Bar Certain Claims ..... 2

A. All Plaintiffs' FAL and CLRA Claims are Time-Barred Because Both the Alleged Nondisclosure and First "Compelled Payments" Occurred More Than Three Years Prior to Filing. ..... 2

B. Plaintiffs Stees, Carr and Chang's UCL and § 1671 Claims are Time-Barred Because Their Alleged "Forfeiture" Occurred Over Four Years Prior to the Filing of the SAC. ..... 4

III. All Plaintiffs Lack Standing ..... 4

A. FAL and CLRA "Fraud" Claims ..... 5

B. UCL and § 1671 "Contract-Based" Claims ..... 6

IV. All Plaintiffs Have Failed to State a Claim Under Any of their Five Counts ..... 7

A. Plaintiffs Fail to Provide Any Basis for Concluding that the Alleged "Forfeiture" Arises Out of a Breach Or Imposes a Fixed and Certain Sum as Required by Section § 1671(d). ..... 7

B. Plaintiffs Have Failed to Demonstrate That Square Enix's Conduct Was Unlawful, Unfair, or Fraudulent to State a Claim under the UCL or FAL. ..... 9

C. Plaintiffs Fail to State a Claim for Violation of the CLRA ..... 10

1. Plaintiffs Have Not Complied With the Notice Requirement. ..... 10

2. Plaintiffs Fail to State a Claim Under the CLRA. ..... 11


SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# TABLE OF AUTHORITIES

## Federal Cases

*Adobe Systems Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086 (N.D. Cal. 2000) .......... 7

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) .......... 12

*Augustine v. FIA Card Services, N.A.*, 485 F. Supp. 2d 1172 (E.D. Cal. 2007) .......... 11

*Bell Atl. Corp. v. Twombley*, 550 U.S. 544 (2007) .......... 9

*Chodos v. West Publ'g Co.*, 292 F.3d 992 (9th Cir. 2002) .......... 1

*County of Fresno v. Lehman*, 229 Cal. App. 3d 340 (5th Dist. 1991) .......... 2

*Davidson & Assocs. v. Jung*, 422 F.3d 630 (8th Cir. 2005) .......... 12

*Evans v. Chase Manhattan Bank USA, N.A.*, 2006 WL 213740 (N.D. Cal. Jan. 27, 2006) .......... 6

*Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .......... 6

*Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848 (9th Cir. 2002) .......... 4

*MAI Sys. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993) .......... 7

*MDY Indus., LLC v. Blizzard Entm'nt, Inc.*, 2008 WL 2757357 (D. Ariz. July 14, 2008) .......... 12

*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) .......... 7

*Rodarte v. Philip Morris, Inc.*, 2003 WL 23341208 (C.D. Cal. June 23, 2003) .......... 3

*Streamcast Networks, Inc. v. Skype Techs, S.A.*, 2006 WL 5441237 (C.D. Cal. Sept. 14, 2006) .......... 2, 3

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## California Cases

*Beasley v. Wells Fargo Bank*,
235 Cal. App. 3d 1383 (1991)....................4

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007)....................9

*Buckland v. Threshold Enters., Ltd.*,
155 Cal. App. 4th 798 (2007)....................5

*Byars v. SCME Mortgage Bankers, Inc.*,
109 Cal. App. 4th 1134 (2003)....................9

*Engalla v. Permanente Med. Group, Inc.*,
15 Cal. 4th 951 (1997)....................10

*Garrett v. Coast & Southern Fed. Sav. & Loan Ass'n*,
9 Cal. 3d 731 (1973)....................8

*Gryczman v. 4550 Pico Partners, Ltd.*,
107 Cal. App. 4th 1 (2003)....................3

*Hinesley v. Oakshade Town Ctr.*,
135 Cal. App. 4th 289 (2005)....................10

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009)....................9, 10

*McAdams v. Monier, Inc.*,
182 Cal.App.4th 174 (2010)....................10

*Morgan v. AT&T Wireless Svcs., Inc.*,
177 Cal. App. 4th 1235 (2009)....................10, 11

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (2005)....................11, 12

*Perdue v. Crocker Nat'l Bank*,
38 Cal. 3d 913 (1985)....................7

*Ridgley v. Topa Thrift & Loan Ass'n*,
17 Cal. 4th 970 (1998)....................8

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*,
96 Cal. App. 4th 884 (2002)....................4

*Timney v. Lin*,
106 Cal. App. 4th 1121 (2003)....................8

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**California Statutes**

Cal. Bus. & Prof. Code § 17200 ........ *passim*
Cal. Bus. & Prof. Code § 17208 ........ 4
Cal. Bus. & Prof. Code § 17500 ........ *passim*
Cal. Bus. & Prof. Code § 17535 ........ 10
Cal. Civ. Code § 1671 ........ *passim*
Cal. Civ. Code § 1675 ........ 8
Cal. Civ. Code §§ 1750 *et seq.* ........ *passim*
Cal. Civ. Code § 1760 ........ 10
Cal. Civ. Code § 1770 ........ 3, 5, 10, 11
Cal. Civ. Code § 1782 ........ 11
Cal. Civ. Proc. Code § 338 ........ 2, 3

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## I. INTRODUCTION

In its Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"), defendants Square Enix of America Holdings, Inc. and Square Enix, Inc. ("Square Enix") deconstructed the SAC's mishmash of five putative class representatives, seven "sub-classes," and multiple causes of action and demonstrated that no plaintiff could state a viable claim.[1] As shown therein, many of Plaintiffs' claims are time-barred, Plaintiffs lack standing to bring them, and the SAC fails to allege facts sufficient to sustain any of the claims asserted. In opposition, Plaintiffs largely neglect to address the legal arguments and authorities presented by Square Enix, and offer instead a litany of platitudes regarding Square Enix's "illegal conduct" and presumptions about Plaintiffs' "harm" designed to obfuscate the issues before this Court in hopes that one of their Plaintiffs, sub-classes or claims will survive. Instead, Plaintiffs' Opposition confirms they have pled themselves out of court.

Stripped of hyperbole, Plaintiffs' legal theories rest on a single premise: that Square Enix's alleged failure to maintain in perpetuity, for free, game data it owns is an "illegal" act that harmed Plaintiffs when they allegedly "lost" game software and data after choosing not to play the game for three months. The premise is fatally flawed. Plaintiffs admit that they contractually ceded any ownership rights in the game software, characters, or data to Square Enix, and fail to explain how they could acquire undefined "intellectual property rights" in data that Square Enix created and owns. Indeed, Plaintiffs present no authority to support their strident assertion that they "lost" or "forfeited" anything other than what they knowingly and voluntarily agreed to stop paying for – the right to access

[1] The new plaintiffs joining Esther Leong ("Leong) are Richard Stees ("Stees"), Robert Reed Carr ("Carr"), Vincent Chang ("Chang"), and Norman Hayne ("Hayne") (collectively, "Plaintiffs"). The SAC asserts causes of action under Cal. Civ. Code § 1671(d) ("1671"), the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1784 ("CLRA"), for "Illegal Penalties," and under Cal. Bus. & Prof. Code § 17200 ("UCL") and 17500 ("FAL").

Square Enix's game servers. Having disavowed any other basis for claiming injury-in-fact, Plaintiffs have no standing to pursue their claims.

Lack of injury aside, Plaintiffs fail to address the required elements for a § 1671 "illegal penalty" claim as they fail to identify any breach by Plaintiffs from which the alleged penalty arose, or a fixed sum of damages levied on Plaintiffs for the breach. Likewise, Plaintiffs offer no authority to dispute the well-established principle that consumers cannot challenge as deceptive or unfair practices that were disclosed to them and to which they chose to consent. Finally, Plaintiffs present no credible authority to excuse their three-year delay in pursuing FAL and CLRA claims they concede are based on alleged misrepresentations at the point of purchase, nor to justify their blatant disregard of CLRA process. In sum, Plaintiffs' Opposition makes clear their belated displeasure with Square Enix's alleged practices, but offers no legal authority to demonstrate how those standard business practices give rise to a cognizable claim.

## II. THE APPLICABLE STATUTES OF LIMITATIONS BAR CERTAIN CLAIMS.

### A. All Plaintiffs' FAL and CLRA Claims are Time-Barred Because Both the Alleged Nondisclosure and First "Compelled Payments" Occurred More Than Three Years Prior to Filing.

Plaintiffs concede that their claims under the FAL and CLRA are founded on "fraud" and based on Square Enix's alleged failure to disclose the "forfeiture clause" on the game's outer packaging.[2] (SAC ¶¶ 79, 83). The statute of limitations period for both claims is three years. Cal. Code Civ. Proc. § 338(a); *County of Fresno v. Lehman*, 229 Cal. App. 3d 340, 346 (1991); *Streamcast*

---

[2] In differentiating between their "contract-based" (UCL and 1671) and "fraud" claims (FAL and CLRA), Plaintiffs make two significant concessions. First, in arguing that the "contract-based" claims arise at the time of forfeiture, they implicitly concede that their fraud-based claims accrued at the time of purchase and package opening. (Opp. at 3:25-26). Second, to avoid a time bar, they concede that "disclosure is not an issue" in connection with their UCL claims, rendering moot their arguments for a fraud-based UCL claim. (*Id*.)



SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Networks, Inc. v. Skype Techs., S.A.*, No. CV-06-391 FMC (Ex), 2006 WL 5441237 (C.D. Cal. Sept. 14, 2006) (§17500)[3]; Cal. Civ. Code § 1783 (CLRA). Given the fact that each Plaintiff purchased the game more than three years prior to Leong filing her initial complaint, the FAL and CLRA claims are barred.

Plaintiffs seek to avoid this bar by claiming they "discovered" their "loss through forfeiture" at various dates long after they ceased playing the game (all of which conveniently fall within the limitations period).[4] This attempt to toll "discovery" of their alleged "loss," however, is directly contradicted by Plaintiffs' own allegations and theory of liability. Plaintiffs cannot argue that Square Enix concealed the "forfeiture clause" once Plaintiffs opened the game box. *Gryczman*, 107 Cal. App. 4th at 5. On the contrary, Plaintiffs concede they saw and consented to the POL-MA when they began online play and that the "forfeiture clause" is "solely intended to compel users to continue paying for the online game." (Opp. at 5:10-13). Under Plaintiffs' theory, they "discovered" the previously undisclosed clause before starting game play and suffered "damage" no later than when they made their first monthly fee payments. Accordingly, the latest date the FAL and CLRA fraud-based claims accrued was one month after Plaintiffs' began game play—over three years prior to filing this action.[5]

---

[3] The case Plaintiffs cite for a three-year statute of limitations for FAL claims is wrongly decided. Cal. Civ. Code §17208 only applies to actions brought under that *chapter* (chapter 5). Section § 17500 is in a different chapter (chapter 1), and as such the general statute of limitations, Cal. Civ. Code § 338 applies. *See also Rodarte v. Philip Morris, Inc.*, No. CV03-0353FMC (CTX), 2003 WL 23341208, *5 (C.D. Cal. June 23, 2003).

[4] Plaintiffs' distorted view of "discovery" would permit a purchaser to buy the game, read the "forfeiture clause," play for several months, cease playing, and then toll their claims for decades by waiting to attempt to recover their characters and "discover" the "forfeiture." The discovery rule is meant to protect plaintiffs "when circumstances prevent them from knowing they have been harmed," not to grant plaintiffs whose claims have ripened an open-ended extension of time to choose when to bring their claims. *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5 (2003).

[5] Plaintiffs wrongly assert that Stees's limitations period should be tolled because he was a minor when he consented to the POL-MA. That agreement specifically requires that a parent agree to the contract on behalf of a minor. (DK 19-1 ¶ 1.11). Accordingly, either Stees is the

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### B. Plaintiffs Stees, Carr and Chang's UCL and § 1671 Claims are Time-Barred Because Their Alleged "Forfeiture" Occurred Over Four Years Prior to the Filing of the SAC.

The statute of limitations for § 17200 and § 1671 claims is four years. Cal. Bus. & Prof. Code § 17208; *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1401-2 (1991). Plaintiffs assert that their UCL and § 1671 claims are "contract-based" and triggered "when Plaintiffs suffered their forfeiture." (Opp. at 3:22, 4:8).[6] Accepting this assertion as true, Plaintiffs effectively concede that Plaintiffs Stees, Carr, and Chang's § 1671 and UCL claims are time-barred.

The SAC states that Stees ceased paying fees and "forfeited" his game in early 2005, Carr in 2003, and Chang in 2006. (SAC, ¶¶ 37, 40, 43). Accordingly, under Plaintiffs' own theory, these three new Plaintiffs' § 1671 and UCL claims were time-barred prior to the filing of the SAC on February 7, 2010. Plaintiffs cannot extend the limitations period with a conclusory allegation that the forfeiture was not "discovered" until a later date by failing to allege concealment (Carr),[7] by claiming a contract-based claim is tolled for a minor whose parent or guardian was required to assent to that contract (Stees), or by intentionally failing to allege the exact date on which the forfeiture occurred (Chang).

## III. ALL PLAINTIFFS LACK STANDING.

In seeking to demonstrate injury-in-fact traceable to Square Enix in a manner consistent with this Court's previous Order, Plaintiffs take great pains to differentiate between the types of claims in the SAC and which Plaintiffs have standing to bring each type of claim. Plaintiffs divide their claims into: 1) "fraud" claims (FAL and CLRA) brought on behalf of the "Purchase" sub-classes, which

---

wrong party-in-interest, his claim is time-barred, or he defrauded Square Enix.

[6] To the extent Plaintiffs claim monthly fees paid constitute damages, their claims would accrue as of the first month each Plaintiff began paying for access to the game, which occurred at an even earlier date. That plainly bars their claims.

[7] The delayed discovery rule does not apply to actions brought under the UCL. *Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th. 884, 891 (2002); *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002).

allegedly were injured by Square Enix's failure to disclose the forfeiture clause on its game packaging; and 2) "contract-based" claims (UCL and § 1671) brought on behalf of the "Forfeiture" sub-classes, where the alleged injury is purported loss of game software, characters, and data.

**A. FAL and CLRA "Fraud" Claims.**

***Carr and Chang.*** Plaintiffs concede that Carr and Chang, both of whom repurchased or reactivated the game software after quitting the game, lack standing to bring FAL or CLRA claims for the reasons in this Court's January 20, 2010 Order, because their repurchase or reactivation evidenced a lack of reliance on any alleged failure to disclose facts at the time of their initial purchase. (Order at 6).

***Leong.*** Leong's sole basis for FAL and CLRA standing is that her reinvented rationale for her second game purchase—to investigate her claims—leaves open the possibility that she relied on the alleged lack of disclosures in making her first purchase. (Opp. at 9:25-10:3). Leong does not, however, allege harm from her initial purchase, cannot allege injury for loss of game characters and data she does not own, and, as this Court warned in its prior Order, cannot claim the second game purchase as injury to establish standing. (Order at 7 n. 2); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 815-16 (2007).

***Stees and Hayne.*** As Plaintiffs acknowledge, their FAL and CLRA claims turn on the materiality of the terms not disclosed on the game packaging, and injury traceable to that non-disclosure. Stees and Hayne do not, however, claim the cost of the original game software as injury nor do they claim they were deprived of a refund of that expenditure. Rather, the *only* injury that Stees and Hayne claim to have suffered from Square Enix's alleged deception at the point of purchase is the eventual "loss" of game software and data when they ceased paying monthly fees. (Opp. at 5:23-7:21). Plaintiffs do not and cannot address how that "injury" is traceable to Square Enix's alleged point-of-sale deception

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

when they were informed of and consented to the contractual clause from which that "injury" flowed *before* they incurred it. *Evans v. Chase Manhattan Bank USA, N.A.*, No C-05-3968 SC, 2006 WL 213740, at *6 (N.D. Cal. Jan. 27, 2006) (actions consistent with "fully-disclosed terms of the contract . . . cannot plausibly be labeled a deception"), *aff'd*, 267 Fed. Appx. 692 (9th Cir. 2008).

**B. UCL and § 1671 "Contract-Based" Claims.**

***All Plaintiffs.*** Plaintiffs assert that all five putative class representatives have standing to pursue the "contract-based" UCL and § 1671 claims, and claim the same injury for each, namely the alleged "loss" of "users' intellectual property" in the form of game software, game character and game data. (Opp. at 5:8-10). This claimed "loss" defies common sense, and falls woefully short of establishing injury-in-fact to confer standing. *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

First, Plaintiffs offer zero support for their conclusory statement that they had acquired "intellectual property rights" in the game software, characters, and data. Plaintiffs' silence is telling, as they cannot plausibly assert that they have copyright protection in software code and game art authored exclusively by Square Enix, trademark rights in marks exclusively registered to Square Enix, or that their game play as choreographed by Square Enix's code created a patentable invention. Plaintiffs' claims of property ownership are absurd in light of their admission that they each consented to a contract that explicitly confers to Square Enix ownership rights in "the Software . . . [and] any and all data you generate through your use of the PlayOnline Service." (Dkt. 19-1 ¶ 4.1). The same contract provision also identifies the rights conferred on users, namely the limited right to play the game on Square Enix's game servers for as long as the user elects to pay subscription fees and Square Enix elects to support the game. (*Id.*) Thus, the only conceivable "loss" Plaintiffs arguably suffered is the ability to access Square Enix's servers.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

They had acquired nothing more than that, and had nothing more to lose.[8] Having sustained no injury, Plaintiffs lack standing.

Plaintiffs' response is to argue in passing that they are "owners" of the game software, rather than licensees.[9] This argument is a red herring. Plaintiffs cite cases that address whether the purchaser of software "owns" the physical *copy* of the disc on which the software resides. Here, Plaintiffs do not allege that Square Enix has physically repossessed the software copy Plaintiffs bought, and cannot claim to have purchased game data that did not exist on the physical copies, having not yet been generated. Rather, Plaintiffs object to the "loss" of access to the servers and game data that Square Enix owns under the POL-MA irrespective of whether the user owns or licenses the physical copy of the game software.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## IV. ALL PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER ANY OF THEIR FIVE COUNTS.

### A. Plaintiffs Fail to Provide Any Basis for Concluding that the Alleged "Forfeiture" Arises Out of a Breach Or Imposes a Fixed and Certain Sum as Required by Section § 1671(d).

Remarkably, "Plaintiffs would agree that the Forfeiture Clause is not a liquidated damages clause," but then conclude, sans reason or authority, that if the alleged forfeiture clause "is not a liquidated damages clause, then it is a punitive penalty clause . . . ." (Opp. at 12:26-13:2). This semantics over substance argument ignores that in California, a "punitive penalty clause" and an *unlawful* liquidated damages clause are one and the same. Cal. Bus. & Prof. Code § 1671.

---

[8] For those Plaintiffs (Leong, Stees and Hayne) that never sought to reactivate their accounts, the claim of "loss" is particularly egregious, as Plaintiffs do not, and cannot, assert that a lawful secondary market exists for the data and characters outside the Final Fantasy® XI online game.

[9] Although irrelevant to determining Plaintiffs' standing, the game packaging denotes that the software is subject to a license, and players must review and assent to clear and explicit license terms before installing the software, well-established practices for establishing a valid license. *MAI Sys. v. Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir. 1993); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (7th Cir. 1996) (shrink-wrap license on outside of software box held enforceable); *Adobe Systems Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1090 (N.D. Cal. 2000).

*See also Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 930-31 (1985). Accordingly, an "illegal penalty" must (1) arise from a breach and (2) exact a fixed and certain sum. *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002). Plaintiffs do not attempt to argue that the alleged penalty here meets either required element.

Plaintiffs' failure to address these elements is unsurprising. The "loss" of software, game characters, and data does not arise from a breach, but a user's choice to stop paying for and playing the game, which is consistent with the month-to-month nature of the POL-MA. (Dkt. 19-1 ¶3.2(b)). Because new players who have never assented to the POL-MA purchase copies before playing, the "requirement" of a game purchase clearly does not arise out of a breach. Even if Plaintiffs could allege a "penalty" arising from a breach, they do not, and cannot, allege the penalty is a fixed sum because what is "forfeited" differs for each player, depending on his or her character and version of the software.[10]

Plaintiffs whistle past these requirements by citing, without analysis or explanation, a number of off-point cases. The clauses those cases found unlawful, however, arose from contractual breaches and imposed fixed and certain sums. *Timney v. Lin*, 106 Cal. App. 4th 1121, 1126-28 (2003) (breach for failing to deliver deed within time allowed; damages fixed at amount of the defendant's deposit); *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977-78 (1998) (breach for late payment, fixed amount of damage) and *Garrett v. Coast & Southern Fed. Sav. & Loan Ass'n*, 9 Cal. 3d 731, 735-36 (1973) (breach of late payment; 2% fixed charge).

[10] Plaintiffs cannot assign a value to the alleged "intellectual property." There is no lawful secondary market for game accounts or characters, as the POL-MA prohibits their re-sale. (POL-MA ¶ 4.2). Square Enix bans users that attempt to buy and sell accounts, and reserves the right to countersue any Plaintiff that has done so.



SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### B. Plaintiffs Have Failed to Demonstrate That Square Enix's Conduct Was Unlawful, Unfair, or Fraudulent to State a Claim under the UCL or FAL.

Plaintiffs allege that Square Enix violated the UCL by revoking players' access to game characters and data when players chose to terminate their service, and then allegedly requiring Plaintiffs to purchase new game software or pay fees to access those characters. But Plaintiffs' Opposition does little to rebut Square Enix's case law supporting the common sense propositions that: (1) charging a reasonable initial fee to start service plus monthly fees thereafter; and (2) ceasing support of the service for users who have stopped paying, are common, lawful, and fair business practices.

For conduct to be actionable under the UCL, it must be "unlawful, unfair, or fraudulent." *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009).[11] Plaintiffs claim Square Enix's actions are unfair because they "sell[] back illegally forfeited game character and game accounts at a premium price." (Opp. at 18:8-10). The crux of Plaintiffs' argument is that they need to do no more than label a practice as unfair to withstand a motion to dismiss. (*Id.*) Such conclusory allegations are not sufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The *facts* alleged show only that Square Enix charged access fees[12] and terminated access to their service for nonpayment of fees—*i.e.* when a user terminated his or her account in accordance with the POL-MA. Plaintiffs fail to allege any factual basis to infer that these standard practices were applied in an arbitrary or discriminatory manner. Even if true, the claim that these terms encourage

[11] Plaintiffs' only claim of "unlawfulness" is that the forfeiture clause is illegal under § 1671. For the reasons explained above, that claim must fail.

[12] *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555 (2007) (noting that there is nothing inherently unfair about for-profit business charging fees for service absent plaintiff alleging facts showing they were not permitted to do so); *Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134, 1149 (2003) (lender's payments to brokers not "unfair" where payments were "widespread and commonly used as a method to compensate mortgage brokers for services provided to borrowers and the lender").

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

continued play are not enough—almost every form of subscription contract contains provisions designed to entice users to continue to pay for the service.

Finally, Plaintiffs' FAL and UCL claims based on fraud also fail. Plaintiffs' explanation for why failure to disclose the forfeiture clause is material is conclusory and unsupported by the SAC's allegations. Plaintiffs expressly disavow elsewhere that their UCL claims are premised on fraud, and thus concede their inability to state a UCL claim based on fraud. (Opp. at 5:1-3). Moreover, Plaintiffs' Opposition fails to allege actual reliance on the alleged omission by any Plaintiff.[13] Plaintiffs likewise provide no explanation—other than citation to dissimilar cases[14]—to support an inference that users would find such an omission material.[15] To the contrary, common sense terms stating that users will lose access to an online game if they do not pay subscription fees are so obvious that no reasonable person would be deceived by a failure to disclose them. Finally, Plaintiffs fail to allege that, after viewing the POL-MA and seeing the allegedly objectionable terms, *any* user sought a refund of their product, and that the refund was denied. The reason is clear—the "forfeiture clause" was immaterial to Plaintiffs' decision to purchase and play the game.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### C. Plaintiffs Fail to State a Claim for Violation of the CLRA.

#### 1. Plaintiffs Have Not Complied With the Notice Requirement.

The CLRA is designed "to provide efficient and economical procedures to secure [consumer] protection," not to allow Plaintiffs' counsel to engage in slick

[13] Cal. Bus. & Prof. Code § 17535; *In re Tobacco Cases II*, 46 Cal. 4th at 311.

[14] In *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174 (2010), the omission that tile color would erode prior to the end of their 50-year life was only material in light of an affirmative representation that the tiles had a 50-year life. There is no representation here that would lead Plaintiffs' to believe that their game characters or data would be available to them in perpetuity.

[15] *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 300 (2005) (a fact is not material if "the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable [person] would have been influenced by it.'" (quoting *Engalla v. Permanente Medical Group, Inc.* 15 Cal. 4th 951, 977 (1997).)

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

pleading practices designed to avoid Proposition 64 and pursue improper class actions that do not advance a public cause. Cal. Civ. Code § 1760. Contrary to Plaintiffs' assertion, *Morgan v. AT&T Wireless Svcs., Inc.*, 177 Cal. App. 4th 1235, 1260 (2009) only eliminates the notice requirement in cases seeking to enjoin the defendant from engaging in an existing and ongoing practice. Likewise, Cal. Civ. Code § 1782(d) exempts only actions for "injunctive relief," and not "injunctive relief and other forms of equitable relief, such as restitution," as Plaintiffs claim.[16]

Plaintiffs' unsupported statement that Square Enix did nothing to correct the wrongs after receiving the FAC lacks any basis in fact. The so-called "forfeiture clause" had not been invoked for years before Square Enix received the FAC, which Plaintiffs would have uncovered had they complied with the notice requirement or conducted a reasonable pre-filing investigation. The SAC thus alleges no current conduct a court could enjoin. *Morgan*, 177 Cal. App. 4th at 1260. Plaintiffs' deliberate failure to provide notice reveals that their true aim is to use the CLRA as a back door to camouflage their damages claims as "restitution." Their neglect of the CLRA's requirements, however, dooms this effort.

**2. Plaintiffs Fail to State a Claim Under the CLRA.**

None of Plaintiffs' three tacked-on bases for a CLRA claim pass muster.[17] Even if the fact that the game software was licensed was concealed—despite disclosures on the game packaging that the sale was subject to additional agreements (Dkt. 19-2)—Plaintiffs' claims ripened when they saw the license

---

[16] Similarly, the FAC (lacking a CLRA claim) does not constitute notice under the CLRA. In *Morgan*, the first complaint was sufficient to provide notice only because that complaint sought *only injunctive relief*, which is not the case here. *Morgan*, 177 Cal. App. 4th at 1260.

[17] Plaintiffs ignore Square Enix's substantive arguments regarding restitution or unjust enrichment—which make clear that such a claim cannot stand if the underlying claims are dismissed or where the relationship between the parties is governed by contract. Additionally, Plaintiffs have conceded that no attorney's fees are available.

terms upon opening the game packaging, but spoiled when they failed to allege that any Plaintiff sought to reject the contract, return the software and was denied a refund. Instead, in assenting to a contract with clearly disclosed terms (Dkt. 19-1), they bound themselves to it. *Augustine v. FIA Card Services, N.A.*, 485 F. Supp. 2d 1172 (E.D. Cal. 2007). As such, Plaintiffs' claims under §§ 1770(a)(5) and (14) fail.

Likewise, Plaintiffs' § 1770(19) claim fails, because the challenged provisions in the POL-MA regarding Square Enix's reservation of rights are neither procedurally nor substantively unconscionable. If terms in the POL-MA are not properly disclosed, then almost all terms in online agreements and form contracts would also be defective. Courts have, however, repeatedly enforced such agreements, including in the online game context. *See, e.g., Davidson & Assocs. v. Jung*, 422 F.3d 630, 639 (8th Cir. 2005) (enforcing limited software license for online game); *MDY Indus., LLC v. Blizzard Entm'nt, Inc.*, No. CV-06-2555-PHX-DGC, 2008 WL 2757357 at *4 (D. Ariz. July 14, 2008).

The contractual clause allowing Square Enix to delete any and all game data without notice is also not substantively unconscionable, but a necessary and ordinary part of providing an online game. *See e.g. Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005) (software license agreements providing limited, revocable licenses are valid contracts). Far from being an "extreme departure from common business practice," the clause allows Square Enix to update, change, and discontinue its online offerings as the market provides. *Morris*, 128 Cal. App. 4th at 1323. Furthermore, the "forfeited" data belongs to Square Enix, not its users, and a provision allowing Square Enix to delete its *own* data cannot be unconscionable. (Dkt. 19-1 ¶ 4.1). If such a clause were unconscionable, Square Enix and all of its competitors would be forced to make their games available in perpetuity, or face class action suits for loss of data.

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Respectfully submitted,

Dated: March 29, 2010

SONNENSCHEIN NATH & ROSENTHAL LLP

By /s/ Joel D. Siegel
JOEL D. SIEGEL

Attorneys for Defendants
Square Enix of America Holdings, Inc. and
Square Enix, Inc.

ZWILLINGER & GENETSKI LLP

By /s/ Christian S. Genetski
CHRISTIAN S. GENETSKI

Attorneys for Defendants
Square Enix of America Holdings, Inc. and
Square Enix, Inc

SONNENSCHEIN NATH & ROSENTHAL LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300